# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

IFEOMA  EZEKWO

                                        Plaintiffs,

     Vs.

SPECIALIZED LOAN SERVICING

     Defendants.

------------------------------------------------------------ X

Civil Action No.

**COMPLAINT FOR  VIOLATIONS OF:**
**1.TITLE IX  OF THE CIVIL RIGHTS,**
**2.  4TH , 5th  and 14th  AMENDMENTS AND CIVIL RIGHTS VIOLATIONS**
**3. BREACH OF CONTRACT**
**4. ABUSE OF PROCESS**
**5. WRONGFUL THREAT OF FORECLOSURE AND LACK OF AUTHORITY.**
**6. FRAUDULENT MISREPRESENTATION AND CONCEALMENT**
**7. VIOLATION OF CONSUMER FRAUD ACT AND DODD- FRANK ACT**
**8. VIOLATION OF SECURITIES ACT**
**9. VIOLATION OF FAIR DEBT COLLECTION PRACTICES**
**10. DISCRIMINATORY LOAN MODIFICATION PRACTICES**
**11. DUE PROCESS VIOLATION**
**12. RACIAL AND GENDER AND NATIONAL ORIGIN AND FAMILY DISCRIMINATION AND BIAS AND EXTORTION**
**13. MALICIOUS PROSECUTION**
**14. DENIAL OF RIGHT TO DUE PROCESS.**
   **(JURY TRIAL DEMANDED)**

STATE OF NEW YORK        )
                        ) ss:
COUNTY OF BRONX              )

     I, IFEOMA EZEKWO declare that I am of full age and in full knowledge of the facts herein.

     I am the plaintiff in this case.  The other plaintiff is my Husband Samuel Ezekwo.

1

## JUDICIAL NOTICE

All officers of the court for US Federal Court District of Southern District of New York are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities of Haines v Kerner, 404 U.S. 519, Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001).

In re Haines: Pro se litigants (Plaintiff is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

In re Platsky: court errs if court dismisses the pro se litigant (Plaintiff is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings.

In re Anastasoff: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according the rule of precedent.

See Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

**Despite the above declarations by Plaintiff, she had to endure the attempts by Judges especially Judge Bumb to preclude her from filing federal law suits against her adversaries. Plaintiff filed an appeal in the third circuit against the preclusion order and in May 2022, the Appellate court ruled in Plaintiff's favor that she cannot be precluded in filing federal law suits against her adversaries. This means that Plaintiff can file her law suit against Specialized Loan Servicing. In retaliation, Judge Bumb tried again to refile and amended preclusion order which again is**

referred to and being handled in the third circuit court of appeals and in the interim Plaintiff by the ruling of the appellate court can bring federal law suits against her adversaries. Hence this court is pleaded not to violate Plaintiff and under the ruling allow Plaintiff  to file and complete her law suit against Specialized Loan Servicing and their related business associates who together and severally were involved in violating Plaintiff in this matter and to give Plaintiff  due process under the law and compel Specialized Loan Servicing and their associates to pay Plaintiff's claim in this matter and it is now obvious beyond reasonable doubt that Specialized Loan Servicing   by their action induced admission have wronged and hurt Plaintiff and adequate compensation is due.

On legal advice on the matter and on refocusing on the required and cogent result, Plaintiff's law suit is strictly on those  entities whose decisions has negatively affected her and whose reversal of action will alleviate the suffering caused for even though  all those listed in prior law suit were all contributory, they are not decisionary here  hence the need here to plead the court to compel the current defendants to reverse their wrongful decisions in the matter, allow Plaintiff a trial and grant her justice and adequate compensation for what she has endured by law. It is noteworthy that Specialized Loan Servicing's  actions against Plaintiff are continuous and unrelenting, despite the fact that they are now in dispute with Plaintiff  and causing Plaintiff harm and still litigating with  Plaintiff  and surreptitiously hurting Plaintiff by making it impossible for her to pay and keep her home. More so, now as a direct consequence of Specialized Loan Servicing's  actions and interferences with Plaintiff's home and property, all as a direct and proximate outcome of Specialized Loan Servicing's  action against Plaintiff whereby Plaintiff has been irreparably harmed and continues to be harmed  and must be compensated by Specialized Loan Servicing the defendant for its actions and damages they caused Plaintiff.

1. **JURISDICTIONAL BASIS**

   Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the
   jurisdiction to cases arising under the U.S. Constitution as this a Federal Question case.

2. Plaintiffs brings this suit pursuant to  violations of certain protections guaranteed to them
   by the First, Fourth,  Fifth, Eighth, Ninth and Fourteenth Amendments  of the federal
   Constitution, by the defendants acting  under color of  law  and housing  in collusion
   together and severally to others thus affiliated in mischief and common understanding
   and their secret and sinister intent to  cause harm to plaintiffs in their  capacities and thus
   deprive Plaintiffs of their civil rights that are guaranteed them under the constitution of
   the United States while colluding to cover the illegalities of the Defendant  and its
   associates and steal Plaintiff's property under the color of law.

3. Plaintiffs bring this action against Defendant Specialized Loan Servicing as a federal
   question action in violation of Plaintiff's civil rights protected by the United States
   constitution. These violations by Defendants were intentional, reckless and in total and
   callous disregard for the plaintiffs rights in the matters thereby putting Plaintiffs' home
   and property in mortal danger and totally stripping them of their civil rights in the
   process.

4. The basis for the federal court jurisdiction here is the facts here involve a federal
   question. title ix of the civil rights;  1st   4th · 5th  8th  9th and 14th  amendments and civil
   rights violations

5. Abuse of process; Abuse of power under the color of law; blatant discrimination;

6. Denial of right to due process; Hate crimes and bias and corruption; Invasion of privacy
    continual run around and abuse of process. Falsification and misrepresentation of
   federal   and state mortgage rules; Hate crimes and bias and extortion and intended
   seizure of private property and thus rape of financial resources; Gender and race based
   harassment and discrimination; defamation;  See below their actions in full.
   **. breach of contract**

4

**. Abuse of process**
**. Wrongful threat of foreclosure and lack of authority.**
**. Fraudulent misrepresentation and concealment**
**. Violation of consumer fraud act and Dodd- frank act**
**. Violation of securities act**
**. Violation of fair debt collection practices**
**. Discriminatory loan modification practices**
**. Due process violation**
**. Racial and gender and national origin and family discrimination and bias and extortion**
**. Malicious prosecution**
**. Denial of right to due process.**

**7.**                    **JURISDICTION AND VENUE**

8.  This court has jurisdiction on Plaintiffs federal law claims as this case involves questions of federal law.

9.  This court has jurisdiction over the claims under United States Constitution and shares all operative facts in this federal law claim. Resolving Plaintiffs claims in this court serves the interest of judicial economy, convenience, consistency and fairness to the parties.

10. Venue is also proper as both Plaintiffs and Defendants are in the local area and Defendants maintain facilities and business activities in the district and all or most of the events giving rise to this action occurred in this District.

11.                        **PARTIES**

12. **Plaintiff Information:** Plaintiff, Dr. Ifeoma  Ezekwo  and her husband Samuel Ezekwo are mutual owners of the lot and premises with single family house  located at 3013 Grand Concourse, Bronx, New York 10468, with the tax map designation of Block 3310, Lot 70, (the "Plaintiffs' Lot"). Since its purchase in 2001, Plaintiff had used it as a home occupation on the first floor and living quarters upstairs. That first floor was her private practice medical office for the practice of Ophthalmology and Internal Medicine and Diabetes care as well as global eye care the nonprofit she runs that provides surgical and medical eye care for those who cannot afford both in USA and around the world. With missions completed in Africa, central and South America.

Dr. Ezekwo, the Plaintiff trained in both Ophthalmology and Internal Medicine at College of

Physicians and Surgeons of Columbia University New York residency programs and is licensed to practice Medicine in New York since 1983. Dr. Ezekwo the Plaintiff has rendered medical care and services to the Bronx Community since 1983 when she became licensed In New York. In fact Dr. Ezekwo's life was devoted to that medical service to the community. In addition to serving the community in medical care Plaintiff Dr. Ezekwo has also been ordained three times in various capacities as an interdenominational minister (priest) and has a degree in Angelology and is a trained Spiritual Counselor and an Angelologist and Healer .She helped the community and those inclined along such lines to help them spiritually and provide solace to those medical knowledge alone cannot heal. Plaintiff Dr. Ezekwo is excellent in what she does and has helped a lot of people around the world. She is also an author of several books in both medicine and spirituality. Mr. Samuel Ezekwo, the co Owner is a chemical Engineer by training with Masters in Chemical Engineering from Columbia University, New York. He worked for the USA government in US Environmental Protection Agency in New York until retirement. He also accompanied Dr. Ezekwo the Plaintiff in medical missions and provided engineering support for the various equipment necessary for the successful eye surgical missions around the world. Mr. Samuel Ezekwo's late father was an Anglican priest and a missionary who founded many churches in Africa. The biography of his life written by his son, Samuel Ezekwo titled "In His Days" is selling very well in Amazon right now.

13. **Defendant: Specialized Loan Servicing**  is a mortgage servicer with correspondence

    address at:  Specialized Loan Servicing

    P.O. Box  630147,  Littleton, CO 80163- 0147

## STATEMENT OF CLAIM

**14. Place Of Occurrence: 3013 Grand Concourse, Bronx, NY 10468**

**15. Dates of Occurrences: From 2021 to Present ongoing dispute**

**16.**                                **FACTS**

17. I,  DR. IFEOMA EZEKWO being of full age and in possession of the facts of the case hereby declare

18. I am the Plaintiff in the above captioned action. As such, I am fully familiar with the facts and circumstances set forth herein from my own personal knowledge and from the review of a file I maintain with respect to this matter.

19. Plaintiff swears to the truth of the foregoing, except to those matters alleged upon information and belief, as to those matters, I believe them to be true.

20. Plaintiff and husband Samuel Ezekwo are mutual owners of the lot and premises and home  located at 3013 Grand Concourse Bronx, NY 10468

21. **Defendant:** Specialized Loan Servicing is a mortgage servicer with correspondence address at: Specialized Loan Servicing

## NATURE OF THE ACTION

22. This is an action for relief from multiple violations of the multiple civil rights of plaintiffs by the Defendants on multiple non ending occasions.

23. Plaintiffs allege that Defendant Specialized Loan Servicing  and their named officials and multiple others whose true names   are unknown ( collectively, Defendants) unlawfully violated the multiple civil rights and amendments of Plaintiffs on multiple unending and unrelenting occasions and unlawfully discriminated against them on the basis of their race, sex, national origin and extorted them.

24. Plaintiffs further allege that Defendants policies, practices, and decisions, all arising from discriminatory and extortion   animus and further policies which they established and enforced had a disparate negative impact on the Plaintiffs and impacted their day to day operations often causing them to live in abject fear and trepidation of losing their home which they can pay   and were paying their monthly mortgage on but suddenly Specialized Loan Servicing  refused to take monthly mortgage payments again  and insisted Plaintiff submit another modification and kept all the payments Plaintiffs were making for their home and then tells Plaintiff that Defendant is not continuing  their loan and instead want to steal their home and equity without reason and without due process and any justification. And told Plaintiff they will no longer take monthly mortgage payments from Plaintiff which they were taking before Then Defendant    want to take Plaintiff's   home even though there is over nine hundred thousand equity in it and Specialized Loan Servicing   is refusing to take monthly payment

25. Plaintiffs further allege that Defendants denied them any relief despite multiple complaints and now current dispute documentation submitted but rather devised even more sinister and diverse ways to silently violate and abuse the law of process against them, all without due process.

26. There was not one single response to any of the request   plaintiffs lodged with Defendants seeking to restore their monthly mortgage payments as defendant just says case is in review  which it is not except as Plaintiff is filing it now.

27. Plaintiffs are informed and believe and hereby allege that at all times relevant herein, Defendants were responsible in some manner for the occurrences and injuries alleged in this complaint. Their names and capacities are currently unknown to Plaintiffs. Plaintiffs will amend this complaint to show such true names and ranks and capacities when the same has been ascertained.

28. Plaintiffs seek injunctive relief and declaratory relief, compensatory damages, punitive damages, liquidated damages, reasonable attorneys' fees and costs as remedies for Defendants violation of their rights. Furthermore, Plaintiffs are requesting this court to compel the Defendant to restore Plaintiff's home's ownership to her  and allow her to continue to make her mortgage payments which she is willing and able to do and keep her home which has equity in it

## FACTUAL ALLEGATIONS

29.  At all times material to this action, Plaintiffs have maintained the property in question as their home

30. At all times during this action, Defendant and its related officials and attorneys embroiled in this action perform their official duties in New York and are aware of Plaintiffs' existence through an ongoing mortgage as well as their well orchestrated conspiratorial clandestine and not so clandestine activities against the Plaintiffs.

31. Plaintiff  in this matter  now makes  this complaint  in support of this law suit  that Plaintiff  is  filing against Defendant  to compel Defendant  to allow Plaintiff  to pay her mortgage and keep her  home.

32. Plaintiff has sufficient equity in the property assets to make Defendant   allow this loan to be paid via monthly mortgage if necessary. What Defendant   did here was both

underhanded and illegal and Plaintiff is  seeking justice and asking Defendant   to restore Plaintiff's  mortgage payments and restore Plaintiff's  home ownership

33. This is Plaintiff's home and it has equity as clearly elucidated above, nine hundred thousand dollars equity.

34. While plaintiffs have tried here to give the court a glimpse of what their life has contended with under the unbearable actions of the defendants, the reality is much worse as defendants has caused the plaintiffs irreparable harm.

35.  Below in the embodiment of this complaint is the last dispute Plaintiff sent to Defendant to resolve this matter as their silence and inactivity is not acceptable to Plaintiff.

36. December 30, 2022

From:

Ifeoma Ezekwo

Samuel Ezekwo

400 Tenafly Road

#1002

Tenafly, NJ 07670

To:

Specialized Loan Servicing LLC

P.O. Box 630147

Littleton, CO  80163-0147

**RE:   DISPUTE OF SLS DECISION ON OUR MORTGAGE AND FALSE INFORMATION SLS FABRICATED TO**

**STOP TAKING OUR PAYMENTS WHICH WE WERE MAKING WILLINGLY AND NOW WANT TO STEAL**

**OUR HOME AND EVENTHOUGH WE ARE MAKING PAYMENTS AND WERE WILLING AND ABLE TO**

**CONTINUE MAKING OUR MONTHLY MORTGAGE PAYMENTS. SLS BREACHED OUR CONTRACT**

**IS CAUSING US IRREPARABLE HARM AND FINANCIAL LOSS AND DEFAMATION**

**LOAN NO:  1008973761**

**3013 GRAND CONCOURSE, BRONX NY 10468.**

**IFEOMA AND SAMUEL EZEKWO**

**APPROVED MODIFICATION AND  MORTGAGE PAYMENTS  MADE ON TIME AND MONTHLY FOR SEVERAL MONTHS AND  SUDDENLY SLS RETURNED ONE PAYMENT AND FORCED US TO STOP MAKING PAYMNETS, KEPT ALL THE PAYMENTS WE MADE, FORCED US TO START ANOTHER MODIFICATION APPLICATION AND THEN WITHOUT TELLING US SAY THEY**

**DENIED MODIFICATION BECAUSE WE DID NOT COMPLETE AND PAY ORIGINAL MODIFICATION IN MARCH 2022 WHICH IS A BLATANT LIE BECAUSE WE NOTARIZED AND RETURNED ALL THE DOCUMENTS AND MADE ALL THE PAYMENTS UNTIL SLS FORCED US TO STOP PAYMENT AND FORCED US INTO ANOTHER MODIFICATION. WE WANT OUR MORTGAGE PAYMENTS RESTORED AS WE WERE PAYING BEFORE AND WE WANT TO CONTINUE MAKING OUR PAYMENTS WHICH WE ARE WILLING AND ABLE TO DO.  SLS HAS ALL THE DOCUMENTS.**

Dear Sirs/Madams:

Please we are disputing SLS decision on our loan  as it is false and inaccurate

and does not represent the facts and thus this is a breach of contract and fiduciary duty which we want SLS to correct immediately and restore our mortgage and monthly payments. We followed all the SLS instructions, returned all the signed and notarized documents which SLS acknowledged receipt and we were making all our monthly payments as instructed until SLS fabricated non factual data and want to take our home.

Below is the copy of the email I sent to SLS on October 10 2022 when SLS forced us to resubmit another modification even though we were making our monthly mortgage payments: After this SLS said nothing and I called them and SLS says SLS will not take mortgage payments.

THE OUTCOME WE WANT IS FOR SLS TO RESTORE OUR MORTGAGE AND ALLOW TO PAY OUR MORTGAGE AND KEEP OUR HOME.

**To SLS 10 10 2022**

**Ln No 1008973761 Ezekwo 3013 Grand Concourse Bx NY 10468 Resubmission Modif app 10 10 2022**

**Please attached is the resubmission of the modification package Ln # 1008973761 for 3013 Grand Concourse, Bronx NY 10468.**
**I  had spoken to SLS customer service because  even though I had done my modification and was approved and I was making my monthly payments, all of a sudden SLS returned a payment and told me that I have to do over the modification again. However SLS kept all the payments I made and did not refund them and was just running me around. SLS said they will send me another modification which I just received and have filled out attached here with required documents. Why SLS did not this horrific thing to me is unconscionable. I did not receive any written response requested from the previous modification and forbearance that they approved, collected several months of mortgage payment from me and then sent one month back and now forced me to repeat the process without any justification.**
**I was just told to resubmit a new modification package and ask for the application to be processed again. Please kindly review and process my application and please send me a written response at my mailing address below:**
**400 Tenafly Road, Unit 1002**
**Tenafly, NJ 07670.**
**Kindly modify our mortgage and please then refund the rest of the mortgage payments that we made but you refused to apply to our loan and allow us to continue making monthly mortgage payments this time and not cancel and force us to start all over again.**
**Ifeoma Ezekwo**


IN CONCUSION:   We dispute SLS' version of events and want SLS to honor our mortgage immediately and restore our mortgage and Monthly payments and properly credit all the payments we made in our mortgage and stop shaming and humiliating us and defaming us when we were making our payments.
Respectfully submitted;
"/s/*IfeomaEzekwo*"
Dr. Ifeoma Ezekwo; Disputer Homeowner
400 Tenafly Road
#1002
Tenafly, NJ 07670
(201) 674 9548   avitacares@yahoo.com

37.    **Legal Argument and Case Law**

38. <u>Breach of Contract</u>

39. <u>Vaca v Sipes</u>

40. "It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, see Ford Motor Co. v. Huffman, 345 U. S. 330; Syres v. Oil Workers International Union, 350 U. S. 892, and in its enforcement of the resulting collective bargaining agreement, see Humphrey v. Moore, 375 U. S. 335. The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see Steele v. Louisville & N. R. Co., 323 U. S. 192; Tunstall v. Brotherhood of Locomotive Firemen, 323 U. S. 210, and was soon extended to unions certified under the N. L. R. A., see Ford Motor Co. v. Huffman, supra. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. Humphrey v. Moore, 375 U. S., at 342. It is obvious that Owens' complaint alleged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs his cause of action. E. g., Ford Motor Co. v. Huffman, supra."

41. As demonstrated by this case breach of contract is a serious violation of law.  Defendant is involved in breach of contract in the Plaintiff's case.

42. "Although N. L. R. A. § 8 (b) was enacted in 1947, the NLRB did not until Miranda Fuel interpret a breach of a union's duty of fair representation as an unfair labor practice. In Miranda Fuel, the Board's majority held that N. L. R. A. § 7 gives employees "the right to be free from unfair or irrelevant or invidious treatment by their exclusive bargaining agent in matters affecting their 178*178 employment," and "that Section 8 (b) (1) (A) of the Act accordingly prohibits labor organizations, when acting in a statutory representative capacity, from taking action against any employee upon considerations or classifications which are irrelevant, invidious, or unfair." 140 N. L. R. B., at 185. The Board also held that an employer who "participates" in such arbitrary union conduct violates § 8 (a) (1), and that the employer and the union may violate §§ 8 (a) (3) and 8 (b) (2), respectively, "when, for arbitrary or irrelevant reasons or upon the basis of an unfair classification, the union attempts to cause or does cause an employer to derogate the employment status of an employee."[5] Id., at 186."

43. Again this case demonstrates how a party to a contract cannot arbitrarily harm the other party.  Defendant has breached a contract and violated the Plaintiff.

44. "A primary justification for the pre-emption doctrine— the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation. The doctrine was judicially developed in Steele and its progeny, and suits alleging breach of the duty remained judicially cognizable long after the NLRB was given unfair labor practice jurisdiction over union activities by the L. M. R. A.[6] Moreover, when the Board declared in Miranda Fuel that a union's breach of its duty of fair representation would henceforth be treated as an unfair labor practice, the Board

adopted and applied the doctrine as it had been developed by the federal courts. See 140 N. L. R. B., at 184-186. Finally, as the dissenting Board members in Miranda Fuel have pointed out, fair representation duty suits often require review of the substantive positions taken and policies pursued by a union in its negotiation of a collective bargaining agreement and in its handling of the grievance machinery; as these matters are not normally within the Board's unfair labor practice jurisdiction, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts, which have been engaged in this type of review since the Steele decision.[7]"

45. "In addition to the above considerations, the unique interests served by the duty of fair representation doctrine 182*182 have a profound effect, in our opinion, on the applicability of the pre-emption rule to this class of cases. The federal labor laws seek to promote industrial peace and the improvement of wages and working conditions by fostering a system of employee organization and collective bargaining. See N. L. R. A. § 1, as amended, 61 Stat. 136, 29 U. S. C. § 151. The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit. See, e. g., J. I. Case Co. v. Labor Board, 321 U. S. 332. This Court recognized in Steele that the congressional grant of power to a union to act as exclusive collective bargaining representative, with its corresponding reduction in the individual rights of the employees so represented, would raise grave constitutional problems if unions were free to exercise this power to further racial discrimination. 323 U. S., at 198-199. Since that landmark decision, the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law. Were we to hold, as petitioners and the Government urge, that the courts are foreclosed by the NLRB's Miranda Fuel decision from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint. See United Electrical Contractors Assn. v. Ordman, 366 F. 2d 776, cert. denied, 385 U. S. 1026.[8] The existence of even a small group 183*183 of cases in which the Board would be unwilling or unable to remedy a union's breach of duty would frustrate the basic purposes underlying the duty of fair representation doctrine. For these reasons, we cannot assume from the NLRB's tardy assumption of jurisdiction in these cases that Congress, when it enacted N. L. R. A. § 8 (b) in 1947, intended to oust the courts of their traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative."

46. This case demonstrates how a party in a contract has a duty, there are also federal laws that protect against a party denying the rights of a citizen in a contract for arbitrary or capricious purposes.  The law in the end is designed to assist citizens with fair outcomes. Defendant is attempting to steal the Plaintiff's property and to enact a corrupt agenda. The actions of Defendant must be stopped.

47. "We think that another situation when the employee may seek judicial enforcement of his contractual rights arises if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. It is true that the employer in such a

situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our 186*186 opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. Cf. Richardson v. Texas & N. O. R. Co., 242 F. 2d 230, 235-236 (C. A. 5th Cir.)."

48. The Plaintiff Dr. I. Ezekwo had the right to continue with a mortgage as was given by Defendant in its statements to the Plaintiff and yet Defendant went on to seek the foreclosure of the Plaintiff's property and Defendant went on to extort the Plaintiff demanding a payment of nearly two hundred thousand dollars.  Defendant then went on to state it wanted to completely take over and own the Plaintiff's property.  Defendant has partaken in a breach of contract and given the Plaintiff no remedies to bring about the Plaintiff's original right to continue with a mortgage.  The errors of the Defendant's actions are clearly outlined in the above cited case.

49. <u>Violation of Fair Debt Collection Practices Act, Breach of Contract, Violation of Fair Trade Practices</u>

50. <u>Kaymark v Bank of America</u>

51. "Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Court has repeatedly held that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes," Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir.2013), and, as such, we analyze the communication giving rise to the FDCPA claim "from the perspective of the least sophisticated debtor," Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.2008) (internal quotation marks omitted)."

52. Defendant has violated the FDCPA as outlined in the above case citation.  Thus the Plaintiff must be fully compensated and Defendant must cease from all actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

53. "Kaymark alleges that, by attempting to collect fees for legal services not yet performed in the mortgage foreclosure, Udren violated 15 U.S.C. § 1692e—specifically, § 1692e(2)(A), (5), and (10)—which imposes strict liability on debt collectors who "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692f(1) by attempting to collect "an[ ] amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.""

54. Defendant is extorting the Plaintiff by stealing the Plaintiff's property when the Plaintiff was to be continuing with a mortgage as this was a settled fact that was agreed to by Defendant.  This is false and deceptive action on the part of Defendant that has been stated as a violation of 15 U.S.C. § 1692e as noted in the above case statement.

55. "Bearing on these claims, the parties dispute the relevance of our intervening decision in McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240 (3d Cir. 2014)—decided by this Court after the District Court's order. In McLaughlin, we held that nearly-indistinguishable conduct in a debt collection demand letter, rather than a foreclosure complaint, violated the FDCPA. We now conclude that McLaughlin's holding extends to foreclosure complaints, and we reverse the District Court's order dismissing certain FDCPA claims against Udren."

56. This case statement demonstrates how Defendant violated the FDCPA in its actions against the Plaintiff.

57. "Timothy McLaughlin defaulted on a mortgage held by CitiMortgage. Citi—Mortgage referred the issue to Phelan Hallinan & Schmieg, LLP ("PHS"), which sent McLaughlin a demand letter on June 7, 2010, itemizing the total amount of debt due as of May 18, 2010, as $365,488.40. Id. at 243. The debt included two line items relevant here: $650 in "Attorney's Fees" and $550 for "Costs of Suit and Title Search." Id. (internal quotation marks omitted). Like in the case at bar, "McLaughlin assert[ed], among other things, that these fees and costs had not actually been incurred as of the date stated in the Letter," id., constituting actionable misrepresentation under § 1692e(2) ("The false representation of—(A) the character, amount, of legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.") and (10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.") of the FDCPA."

58. Defendant is also guilty of false representation as Defendant stole Plaintiff's property from the Plaintiff when the Plaintiff is by law supposed to be continuing with a mortgage.

59. "When McLaughlin filed a class action complaint, the district court held, among other things, that "estimating the amount of attorneys' fees in an itemized debt collection notice does not violate the FDCPA," id. (internal quotation marks omitted), and dismissed McLaughlin's claims. On appeal, this Court reversed: Nothing [in the Letter] says [the amount owed on the debt] is an estimate or in any way suggests that it was not a precise amount. As the drafter of the Letter, PHS is responsible for its content and for what the least sophisticated debtor would have understood from it. If PHS wanted to convey that the amounts in the Letter were estimates, then it could have said so. It did not. Instead, its language informs the reader of the specific amounts due for specific items as of a particular date. If the amount actually owed as of that date was less than the amount listed, then, construing the facts in the light most favorable to McLaughlin as we must when reviewing the dismissal under Rule 12(b)(6), McLaughlin has stated a claim that the Letter misrepresents the amount of the debt in violation of § 1692e(2) and (10)."

60. "Id. at 246 (internal citations omitted)."

61. "The facts in McLaughlin are virtually indistinguishable from the case at bar. Here, the Foreclosure Complaint also plainly "inform[ed] the reader of the specific amounts due for specific items as of a particular date," id., two months prior to the date the Foreclosure Complaint was filed. Udren also did not convey that the disputed fees were estimates or imprecise amounts. Thus, pursuant to McLaughlin, the Foreclosure Complaint conceivably misrepresented the amount of the debt owed, forming a basis for violations of § 1692e(2)(A) and (10)."

62. These above case statements show how false representations are a violation of the FDCPA. Defendant has made false representations in the case of the Plaintiff and is thus in violation of the FDCPA(including§ 1692e(2)(A) and (10))

63. "By extension, it follows that Kaymark has sufficiently alleged that Udren's attempt to collect those misrepresented fees was not "expressly authorized" by the mortgage contract or permitted by law. § 1692f(1).[1] To be sure, Kaymark expressly agreed to the collection of certain fee categories, such as "attorneys' fees, property inspection and valuation fees." App. 72a (¶ 14). But the contract also specified that BOA could only charge for "services performed in connection with" the default and collect "all expenses incurred" in pursuing authorized remedies. App. 72a (¶ 14), 75a (¶ 22) (emphases added). While such language is arguably capable of more than one meaning, we must view the Foreclosure Complaint through the lens of the least-sophisticated consumer and in the light most favorable to Kaymark. In this perspective, the most natural reading is that Udren was not authorized to collect fees for not-yet-performed legal services and expenses, forming a basis for a violation of § 1692f(1).[2]"

64. As outlined in this case statement, Defendant is in violation of§ 1692f(1). Thus Defendant must compensate the Plaintiff. Defendant must also cease from all actions against the Plaintiff

65. "This conclusion is not a departure from our sister Circuits, which have held that demanding fees in the collection of debts in a way contrary to the underlying agreement is actionable under the FDCPA. See Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir.2000) (per curiam) (finding FDCPA violation where the debt collector charged a collection fee based on a percentage of the principal balance of the debt due rather than the "actual cost[ ]" of collection as stipulated in the loan agreement); Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 610 (11th Cir. 2014) (finding § 1692f(1) violation where debtor "agreed to pay the actual costs of collection," not "a percentage above the amount of his outstanding debt that was unrelated to the actual costs to collect that debt") (per curiam). Likewise, Kaymark agreed to pay attorneys' fees and other expenses that were actually incurred in connection with the default, not fees that might eventually be incurred."

66. This case demonstrates that the Defendant violated the FDCPA in the Plaintiff's case

67. ""threat[en] to take an[ ] action that cannot legally be taken," 15 U.S.C. § 1692e(5), such as falsely threatening to file suit, see Brown v. Card Serv. Ctr., 464 F.3d 450, 454-55 (3d Cir.2006),"

68. As outlined in this case statement, The Defendant took ownership of the Plaintiff's property and Defendant had no legal right to carry out this action. Defendant had promised Plaintiff that it would continue with the Plaintiff's mortgage. But The Defendant carried out a nefarious act by stealing the Plaintiff's property. Thus The Defendant is in violation of the FDCPA.

69. "We conclude that a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint. This principle is widely accepted by our sister Circuits. See, e.g., Currier v. First Resolution Inv. Corp., 762 F.3d 529, 535 (6th Cir.2014) ("The fact that the [alleged violation] appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA."); James v. Wadas, 724 F.3d 1312, 1316 (10th Cir.2013) ("[T]he FDCPA `applies to the litigating activities of lawyers,' which, as other circuits

have held, may include the service upon a debtor of a complaint to facilitate debt collection efforts....") (quoting Heintz, 514 U.S. at 294, 115 S.Ct. 1489); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1032 (9th Cir. 2010) ("To limit the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word `litigation' that we decline to adopt."); Sayyed, 485 F.3d at 229 (subjecting interrogatories and summary judgment motions to the FDCPA); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000) (finding § 1692e(2) and (10) violations where debt collector's "allegation in its state court complaint ... gave a false impression as to the legal status it enjoyed"). And, while we have not directly decided the issue, this Court has extended the FDCPA to state court complaints, see Glover v. F.D.I.C., 698 F.3d 139, 152 n. 8 (3d Cir.2012) (explaining that the law firm, "[i]n filing the Foreclosure Complaint against Glover," indisputably met the definition 178*178 of "debt collector" under the FDCPA), and so has the Supreme Court, see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) (deciding the scope of the FDCPA's bona fide error defense on the basis of a notice attached to mortgage foreclosure complaint)."

70. By these case statements, all of The Defendant's communications to Plaintiff are in violation of the FDCPA.

71. "Udren makes two further attempts to distinguish foreclosure complaints from debt collection letters, both of which must fail."

72. "First, Udren contends that a complaint, because it is directed to the court, is not a communication to the consumer subject to §§ 1692e and 1692f. This argument cannot be sustained. The statute defines a "communication" under the FDCPA as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added). Interpreting this provision in Allen ex rel. Martin v. LaSalle Bank, N.A., where we decided whether a communication made to a consumer's attorney was governed by § 1692f, we held that "[i]f an otherwise improper communication would escape FDCPA liability simply because that communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability." 629 F.3d 364, 368 (3d Cir.2011); see also id. at n. 6 (noting that the Heintz Court also referred to a communication from a debt collector to a consumer's attorney, though it did not directly decide that question)."

73. These case statements all show that Defendant,  in its communications with the Plaintiff, has violated the FDCPA.

74. "So too for pleadings filed with the court and served on the consumer. Because the Foreclosure Complaint was served on Kaymark (directly or indirectly through his attorney), he was the intended recipient of the communication. See Donohue, 592 F.3d at 1031-32 (holding that a complaint served on the debtor is a communication subject to the FDCPA).[3] Courts have only held that a complaint misleads the judge, rather than the consumer, when, for instance, the plaintiff specifically pled that a materially-false attachment to a complaint "would mislead the Cook County judge handling his case." O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 941 (7th Cir.2011); see id. at 939 (noting that this allegation was "[u]nlike most lawsuits under the [FDCPA]"). This is

not that case. Here, the Foreclosure Complaint was unquestionably a communication directed at Kaymark in attempt to collect on his debt."

75. Again this case demonstrates how Defendant violated the FDCPA.

76. "Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of "debt collection" under the FDCPA, see McLaughlin, 756 F.3d at 245 (defining "debt collection" as "activity undertaken for the general purpose of inducing payment"), and it is even contemplated in various places in the statute, see, e.g., 15 U.S.C. § 1692i (discussing procedures for "action[s] to enforce an interest in real property securing the consumer's obligation"); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir.2013) (explaining why "[f]oreclosure's legal nature... does not prevent it from being debt collection"). Udren would have us "create an enormous loophole in the [FDCPA] [by] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir.2006). We will not. Like the Court explained previously, "if a collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA." Piper, 396 F.3d at 236 (internal quotation marks omitted)."

77. This case shows how foreclosure action comes under debt collection as a definition in the FDCPA.  Thus Defendant has violated the FDCPA.

78. "Given our holding in McLaughlin based on nearly-indistinguishable facts, we conclude that the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview under McLaughlin. We will reverse the order dismissing Kaymark's §§ 1692e(2)(A), (10), and 1692f(1) claims against Udren"

79. This case statement shows how foreclosure action is under the purview of the FDCPA, thus Defendant has violated the FDCPA with its fraudulent foreclosure of the Plaintiff's property.

80. "Kaymark next alleges that, by misrepresenting or overcharging fees in the Foreclosure Complaint, BOA and Udren[4] violated the UTPCPL by virtue of the violations of the FCEUA, 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under [the FCEUA], it shall constitute a violation of the [UTPCPL]."), or by engaging in certain "unfair or deceptive acts or practices," in violation of 73 P.S. § 201-2(4)(v) (representing that services have characteristics they do not have) and (xxi) ("Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.")."

81. "To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) "ascertainable loss of money or property, real or personal," id. § 201-9.2(a), (2) "as a result of" the defendant's prohibited conduct under the statute, id.; see Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 854 A.2d 425, 438 (2004)."

82. These case statements demonstrate that Defendant has met all the parameters of violating fair trade practices in its actions against the Plaintiff.

83. "Because the Pennsylvania Supreme Court has not definitively addressed what constitutes ascertainable loss under the statute, "we must predict how that court would rule if faced with the issue," and, in doing so, "[t]he decision of an intermediate state court is particularly relevant." Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d

Cir.2004). Lower state courts reason that "[a]scertainable loss must be established from the factual circumstances surrounding each case," Agliori v. Metro. Life Ins. Co., 879 A.2d 315, 321 (Pa.Super.2005), but that the loss must be non-speculative, Schwarzwaelder v. Fox, 895 A.2d 614, 619 (Pa.Super.2006); see also Benner v. Bank of America, N.A., 917 F.Supp.2d 338, 360 (E.D.Pa.2013) ("[A]n actual loss of money or property must have occurred to state a cognizable UTPCPL claim."). Based on the plain language of the statute, we find this interpretation persuasive."

84. "The statute explicitly provides that any person who suffers an ascertainable loss "may bring a private action to recover actual damages." 73 P.S. § 201-9.2 (emphasis added). Indeed, a plaintiff must have "suffered harm" as a result of the defendant's wrongful conduct. Yocca, 854 A.2d at 438."

85. "Of course, the statute references "ascertainable loss of money or property, real or personal," 73 P.S. § 201-9.2 (emphasis added), and there may be situations in which a lien against a consumer's property provides a sufficiently concrete loss that a consumer need not pay off before bringing a UTPCPL claim to remedy her rights. See Brock v. Thomas, 782 F.Supp.2d 133, 143-44 (E.D.Pa.2011) (denying motion to dismiss UTPCPL claim where equity theft scheme left victim's home encumbered by lien)."

86. The Plaintiff's property that Defendant stole from the Plaintiff and everything surrounding this incident meets the parameters to bring a claim against Defendant by the Plaintiff for violations of fair trade practices.

87. "To allege breach of contract in Pennsylvania, a plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa.Super.2004) (internal quotation marks omitted)."

88. These case statements demonstrate that Defendant has met all the parameters for breach of contract in the Plaintiff's case.

89. Breach of Contract(contd)

90. Allis-Chalmers Corp v Lueck

91. "In July 1981, respondent Lueck suffered a nonoccupational back injury while carrying a pig to a friend's house for a pig roast. He notified Allis-Chalmers of his injury, as required by the claims-processing procedure, and subsequently filed a disability claim with Aetna, also in accordance with the established procedure. After evaluating physicians' reports submitted by Lueck, Aetna approved the claim. Lueck began to receive disability benefits effective from July 20, 1981, the day he filed his claim with Aetna."

92. "According to Lueck, however, Allis-Chalmers periodically would order Aetna to cut off his payments, either without reason, or because he failed to appear for a doctor's appointment, or because he required hospitalization for unrelated reasons. After each termination, Lueck would question the action or supply additional information, and the benefits would be restored. In addition, according to Lueck, Allis-Chalmers repeatedly requested that he be reexamined by different doctors, so that Lueck believed that he was being harassed. All of Lueck's claims were eventually paid, although, allegedly, not until he began this litigation.[2]"

93. 206*206 B

94. "Lueck never attempted to grieve his dispute concerning the manner in which his disability claim was handled by Allis-Chalmers and Aetna. Instead, on January 18, 1982, he filed suit against both of them in the Circuit Court of Milwaukee County, Wis., alleging that they "intentionally, contemptuously, and repeatedly failed" to make disability payments under the negotiated disability plan, without a reasonable basis for withholding the payments. App. 4. This breached their duty "to act in good faith and deal fairly with [Lueck's] disability claims." Id., at 3. Lueck alleged that as a result of these bad-faith actions he incurred debts, emotional distress, physical impairment, and pain and suffering. He sought both compensatory and punitive damages. Id., at 4."

95. "If this is all there is to the independence of the state tort action, that independence does not suffice to avoid the pre-emptive effect of § 301. The assumption that the labor contract creates no implied rights is not one that state law may make. Rather, it is a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments in a timely manner, and, if so, whether Allis-Chalmers' conduct breached that implied contract provision."

96. "The Wisconsin court's assumption that the parties contracted only for the payment of insurance benefits, and that questions about the manner in which the payments were made are outside the contract is, moreover, highly suspect.[10] There is no reason to assume that the labor contract as interpreted by the arbitrator would not provide such relief. On its face, the agreement allows the Joint Plant Insurance Committee to resolve disputes involving "any insurance-related issues that may arise" (emphasis added), App. 43, and hardly suggests that only disputes involving the right to receive benefits were addressed in the contract. And if the arbitrator ruled that the labor agreement did not provide such relief expressly or by implication, that too should end the dispute, for under Wisconsin law there is nothing that suggests that it is not within the power of the parties to determine what would constitute "reasonable" performance of their obligations under an insurance contract. In sum, the Wisconsin court's statement that the tort was independent from a contract claim apparently was intended to mean no more than that the implied duty to act in good faith is different from the explicit contractual duty to pay. Since the extent of either duty ultimately depends upon the terms of the agreement between the parties, both are tightly bound with questions of contract interpretation that must be left to federal law."

97. "The conclusion that the Wisconsin court meant by "independent" that the tort is unrelated to an explicit provision of the contract is buttressed by analysis of the genesis and operation of the state tort. Under Wisconsin law, the tort intrinsically relates to the nature and existence of the contract. Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 13-16, 235 N. W. 413, 414-415 (1931). Thus the tort exists for breach of a "duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract," the scope of which, crucially, is "ascertained from a consideration of the contract itself." Id., at 16, 235 N. W., at 415. In Hilker, the court specifically noted:"

98. ""Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. In order to understand what is meant by bad faith a comprehension of one's duty is generally necessary, and we have concluded that we can best indicate the circumstances under which the insurer may become liable to the insured . . . by giving with some particularity our conception of the duty which the written contract of insurance imposes upon the carrier." Id., at 13, 235 N. W., at 414."

99. These case statements demonstrate how breach of contract is linked to the tort of breach of duty.  Defendant acted in bad faith, breached its contract and breached its duty to the Plaintiff.

100.     "In Alexander v. Gardner-Denver Co., 415 U. S. 36 (1974), the Court found that the NLRA conferred rights "on employees collectively to foster the processes of bargaining," id., at 51, and distinguished such rights which could be waived by contract between the parties, on the one hand, from an individual's substantive right derived from an independent body of law that could not be avoided by a contractual agreement, on the other."

101.     This case statement demonstrates that the Plaintiff Dr. I. Ezekwo has a right to her property, Defendant had a duty to continue with the mortgage for the Plaintiff as had been set forth by its statements to the the Plaintiff.  Thus Defendant has corruptly breached contract and broken the law.

102.     "See also Kranzush v. Badger State Mutual Casualty Co., 103 Wis. 2d 56, 64, 307 N. W. 2d 256, 261 (1981) ("The insured's right to be treated fairly . . . is rooted in the contract of insurance to which he and the insurer are parties"). Given the tort's genesis in contract law, this result is not surprising. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts § 205, Comment a, p. 100 (1981). Questions of good-faith performance thus necessarily are related to the application of terms of the contractual agreement."

103.     This case statement demonstrates that Defendant has not acted in good faith in the case of the Plaintiff.  Thus Defendant must cease and desist from all its actions against the Plaintiff.  Defendant must also compensate the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

104.     "Here, for example, record evidence suggests that Allis-Chalmers, which ultimately was responsible for the benefit payments, and Aetna, which made the payments to claimants, had developed a complex system of overlapping procedures to determine continuing eligibility to receive benefits. The manner in which claims were verified by physicians, and the procedures for canceling benefits, were also apparently established through the practice of the parties. See Deposition of Karen Smaglik 17-23, 28-30; Deposition of A. J. Abplanalp 5-15. Had this case gone to trial, a central factual question would have been whether the manner in which Lueck's claim was processed and verified had departed substantially from the standard manner of processing such claims under the contract. That question, of course, necessarily involves contract interpretation."

105.     "Prior Wisconsin cases had stated that the existence of a breach of contract cannot be irrelevant to the existence of a tortious breach of duty created by the contract. In the principal Wisconsin case, the court determined that there must be a breach of contract which is not even "fairly debatable" before a tort claim could be made. Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 691, 271 N. W. 2d 368, 376 (1978). If a claim is denied in the "absence of a reasonable basis" and with "knowledge or reckless disregard of a reasonable basis," the denial is actionable in tort. Id., at 693, 271 N. W. 2d, at 377."

106.     <u>Breach of Contract, Fraudulent Misrepresentation, Fraudulent Concealment, Violation of Consumer Fraud Act, Negligent Misrepresentation</u>

107.     <u>Wigod v Wells Fargo</u>

108.     "This appeal followed, and it presents two sets of issues. The first set of issues concerns whether Wigod has stated viable claims under Illinois common law and the ICFA. We conclude that she has on four counts. Wigod alleges that Wells Fargo agreed to permanently modify her home loan, deliberately misled her into believing it would do so, and then refused to make good on its promise. These allegations support garden-variety claims for breach of contract or promissory estoppel. She has also plausibly alleged that Wells Fargo committed fraud under Illinois common law and engaged in unfair or deceptive business practices in violation of the ICFA."

109.     Like in this above cited case, Defendant has also breached contract and Defendant is also involved in fraud.

110.     "We must accept as true all factual allegations in the complaint. E.g., Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Under the federal rules' notice pleading standard, a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.""

111.     This case statement demonstrates that the Plaintiff Dr. I. Ezekwo has stated a serious factual material claim and that Defendant is liable.

112.     "Wigod timely made, and Wells Fargo accepted, all four payments due under the trial plan. On the pleadings, we must assume that she complied with all other obligations under the TPP Agreement. Nevertheless, Wells Fargo declined to offer Wigod a permanent HAMP modification, informing her only that it was "unable to get you to a modified payment amount that you could afford per the investor guidelines on your mortgage." After the expiration of the TPP, Wells Fargo warned Wigod that she owed the outstanding balance and late fees and, in a subsequent letter, that she was in default on her home mortgage loan. Over the next few months, Wigod protested Wells Fargo's decision in a number of telephone conversations, but to no avail. During that time, she continued to make mortgage payments in the reduced amount due under the TPP, even after the trial term ended on November 1, 2009. In the meantime, Wells Fargo sent Wigod monthly notices threatening to foreclose if she failed to pay the accumulating amount of delinquency based on the original loan terms."

113.     "According to Wigod, Wells Fargo improperly re-evaluated her for HAMP after it had already determined that she was qualified and offered her a trial modification, and that it erroneously determined that she was ineligible for a permanent modification by miscalculating her property taxes. Wells Fargo responds that Treasury guidelines then in force allowed the servicer to verify, after initiating a trial modification that the borrower satisfied all government and investor criteria for a permanent modification, and that Wigod did not. In the course of this proceeding, however, Wells Fargo has not identified the specific criteria that Wigod failed to satisfy, except to say that it could not craft a permanent modification plan for her that would be consistent with its investor guidelines. Because we are reviewing a Rule 12(b)(6) dismissal, we disregard Wells Fargo's effort to contradict the complaint.[3]"

114.    "We first examine whether Wigod has adequately pled viable claims under Illinois law, and we conclude that she has done so for breach of contract, promissory estoppel, fraudulent misrepresentation, and violation of the ICFA. We then consider whether federal law precludes Wigod from pursuing her state-law claims, and we hold that it does not.[4]"

115.    "At the heart of Wigod's complaint is her claim for breach of contract. The required elements of a breach of contract claim in Illinois are the standard ones of common law: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." Association Benefit Services, Inc. v. Caremark RX, Inc., 493 F.3d 841, 849 (7th Cir.2007), quoting MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC, 364 Ill.App.3d 6, 300 Ill.Dec. 601, 845 N.E.2d 22, 30 (2006)."

116.    "In two different provisions of the TPP Agreement, paragraph 1 and section 3, Wells Fargo promised to offer Wigod a permanent loan modification if two conditions were satisfied: (1) she complied with the terms of the TPP by making timely payments and disclosures; and (2) her representations remained true and accurate.[5] 561*561 Wigod alleges that she met both conditions and accepted the offer, but that Wells Fargo refused to provide a permanent modification. These allegations state a claim for breach of contract."

117.    As in these above case statements, Defendant has met the parameters and criteria of breach of contract in the case of the Plaintiff Dr. I. Ezekwo.  Also as outlined in the above case statements, Defendant has partaken of fraudulent misrepresentation and violations of fair business practices.

118.    <u>Fraudulent concealment</u>

119.    "But see Schrager v. North Community Bank, 328 Ill.App.3d 696, 262 Ill.Dec. 916, 767 N.E.2d 376, 386 (2002) (finding, despite absence of fiduciary relationship, that special trust relationship existed between the plaintiff, an investor in a real estate venture, and the defendant bank who had induced the plaintiff to invest, "because defendants' superior knowledge and experience of [the developers' problematic] financial history, as well as the status of the ... development project, including the necessity of a fresh guarantor, placed defendants in a position of influence over" the plaintiff)."

120.    "The special relationship threshold is a high one: "the defendant must be `clearly dominant, either because of superior knowledge of the matter derived from... overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side.'" Miller, 260 Ill.Dec. 735, 762 N.E.2d at 13 (internal quotation marks omitted), quoting Mitchell v. Norman James Construction Co., 291 Ill.App.3d 927, 225 Ill. Dec. 881, 684 N.E.2d 872, 879 (1997). As the Mitchell court explained:"

121.    "Factors to be considered in determining the existence of a confidential relationship include the degree of kinship of the parties; any disparity in age, health, and mental condition; differences in education and business experience between the parties; and the extent to which the allegedly servient party entrusted the handling of her business affairs to the dominant party, and whether the dominant party accepted such entrustment."

122.        "225 Ill.Dec. 881, 684 N.E.2d at 879. In short, the defendant accused of fraudulent concealment must exercise "overwhelming influence" over the plaintiff. Miller, 260 Ill.Dec. 735, 762 N.E.2d at 14"

123.        By these case statements, it is clear that Defendant was involved in fraudulent concealment in the case of the Plaintiff Dr. I. Ezekwo.

124.        <u>Negligent Misrepresentation or Concealment</u>

125.        "In the alternative to her fraudulent misrepresentation and concealment claims, Wigod alleges that Wells Fargo negligently or carelessly (rather than intentionally) misrepresented or omitted material facts. Negligent misrepresentation involves the same elements as fraudulent misrepresentation, except that (1) the defendant need not have known that the statement was false, but must merely have been negligent in failing to ascertain the truth of his statement; and (2) the defendant must have owed the plaintiff a duty to provide accurate information. See Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd., 376 Ill.App.3d 1006, 315 Ill.Dec. 218, 876 N.E.2d 218, 228 (2007).[11]"

126.        By this case statement, Defendant meets the parameters of partaking in negligent misrepresentation in the case of the Plaintiff Dr. I. Ezekwo.

127.        <u>The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA)</u>

128.        "The ICFA protects consumers against "unfair or deceptive acts or practices," including "fraud," "false promise," and the "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. The Act is "liberally construed to effectuate its purpose." Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002). The elements of a claim under the ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir.2010), citing Robinson, 266 Ill.Dec. 879, 775 N.E.2d at 960. In addition, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." Id. at 935."

129.        This case statement demonstrates that Defendant has carried out deceptive and fraudulent practices.  Thus Defendant is liable.  Defendant must compensate the Plaintiff.  Defendant must cease and desist from all actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

130.        "Wigod accuses Wells Fargo of practices that are both deceptive and unfair. In her complaint, Wigod incorporates by reference her common-law fraud claims, alleging that Wells Fargo's misrepresentation and concealment of material facts constituted deceptive business practices. Compl. ¶¶ 123-25. She also alleges that Wells Fargo dishonestly and ineffectually implemented HAMP, and that this conduct constituted "unfair, immoral, unscrupulous business practices.""

131.        Again as this case statement describes, Defendant partook of deceptive, evil and fraudulent practices to steal from the Plaintiff Dr. I. Ezekwo.  Thus Defendant must compensate the Plaintiff.  Defendant must also cease from all actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

132.        "First, "intent to deceive" is not a required element of a claim under the ICFA, which provides redress "not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair." Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames Mortg. Loan Trust Series 2003-1, 787 F.Supp.2d 747, 751 (N.D.Ill.2011) (holding

that a loan servicer's alleged failure to consider the plaintiff's eligibility for a HAMP modification was a sufficient predicate for an ICFA claim); see 815 ILCS 505/2 ("[U]nfair or deceptive acts or practices ... are hereby declared unlawful....") (emphasis added); Siegel, 612 F.3d at 934-35 ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive."), citing Saunders v. Michigan Ave. Nat'l Bank, 278 Ill.App.3d 307, 214 Ill.Dec. 1036, 662 N.E.2d 602, 608 (1996). Wigod alleges that Wells Fargo engaged in both deceptive (fraudulent) and unfair business practices. Moreover, even if she had alleged only deceptive practices, pleading intent would still be unnecessary, since a "claim for `deceptive' business practices under the Consumer Fraud Act does not require proof of intent to deceive." Siegel v. Shell Oil Co., 480 F.Supp.2d 1034, 1044 n. 5 (N.D.Ill.2007), aff'd, 612 F.3d 932.[13] It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act, and Wigod has done so."

133.       This cited case demonstrates that Defendant has violated the Consumer Fraud Act in its actions against the Plaintiff Dr. I. Ezekwo.

134.       "Because Wigod's reduced trial plan payments were less than the amount she was legally obliged to pay Wells Fargo under the terms of her original loan documents, the court reasoned that Wigod was better off than she would have been without the TPP. This reasoning overlooks Wigod's allegations that she incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, never received a Modification Agreement, and lost her ability to receive incentive payments during the first five years of the modification. Prior to entering the trial plan, Wigod also could have taken the path of "efficient breach" and defaulted immediately rather than executing the TPP and making trial payments. By the time Wigod realized she would not receive the permanent modification she believed she had been promised, late fees had mounted and she found herself in default on her loan and with fewer options than when the trial period began. Whether any of these alternatives might have saved her home, or at least cut her losses, is impossible to determine from the pleadings. Her allegations are at least plausible. She has alleged pecuniary injury caused by Wells Fargo's deception and successfully pled the elements of an ICFA violation. Accord Boyd, 787 F.Supp.2d at 754 (allegations of "damage to [homeowner's] credit" and "the inability `to fairly negotiate a plan to stay in [his] home'" sufficiently pled economic damages under the ICFA); In re Bank of America Home Affordable Modification (HAMP) Contract Litigation, No. 10-md-02193-RWZ, 2011 WL 2637222, at *5-6 (D.Mass. July 6, 2011) (multi-district litigation) (denying motion to dismiss claims under fourteen states' consumer protection acts, including the ICFA).[14]"

135.       The illegal actions of Defendant against the Plaintiff accumulated costs for the Plaintiff in the tens of thousands of dollars, and Defendant has made the Plaintiff's life an extreme hardship.  Also after all the Plaintiff's payments Defendant has now stolen the Plaintiff's property even though the Plaintiff has a legal right to continue with paying a mortgage,  Plaintiff had an overarching agreement with Defendant, Defendant stated to Plaintiff that Defendant would allow the Plaintiff to pay a mortgage. Defendant then stole the Plaintiff's property, which is very valuable with much equity, for criminal gain.

136.       <u>No Preemption</u>

137.       "The first argument for obstacle preemption, like Wells Fargo's theory of field preemption, is inconsistent with Ocwen. There we held that the plaintiff-mortgagors'

"conventional" state law claims against a federal savings and loan association for breach of contract, fraud, and deceptive business practices complemented rather than conflicted with HOLA:"

138.     "Suppose an S & L signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract. Or if the mortgagee... fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud.... Enforcement of state law in either of the mortgage-servicing examples above would complement rather than substitute for the federal regulatory scheme."

139.     These case statements highlight that Defendant is liable for its illegal actions against the Plaintiff.

140.     "Wells Fargo appears to concede, as it must in light of Ocwen, that HOLA does not preempt Wigod's breach of contract claim or her common-law fraudulent representation claim. Wells Fargo nevertheless maintains that conflict preemption principles bar Wigod's ICFA claims, attempting to distinguish Ocwen by arguing that these claims "would necessarily establish new standards for servicers' customer relation policies." The argument is not persuasive. The gist of Wigod's ICFA claims is that Wells Fargo failed to disclose that it was going to reevaluate her eligibility for a permanent modification — contrary to the terms of both her TPP and HAMP program guidelines — and that it deceived her into believing it would modify her mortgage. Allowing these claims to proceed against Wells Fargo would not create state-law duties for servicing home mortgages, let alone ones that "actually conflict" with HOLA "or federal standards promulgated thereunder." See Geier v. American Honda Motor Co., 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In Ocwen, we found that the "straight fraud claims" arising under various state consumer protection statutes were not subject to conflict preemption under HOLA. 491 F.3d at 644-45, 647. Here, too, Wigod's ICFA claims "sound[] like conventional fraud charge[s]," the prosecution of which appears perfectly consistent with federal mortgage rules. Id. at 645. HOLA does not preempt them."

141.     Again this case statement demonstrates that Defendant is liable for its actions against the Plaintiff.

142.     "The first theory is inapplicable because none of Wigod's claims, at least as she has framed them, would impose on Wells Fargo any duties that go beyond its existing obligations under HAMP. As Wigod puts it, "if Wells Fargo followed the letter of the Program it would not have breached its contracts, acted negligently or fraudulently, or violated the ICFA." The whole thrust of this suit is that Wells Fargo failed to do what it agreed to do and what HAMP required it to do. The breach of contract and fraudulent misrepresentation claims allege that the TPP Agreement required Wells Fargo to offer Wigod a modification if she qualified under HAMP — and that she did and it didn't."

143.     The Plaintiff was also entitled to a continuation of her mortgage by Defendant as this was the agreement Defendant made with Plaintiff, but Defendant acted fraudulently and is thus liable as has been highlighted in the cited case statement above.  Defendant

told the Plaintiff that Plaintiff would be allowed to continue with a mortgage, but the Defendant then stole the Plaintiff's property for criminal gain.

144.	"For each of these claims, the state-law duty allegedly breached is imported from and delimited by federal standards established in HAMP's program guidelines. Where federal law supplies the standard of care imposed by state law, it is hard to see how they could conflict. See, e.g., Bates v. Dow Agrosciences LLC, 544 U.S. 431, 448, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005) ("a state cause of action that seeks to enforce a federal requirement `does not impose a requirement that is different from, or in addition to, requirements under federal law.'") (internal quotation marks omitted),"

145.	"Lohr, 518 U.S. at 495, 116 S.Ct. 2240 (majority opinion) ("Nothing... denies Florida the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."); Bausch v. Stryker Corp., 630 F.3d 546, 556 (7th Cir.2010) (holding that the Food, Drug, and Cosmetic Act did not preempt the plaintiff's tort claims against medical device manufacturer because the state tort duty allegedly breached was parallel to FDA regulations promulgated under the Act; "claims are not ... preempted by federal law to the extent they are based on defendants' violations of federal law")."

146.	These case statements demonstrate that Defendant is liable in the case of the Plaintiff Dr. I. Ezekwo.

147.	<u>Consideration</u>

148.	"Under Illinois law, "consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them." Dumas v. Infinity Broadcasting Corp., 416 F.3d 671, 679 n. 9 (7th Cir.2005), quoting Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 237 Ill.Dec. 100, 708 N.E.2d 1140, 1145 (1999). "If a debtor does something more or different in character from that which it was legally bound to do, it will constitute consideration for the promise." 3 Williston on Contracts, § 7:27.""

149.	"Here the TPP contained sufficient consideration because, under its terms, Wigod (the promise) incurred cognizable legal detriments. By signing it, Wigod agreed to open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information. Wigod's complaint alleges that she did more than simply agree to pay a discounted amount in satisfaction of a prior debt. In exchange for Wells Fargo's conditional promise to modify her home mortgage, she undertook multiple obligations above and beyond her existing legal duty to make mortgage payments. This was adequate consideration, as a number of district courts adjudicating third-generation HAMP cases have recognized. See, e.g., In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation, No. 10-md-02193-RWZ, 2011 WL 2637222, at *4 (D.Mass. July 6, 2011) (multi-district litigation) ("The requirements of the TPP all constitute new legal detriments."); Insanely v. JP Morgan Chase Bank, N.A., No. C 10-03892 WHA, 2011 WL 1134451, at *4 (N.D.Cal. Mar. 28, 2011) (same)."

150.	As these case statements highlight, Defendant is liable for its actions against the Plaintiff.

151.	<u>Definite and Certain Terms</u>

152.	"A contract is enforceable under Illinois law if from its plain terms it is ascertainable what each party has agreed to do. Academy Chicago Publishers v. Cheever,

144 Ill.2d 24, 161 Ill.Dec. 335, 578 N.E.2d 981, 983 (1991). "A contract may be enforced even though some contract terms may be missing or left to be agreed upon, ""

153.       This case statement demonstrates that Defendant is liable for breach of contract.

154.       <u>Fraudulent Misrepresentation</u>

155.       The elements of a claim of fraudulent misrepresentation in Illinois are:

156.       (1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

157.       This case statement demonstrates that the actions of Defendant meet all the parameters of fraudulent misrepresentation.  Thus Defendant is liable for its actions against the Plaintiff.


158.       <u>Violation of Consumer Fraud Statutes, Unfair Practices</u>

159.       "Section 56:8-2 - Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice"

160.       "Universal Citation: NJ Rev Stat § 56:8-2 (2015)

161.       56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice"

162.       "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice;"

163.       "Universal Citation: NY Gen Bus L § 349 (2012)"

164.        " §349.  Deceptive  acts and practices unlawful. (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful. General Business Law ("GBL") § 349"

165.       As has been demonstrated in these statutes, Defendant  violated these above cited statutes in its actions against the Plaintiff.  Defendant has violated Consumer Fraud Statutes in its actions against the Plaintiff Dr. I. Ezekwo.

166.       <u>15 U.S. Code § 1692f - Unfair practices</u>

167.       "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

168.       "(1)The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

169.       "(6)Taking or threatening to take any no judicial action to effect dispossession or disablement of property if—(A)there is no present right to possession of the property claimed as collateral through an enforceable security interest;(B)there is no present intention to take possession of the property; or(C)the property is exempt by law from such dispossession or disablement."

170.      Defendant has violated this statute in its actions against the Plaintiff.  Thus Defendant is liable and must compensate the Plaintiff.


171.      <u>Violation of Consumer Protection Laws and Violation of the Dodd-Frank Act</u>

172.      "Similarly, a deceptive act or practice may not be cured by subsequent truthful disclosures."

173.      "The Dodd-Frank Act makes it unlawful for any covered person or service provider to engage in

174.      an "abusive act or practice."15 An abusive act or practice:

175.      • Materially interferes with the ability of a consumer to understand a term or condition of a

176.      consumer financial product or service or

177.      • Takes unreasonable advantage of:

178.      o A lack of understanding on the part of the consumer of the material risks, costs, or

179.      conditions of the product or service;

180.      o The inability of the consumer to protect its interests in selecting or using a consumer

181.      financial product or service; or

182.      o The reasonable reliance by the consumer on a covered person to act in the interests of the

183.      consumer"

184.      Thus Defendant is in violation of the Dodd-Frank Act in its actions against the Plaintiff.

185.      <u>Violations of Consumer Protection Guidelines</u>

186.      "Consumers can file complaints at a number of entities:

187.      the institution itself, the Better Business Bureau, State Attorneys General, the FTC's Consumer

188.      Sentinel, the CFPB Consumer Response Center, other Federal and State agencies, or on-line

189.      consumer complaint boards such as www.ripoffreport.com or www.complaints.com.

190.      For example, not allowing African-American consumers to open

191.      deposit accounts, or subjecting African-American consumers to different requirements to open

192.      deposit accounts, may be an unfair practice even in those instances when ECOA does not apply

193.      to this type of transaction."


194.      "A product is targeted to particular populations, without appropriate tailoring of marketing,

195.      disclosures, and other materials designed to ensure understanding by the consumers.

196.        h. The entity improperly gives inferior terms to one customer demographic as compared to

197.        other customer demographics.

198.        i. The entity improperly offers or provides more products or services to one customer

199.        demographic as compared to other customer demographics.

200.        j. Customer service representatives improperly treat customers of certain demographics

201.        worse or provide extra assistance or exceptions to customers of certain demographics.

202.        k. The entity engages in targeted advertising or marketing in a discriminatory way.

203.        l. The entity uses decision-making processes in its eligibility determinations, underwriting,

204.        pricing, servicing or collections that result in discrimination.

205.        m. The entity fails to evaluate and make necessary adjustments and corrections to prevent

206.        discrimination"

207.        Defendant has violated all these consumer protection guidelines cited above as Defendant has ruthlessly discriminated against and harassed the Plaintiff Dr. I. Ezekwo. Defendant stole the Plaintiff's property for criminal gain.

208.        Further Violations of Consumer Protection Guidelines

"Determine whether:

a. Consumers are reasonably able to obtain the products and services, including interest

rates or rewards, as represented by the entity

b. The entity offers products and services to consumers in a manner that prevents discrimination.

c. Consumers receive the specific product or service that they request.

d. Counter-offers clearly, prominently, and accurately explain the difference between the

original product or services requested and the one being offered.

e. Actual practices are consistent with stated policies, procedures, or account disclosures"

Again these consumer guidelines mentioned above were violated by Defendant in its treatment of the Plaintiff.

209.        Employees and Third Parties Interacting with Consumers

210.        "Evaluate how the entity monitors the activities of employees and third-party contractors, marketing sales personnel, vendors, and service providers to ensure they do not engage in unfair, deceptive, or abusive acts or practices with respect to consumer interactions. Interview employees and third parties, as appropriate. Specifically, consider whether:

211.        a. The entity ensures that employees and third parties who market or promote products or

212.       services are adequately trained so that they do not engage in unfair, deceptive, or abusive

213.       acts or practices, including discrimination.

214.       b. The entity conducts periodic evaluations or audits to check whether employees or third

215.       parties follow the entity's training and procedures and has a disciplinary policy in place

216.       to deal with any deficiencies.

217.       c. The entity reviews compensation arrangements for employees, third-party contractors,

218.       and service providers to ensure that they do not create unintended incentives to engage in

219.       unfair, deceptive, or abusive acts or practices, particularly with respect to product sales,

220.       loan originations, and collections.

221.       d. Performance evaluation criteria do not create unintended incentives to engage in unfair,

222.       deceptive, or abusive acts or practices, including criteria for sales personnel based on

223.       sales volume, size, terms of sale, or account performance

224.       e. The entity implements and maintains effective risk and supervisory controls to select and

225.       manage third-party contractors and service providers.

226.       f. The entity has a process to take prompt corrective action if the decision-making processes

227.       it uses produce deficiencies or discriminatory results."

228.       As Defendant is involved in a RICO conspiracy with various malevolent actors, its objective is to use discriminatory practices to enhance the financial and political position of its cronies and itself.  Thus Defendant has illegally incentivized the harassment of the Plaintiff and the theft of the Plaintiff's property.

229.       <u>CFPB Mortgage Servicing Rules</u>

230.       "Error resolution and information requests. Servicers are required to meet certain procedural requirements for responding to written information requests or complaints of errors. The rule requires servicers to comply with the error resolution procedures for certain listed errors as well as any error relating to the servicing of a mortgage loan. Servicers may designate a specific address for borrowers to use. Servicers generally are required to acknowledge the request or notice of error within five days. Servicers also generally are required to correct the error asserted by the borrower and provide the borrower written notification of the correction, or to conduct an investigation and provide the borrower written notification that no error occurred, within 30 to 45 days. Further, within a similar amount of time, servicers generally are required to acknowledge borrower written requests for information and either provide the information or explain why the information is not available."

231.       Defendant did not appropriately respond to the Plaintiff's complaints.

232.     <u>Wrongful Foreclosure and Lack of Authority</u>

233.     <u>Yvanova v New Century Mortgage</u>

234.     "We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment."

235.     ""[O]nly the `true owner' or `beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." (Barrionuevo v. Chase Bank, N.A. (N.D.Cal. 2012) 885 F.Supp.2d 964, 972; see Herrera v. Deutsche Bank National Trust Co. (2011) 196 Cal.App.4th 1366, 1378 [127 Cal.Rptr.3d 362] [bank and reconveyance company failed to establish they were current beneficiary and trustee, respectively, and therefore failed to show they "had authority to conduct the foreclosure sale"];"

236.     This case highlights that only a true owner can initiate foreclosure proceedings. Since Defendant was receiving monthly payments from the Plaintiff and Defendant promised the Plaintiff  that Plaintiff would be allowed to have a mortgage, the actions of Defendant are illegal as Defendant  stole the property to make criminal financial gain with a property that was valuable with equity.  Defendant had no authority to steal the Plaintiff's property.  Defendant extorted close to thirty thousand dollars in payments from the Plaintiff, only for the Defendant then to steal the Plaintiff's property in Defendant's RICO conspiracy.

237.     "In itself, the principle that only the entity currently entitled to enforce a debt may foreclose on the mortgage or deed of trust securing that debt is not, or at least should not be, controversial. It is a "straightforward application[] of well-established commercial and real-property law: a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent)." (Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title (2013) 63 Duke L.J. 637, 640.) Describing the copious litigation arising out of the recent foreclosure crisis, a pair of commentators explained: "While plenty of uncertainty existed, one concept clearly emerged from litigation during the 2008-2012 period: in order to foreclose a mortgage by judicial action, one had to have the right to enforce the debt that the mortgage secured. It is hard to imagine how this notion could be controversial." (Whitman & Milner, Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note (2013) 66 Ark. L.Rev. 21, 23, fn. omitted.)"

238.     As this case statement describes Defendant had no right to steal the Plaintiff's property.  Defendant was accepting payments from the Plaintiff and was to continue the Plaintiff's mortgage as it had promised the Plaintiff, Defendant then stole the Plaintiff's property, these actions by Defendant are against the law.  Therefore, Defendant also illegally perpetuated a hoax against the government.

239.     "A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure. (Chavez v. Indymac Mortgage Services (2013) 219 Cal.App.4th 1052, 1062 [162 Cal.Rptr.3d 382]; Munger v. Moore (1970) 11 Cal.App.3d 1, 7 [89 Cal.Rptr. 323].)[4] A foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action. (Barrionuevo v. Chase Bank, N.A., supra, 885 F.Supp.2d at pp. 973-974; Ohlendorf v. American Home Mortgage Servicing (E.D.Cal. 2010) 279

F.R.D. 575, 582-583.) As explained in part I, ante, only the original beneficiary, its assignee or an agent of one of these has the authority to instruct the trustee to initiate and complete a nonjudicial foreclosure sale."

240.     As described in this case, Defendant had no authority to steal Plaintiff's property. Defendant was accepting payments from the Plaintiff and was to continue with the Plaintiff's mortgage as it had promised this to the Plaintiff  that Defendant would allow the Plaintiff to continue paying a mortgage. Thus the actions taken by Defendant are a wrongful foreclosure.  Defendant is involved in illegal oppressive fraud.

241.     "In Glaski, supra, 218 Cal.App.4th 1079, 1094-1095, the court held a borrower may base a wrongful foreclosure claim on allegations that the foreclosing party acted without authority because the assignment by which it purportedly became beneficiary under the deed of trust was not merely voidable but void."

242.     "A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) "It binds no one and is a mere nullity." (Little v. CFS Service Corp. (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923].) "Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it...." (Colby v. Title Ins. and Trust Co. (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in First Nat. Bank of L. A. v. Maxwell (1899) 123 Cal. 360, 371 [55 P. 980], "`A void thing is as no thing.'""

243.     These case statements show that when the assignment of a loan is void, foreclosure cannot be pursued.  Defendant was accepting payments from the Plaintiff and was continuing to a mortgage as it had promised the Plaintiff.  Defendant, by stealing the Plaintiff's property, has acted illegally.

244.     "On the narrow question before us — whether a wrongful foreclosure plaintiff may challenge an assignment to the foreclosing entity as void — we conclude Glaski provides a more logical answer than Jenkins. As explained in part I, ante, only the entity holding the beneficial interest under the deed of trust — the original lender, its assignee, or an agent of one of these — may instruct the trustee to commence and complete a nonjudicial foreclosure. (§ 2924, subd. (a)(1); Barrionuevo v. Chase Bank, N.A., supra, 885 F.Supp.2d at p. 972.) If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever (Colby v. Title Ins. and Trust Co., supra, 160 Cal. at p. 644; Rest.2d Contracts, § 7, com. a, p. 20), the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure. (Barrionuevo v. Chase Bank, N.A., at pp. 973-974.)"

245.     Again Defendant had no authority to steal the Plaintiff's property. Defendant stated to Plaintiff that Defendant was going to continue the Plaintiff's mortgage, only for the Defendant to steal the Plaintiff's property for criminal gain.

246.     "A borrower therefore "has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee" (id. at p. 291) — that is, as the current holder of the beneficial interest under the deed of trust. (Accord, Wilson v. HSBC Mortgage Services, Inc. (1st Cir. 2014) 744 F.3d 1, 9 ["A homeowner in Massachusetts — even when not a party to or third party beneficiary of a mortgage assignment — has standing to challenge that assignment as void because success on the merits would prove the purported assignee is

not, in fact, the mortgagee and therefore lacks any right to foreclose on the mortgage."].)[11]"

247.      "Borrowers who challenge the foreclosing party's authority on the grounds of a void assignment "are not attempting to enforce the terms of the instruments of assignment; to the contrary, they urge that the assignments are void ab initio." (Reinagel, supra, 735 F.3d at p. 225; accord, Mruk v. Mortgage Electronic Registration Systems, Inc. (R.I. 2013) 82 A.3d 527, 536 [borrowers challenging an assignment as void "are not attempting to assert the rights of one of the contracting parties; instead, the homeowners are asserting their own rights not to have their homes unlawfully foreclosed upon"].)"

248.      Thus the actions of Defendant are illegal.  The Plaintiff has a right to continue her mortgage and Defendant's theft of the Plaintiff's property is an illegal fraud carried out by the Defendant.

249.      "In seeking a finding that an assignment agreement was void, therefore, a plaintiff in Yvanova's position is not asserting the interests of parties to the assignment; she is asserting her own interest in limiting foreclosure on her property to those with legal authority to order a foreclosure sale."

250.      As described in this case statement, Defendant had no authority to steal the Plaintiff's property.  Thus Defendant must cease and desist from all its actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

251.      "In deciding the limited question on review, we are concerned only with prejudice in the sense of an injury sufficiently concrete and personal to provide standing, not with prejudice as a possible element of the wrongful foreclosure tort. (See fn. 4, ante.) As it relates to standing, we disagree with defendants' analysis of prejudice from an illegal foreclosure. A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests (Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158 P.3d 718]) — the borrower has lost ownership of the home in an allegedly illegal trustee's sale. (See Culhane, supra, 708 F.3d at p. 289 [foreclosed-upon borrower has sufficient personal stake in action against foreclosing entity to meet federal standing requirement].) Moreover, the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment. Thus "[t]he identified harm — the foreclosure — can be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment." (Id. at p. 290.)"

252.      "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security."

253.      Thus as this case highlights, Defendant had no right to steal the Plaintiff's property.

254.      "It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. (Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title, supra, 63 Duke L.J. at p. 650.) "Such a view fundamentally misunderstands the mortgage contract."

255.      Thus again as this case shows, Defendant cannot be allowed to steal the Plaintiff's property as Defendant has no authority.  Defendant must immediately return Plaintiff's property to Plaintiff.

256.     "A homeowner who has been foreclosed on by one with no right to do so has suffered an injurious invasion of his or her legal rights at the foreclosing entity's hands. No more is required for standing to sue. (Angelucci v. Century Supper Club, supra, 41 Cal.4th at p. 175.)"

257.     "When a property has been sold at a trustee's sale at the direction of an entity with no legal authority to do so, the borrower has suffered a cognizable injury."

258.     As these case statements demonstrate, a great injury is caused when an individuals' property has been foreclosed by someone who does not have the requisite authority.  Defendant did not have authority and it stole the Plaintiff's property, this is a great crime by Defendant.  Defendant is causing the Plaintiff irreparable harm by Defendant's illegal actions.

259.     "In further support of a borrower's standing to challenge the foreclosing party's authority, plaintiff points to provisions of the recent legislation known as the California Homeowner Bill of Rights, enacted in 2012 and effective only after the trustee's sale in this case. (See Lueras v. BAC Home Loans Servicing, LP (2013) 221 Cal.App.4th 49, 86, fn. 14 [163 Cal.Rptr.3d 804].)[14]Having concluded without reference to this legislation that borrowers do have standing to challenge an assignment as void,"

260.     "Plaintiff has alleged that her deed of trust was assigned to the Morgan Stanley investment trust in December 2011, several years after both the securitized trust's closing date and New Century's liquidation in bankruptcy, a defect plaintiff claims renders the assignment void."

261.     "First, only the mortgagee (that is, the original lender or its assignee) may exercise the power of sale,[8] and the borrower is entitled to relief from foreclosure by an unauthorized party. (Culhane, at p. 290.)"

262.     These case statements show how Defendant has no authority to foreclose the Plaintiff's property. The Defendant promised the Plaintiff that Defendant was to continue with a mortgage for the Plaintiff.  Thus Defendant is acting illegally by not letting the Plaintiff continue with a mortgage.  Defendant stole the Plaintiff's property in a RICO conspiracy.

263.     "Plaintiff cites newly added provisions that prohibit any entity from initiating a foreclosure process "unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest" (§ 2924, subd. (a)(6)); require the loan servicer to inform the borrower, before a notice of default is filed, of the borrower's right to request copies of any assignments of the deed of trust "required to demonstrate the right of the mortgage servicer to foreclose" (§ 2923.55, subd. (b)(1)(B)(iii)); and require the servicer to ensure the documentation substantiates the right to foreclose (§ 2924.17, subd. (b)). The legislative history indicates the addition of these provisions was prompted in part by reports that nonjudicial foreclosure proceedings were being initiated on behalf of companies with no authority to foreclose. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Conf. Rep. on Sen. Bill No. 900 (2011-2012 Reg. Sess.) as amended June 27, 2012, p. 26.)"

264.     <u>Violation of the Securities Act</u>

265.     <u>Reves v Ernst & Young</u>

266.     "After the Co-Op filed for bankruptcy, petitioners, a class of holders of the notes, filed suit against Arthur Young & Co., the firm that had audited the Co-Op's financial

statements (and the predecessor to respondent Ernst & Young). Petitioners alleged, inter alia, that Arthur Young had intentionally failed to follow generally accepted accounting principles in its audit, specifically with respect to the valuation of one of the Co-Op's major assets, a gasohol plant. Petitioners claimed that Arthur Young violated these principles in an effort to inflate the assets and net worth of the Co-Op. Petitioners maintained that, had Arthur Young properly treated the plant in its audits, they would not have purchased demand notes because the Co-Op's insolvency would have been apparent. On the basis of these allegations, petitioners claimed that Arthur Young had violated the antifraud provisions of the 1934 Act as well as Arkansas' securities laws."

267.    Defendant in the Plaintiff's case has also committed fraud and violated the antifraud provisions of the Securities Act.  Defendant has violated the Securities Act in general.

268.    "Petitioners prevailed at trial on both their federal and state claims, receiving a $6.1 million judgment. Arthur Young appealed, claiming that the demand notes were not "securities" under either the 1934 Act or Arkansas law, and that the statutes' antifraud provisions therefore did not apply. A panel of the Eighth Circuit, agreeing with Arthur Young on both the state and federal issues, reversed. Arthur Young & Co. v. Reves, 856 F. 2d 52 (1988). We granted certiorari to address the federal issue, 490 U. S. 1105 (1989), and now reverse the judgment of the Court of Appeals."

269.    This case shows the precedent for stopping violations of the Securities Act, which Defendant has violated in the case of the Plaintiff.  Thus Defendant must cease and desist from all of its actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

270.    "The fundamental purpose undergirding the Securities Acts is "to eliminate serious abuses in a largely unregulated securities market." United Housing Foundation, Inc. v. Forman, 421 U. S. 837, 849 (1975). In defining the scope of the market that it wished to regulate, Congress painted with a broad brush. It recognized the virtually limitless scope of human ingenuity, especially in the creation of "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits," SEC v. W. J. Howey Co., 328 U. S. 293, 299 (1946), and determined that the best way to achieve its goal of protecting investors was "to define `the term "security" in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.' " Forman, supra, at 847-848 (quoting H. R. Rep. No. 85, 73d Cong., 1st Sess., 11 (1933)). Congress therefore did not attempt precisely to cabin the scope of the Securities Acts.[1] Rather, it enacted a definition of "security" sufficiently broad to encompass virtually any instrument that might be sold as an investment."

271.    By the definitions in this cited case, Defendant is clearly guilty of securities fraud and Defendant is violating the Securities Act in the case of the Plaintiff. Defendant is seeking to illegally aggrandize itself by stealing from the Plaintiff.

272.    "Third, we examine the reasonable expectations of the investing public: The Court will consider instruments to be "securities" on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction."

273. "Landreth Timber, 471 U. S., at 687, 693 (relying on public expectations in holding that common stock is always a security)"

274. These case statements demonstrate that Defendant is involved in securities fraud as Defendant is illegally using the theft of Plaintiff's property to make criminal profit.

275. "The Co-Op sold the notes in an effort to raise capital for its general business operations, and purchasers bought them in order to earn a profit in the form of interest.[4] Indeed, one of the primary inducements offered purchasers was an interest rate constantly revised to keep it slightly above the rate paid by local banks and savings and loans. From both sides, then, the transaction is most naturally conceived as an investment in a business enterprise rather than as a purely commercial or consumer transaction."

276. "As to the plan of distribution, the Co-Op offered the notes over an extended period to its 23,000 members, as well as to nonmembers, and more than 1,600 people held notes when the Co-Op filed for bankruptcy. To be sure, the notes were not traded on an exchange. They were, however, offered and sold to a broad segment of the public, and that is all we have held to be necessary to establish the requisite "common trading" in an instrument. See, e. g., Landreth Timber, supra (stock of closely held corporation not traded on any exchange held to be a "security"); Tcherepnin, 389 U. S., at 337 (nonnegotiable but transferable "withdrawable capital shares" in savings and loan association held to be a "security"); Howey, 328 U. S., at 295 (units of citrus grove and maintenance contract "securities" although not traded on exchange)."

277. These case statements demonstrate that Defendant is involved in securities fraud as Defendant is seeking criminal profit with its theft of the Plaintiff's property.

278. "The third factor — the public's reasonable perceptions — also supports a finding that the notes in this case are "securities." We have consistently identified the fundamental essence of a 69*69 "security" to be its character as an "investment." See supra, at 61, 65. The advertisements for the notes here characterized them as "investments," see supra, at 59, and there were no countervailing factors that would have led a reasonable person to question this characterization. In these circumstances, it would be reasonable for a prospective purchaser to take the Co-Op at its word."

279. "Finally, we find no risk-reducing factor to suggest that these instruments are not in fact securities. The notes are uncollateralized and uninsured. Moreover, unlike the certificates of deposit in Marine Bank, supra, at 557-558, which were insured by the Federal Deposit Insurance Corporation and subject to substantial regulation under the federal banking laws, and unlike the pension plan in Teamsters v. Daniel, 439 U. S. 551, 569-570 (1979), which was comprehensively regulated under the Employee Retirement Income Security Act of 1974, 88 Stat. 829, 29 U. S. C. § 1001 et seq. (1982 ed.), the notes here would escape federal regulation entirely if the Acts were held not to apply."

280. "For these reasons and those stated in the opinion of the Court, I conclude that the notes issued by respondents are securities within the meaning of the 1934 Act."

281. Defendant has illegally created an investment for itself with stolen property, this is in clear violation of the Securities Act.

282. <u>Abuse of Process, Malicious Prosecution, Violation of 1st Amendment and Prima Facie Tort</u>

283. <u>Curiano v. Suozzi</u>

284.    "In the second cause of action plaintiffs contend that the purpose of the Suozzi v Parente action was not to remedy a wrong believed in good faith to have been committed but was brought "for the malicious and intentional purpose of harming defendants therein" and "to punish the plaintiffs for exercising their constitutional right to free speech and to participation in the public election process." Plaintiffs also asserted that institution of the prior action violated a "duty owed plaintiffs to refrain from institution of a baseless legal proceeding" and "was further intended to cause the plaintiffs expense and to burden them with the defense of a protracted legal proceeding", thereby damaging them."

285.    Similarly to this case, the Plaintiff Dr. I. Ezekwo has been maliciously harassed by The Defendant to stop the Plaintiff's free speech. The Defendant has not even given the Plaintiff Dr. I. Ezekwo the opportunity to defend herself against The Defendant's violent attacks, by letting the Plaintiff be free from legal harassment. The Defendant like in this cited case is using the legal process to take away the rights of the Plaintiff Dr. I. Ezekwo in a RICO conspiracy. The Plaintiff must be compensated immediately. The Plaintiff is supposed to make mortgage payments as Defendant promised to the Plaintiff, but the Defendant has not allowed this and Defendant stole the Plaintiff's property, this all further proves that the Defendant has acted criminally and maliciously simply to harm the Plaintiff. The evil Defendant has shown criminal mens rea.

286.    "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective (Board of Educ. v Farmingdale Classroom Teachers Assn., supra, at p 403)."

287.    This case demonstrates abuse of process and malicious prosecution, which is what happened in the case of the Plaintiff Dr. I. Ezekwo. As shown, the case of the Plaintiff Dr. I. Ezekwo meets all the parameters(elements) of abuse of process as it was carried out by The Defendant. The Defendant from the outset has been out to hurt the Plaintiff and aggrandize itself s and its criminal friends. The Defendant's present actions are part of this same criminal process and it must not be allowed to proceed. The statement and facts and arguments given by the Plaintiff herein must be taken as established and the Plaintiff must be compensated for the Defendant's criminal actions against Plaintiff. The Defendant's collateral objective was simply to create chaos and disruption for the Plaintiff so that the Defendant could criminally benefit politically by the public sensation, the Defendant would create this political sensation as a smoke screen for the Defendant's extortion and criminality. This is classic RICO.

288.    "First, the process used must involve "an unlawful interference with one's person or property" (Williams v Williams, 23 N.Y.2d 592, 596)."

289.    The Defendant unlawfully interfered with the person and property of the Plaintiff Dr. I. Ezekwo, this clearly demonstrates that The Defendant was involved in abuse of process. The Defendant's present acts are a part of this unlawful abuse of process, as it is creating an alternate legal universe where Defendant believe crimes will be assisted by the courts. All the statements made by the Plaintiff herein must be taken as established, , this proves that the Defendant was simply harassing and seeking to harm the Plaintiff in a RICO conspiracy. The Plaintiff must be fully compensated by the Defendant and the Defendant must relinquish all claims to the Plaintiff Dr. I. Ezekwo's property and stop Defendant's extortion of the Plaintiff.

38

290.       "……the "`gist of the action for abuse of process'", which is "`the improper use of process after it is issued'" (Williams v Williams, supra, at p 596; Dean v Kochendorfer, 237 N.Y. 384, 390; Miller v Stern, 262 App Div 5, 8)."

291.       This above statement clearly describes the behavior of The Defendant as it has been involved in abuse of process in the Defendant's ceaseless harassment of the Plaintiff Dr. I.Ezekwo.  The actions of The Defendant also falls under the abuse of process banner as it has made the courts take actions that have never been seen before in the history of America, whereby a criminal group of individuals involved in RICO conspiracy has used the American legal process to hide acts of criminality and their harassment of an innocent citizen, who had been wrongfully prosecuted by the City of Englewood and assaulted in the hopes of the Defendant using the power of judicial precedent to sway the hand of the government of America to give more influence to this said Defendant and criminals, then the Defendant continuing its acts of harassment and theft and other atrocious crimes. The legal process is being sidelined because the Defendant with a crazed sense of entitlement and a criminal record feels that it must use the legal system to harass an innocent citizen( the Plaintiff), because The Defendant cannot accept its lot in life whereby it is liable by the law for its criminal actions but feels out of hatred that the legal system must go along with it to be breaking the law.  The Plaintiff must be given full compensation by the Defendant immediately.  Even today, the Defendant is still conspiring against the Plaintiff. So this process is not over and the Defendant must be forced to cease from its terrorist acts against the Plaintiff.

292.       "Some years ago this court recognized the general principle that harm intentionally inflicted is prima facie actionable unless justified (see Advance Music Corp. v American Tobacco Co., 296 N.Y. 79; American Guild of Musical Artists v Petrillo, 286 N.Y. 226; Opera on Tour v Weber, 285 N.Y. 348, cert den 314 US 615). That principle has developed into the specific cause of action of prima facie tort consisting of four elements: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful (Burns Jackson Miller Summit & Spitzer v Lindner, 59 N.Y.2d 314, 332; ATI, Inc. v Ruder & Finn, 42 N.Y.2d 454, 458)."

293.       The Defendant meets the parameters of prima facie tort against the Plaintiff Dr. I. Ezekwo as described in this paragraph of the cited case above.   The Defendant's frivolous legal actions and present actions against the Plaintiff are part of the same prima facie tort, thus the Defendant's actions are illegal in nature and part of a harassment campaign against the Plaintiff Dr. I. Ezekwo.  The Defendant has wasted and continues wasting court time.  The Plaintiff's statements herein stand alone outlining this case, The Defendant has illegally used the court system for crime and should be sanctioned. The Plaintiff should be given compensation immediately.  The Defendant is involved in endless lies.

294.       <u>Cook v. Sheldon</u>

295.       "Cook sued Troopers Sheldon and Saldana in the Southern District of New York under section 1983, alleging false arrest, malicious prosecution, and malicious abuse of process. He claimed that the Troopers arrested him without probable cause because they were outraged that he should counsel Serrano to keep silent and request a lawyer."

296.       "In a three-paragraph order, the district court denied the Troopers' motion, finding that material issues of fact existed regarding the reason for Cook's arrest. The court stated

that "[i]f Plaintiff was arrested in retaliation for the exercise of his First Amendment rights, the defense of qualified immunity is unavailable.""

297.     "Cook pleads three causes of action under section 1983: (1) false arrest; (2) malicious prosecution; and (3) malicious abuse of process. The Troopers argue that the district court should have dismissed all three claims by summary judgment on the ground of qualified immunity. Their fundamental position is that, so long as they had probable cause to believe that Cook violated the VIN statute, they are entitled to qualified immunity as a matter of law, regardless of their motives. We disagree."

298.     "For this purpose, "[a] right is `clearly established' if it meets one of three tests: (1) it is defined with reasonable clarity; or (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful." Jeffries v. Harleston, 21 F.3d 1238, 1248 (2d Cir.), vacated on other grounds and remanded, ___ U.S. ___, 115 S.Ct. 502, ___ L.Ed.2d ___ (1994)."

299.     "It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause. See Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir.1993); Golino, 950 F.2d at 870."

300.     This case clearly shows how violations of constitutional rights are not to be tolerated, especially when they are in retaliation for the seeking of justice and First Amendment rights.  This is the same thing that The Defendant did to the Plaintiff Dr. I. Ezekwo.  Malicious abuse of process and Malicious prosecution also occurred in this above cited case , The Defendant's actions were clearly unlawful and the Defendant knew this from the beginning, but chose to partake in a RICO conspiracy and the harassment of the Plaintiff Dr. I. Ezekwo anyway.   The Defendant therefore partook in malicious abuse of process and malicious prosecution.

301.     "If Cook is right that the Troopers employed a "shoot 'em all, and let God sort 'em out" arrest psychology, their actions were abhorrent to the Fourth Amendment."

302.     "For these reasons, as to the false arrest claim, the Troopers are not entitled to qualified immunity as a matter of law; and the district court properly denied their motion for summary judgment."

303.     Thus in the Plaintiff Dr. I. Ezekwo's case, The Defendant is not entitled to immunity as its actions were similarly abhorrent as has been stated in this above cited case.  The Defendant violated the Plaintiff Dr. I. Ezekwo's constitutional rights. The Defendant's current actions are a part of a criminal conspiracy, it still like a wild animal insists on harming the Plaintiff when The Defendant should simply stay silent. The Defendant has pursued a criminal agenda by the means of trying to now harass Plaintiff continually on multiple fronts.  This is an illegal act and part of a criminal agenda.  The Plaintiff Dr. I. Ezekwo must be given compensation and be given justice.

304.     "Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law. See Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 39 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). In New York, a plaintiff alleging malicious prosecution must show: (1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice. See Martin v. City of Albany, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306-07 (1977)."

305.     "On the facts pled by Cook, he has demonstrated these elements. (1) The
Troopers commenced a criminal proceeding against him by formally charging Cook with
violating the VIN statute and having him arraigned before the town justice. See Carl v.
Ayers, 53 N.Y. 14, 17 (1873) (warrantless arrest followed by information and preliminary
hearing before a magistrate constitutes commencement). (2) The proceeding ended in
Cook's favor when the charges against him were dismissed. See Loeb v. Teitelbaum, 77
A.D.2d 92, 100-01, 432 N.Y.S.2d 487, 493-94 (1980) (formal abandonment by
prosecutor constitutes favorable termination). Finally, as discussed above, (3) the
Troopers lacked probable cause, and, (4) if Cook is to be believed, they were driven by
vengeance. See Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 444-45,
377 N.E.2d 975, 976-77 (1978) (spite satisfies actual malice requirement)."

306.     This case demonstrates that the Plaintiff Dr. I. Ezekwo's case meets all the
parameters of a malicious prosecution carried out by The Defendant.  The Defendant has
been driven by vengeance to also be continually tracking the Plaintiff Dr. I. Ezekwo so
that it can find ways to harm her, the Defendant also sided with the City of Englewood.
The Defendant's misogyny and hatred of women and racism are obvious. Of all the
calamities and problems ravaging across the state of New Jersey and the country as a
whole, there is a never ending obsession by the Defendant with one retired woman(the
Plaintiff) who lives quietly in her home. Of all the problems and criminals the Defendant
could prosecute including itself,  the Defendant has chosen to harass a woman of African
descent (Plaintiff) who had issues with the City of Englewood and who had created
litigation against individuals who were illegally and corruptly using government.  The
Defendant is involved in RICO conspiracy and hate crime.

307.     "Taking Cook's allegations to be true, it is unquestionable that these acts violated
Cook's clearly established procedural due process rights: No reasonable law enforcement
officer could think it lawful to charge a person with a crime without probable cause and
for the sole purpose of retaliation. See Jeffries, 21 F.3d at 1248 (a right is clearly
established if "a reasonable defendant would understand from existing law that his acts
were unlawful"); Mozzochi, 959 F.2d at 1179; Magnotti, 918 F.2d at 367. Thus, we reject
the Troopers' claim that they are immune as a matter of law from liability for malicious
prosecution."

308.     Again as in this cited case, the Plaintiff Dr. I. Ezekwo's procedural due process
rights were violated by The Defendant.  Therefore the Defendant is liable and not
immune.

309.     "As with malicious prosecution, we turn to state law to find the elements of the
malicious abuse of process claim. See Raysor, 768 F.2d at 39. See generally Wilson v.
Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (state law is
authoritative source of elements of section 1983 cause of action). In New York, a
malicious abuse of process claim lies against a defendant who (1) employs regularly
issued legal process to compel performance or forbearance of some act (2) with intent to
do harm without excuse or justification, and (3) in order to obtain a collateral objective
that is outside the legitimate ends of the process. See Curiano v. Suozzi, 63 N.Y.2d 113,
116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984); Board of Educ. of
Farmingdale v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 403, 380
N.Y.S.2d 635, 642, 343 N.E.2d 278, 282 (1975)."

310.    By these parameters stated in this cited case, the Defendant carried out malicious abuse of process in violation of the Plaintiff Dr. I. Ezekwo's constitutional rights.

311.    "Here, the Troopers clearly employed criminal process against Cook by having him arraigned on charges of illegal possession of a car with no VIN. This arraignment caused Cook to be held in custody. See Mormon v. Baran, 35 N.Y.S.2d 906, 909 (Sup.Ct.1942) (legal process means that a court issued the process, and the plaintiff will be penalized if he violates it). Cook alleges that the Troopers did this to harm Cook, as retribution for advising Serrano. See Board of Educ. of Farmingdale, 38 N.Y.2d at 404, 380 N.Y.S.2d at 642-43, 343 N.E.2d at 283 ("collateral objective" includes retribution)."

312.    "Procedural due process forbids the use of legal process for a wrongful purpose. See Torres v. Superintendent of Police, 893 F.2d 404, 410 (1st Cir.1990) (procedural due process violations include deprivations "of liberty by a distortion and corruption of the processes of law"). If Cook's malicious abuse of process allegations are true, then, the Troopers violated his clearly established due process rights. Thus, we reject the Troopers' contention that they are entitled to qualified immunity as a matter of law. The district court properly denied summary judgment on the malicious abuse of process claim."

313.    The Defendant has distorted and corrupted the process of law in the case of the Plaintiff Dr. I. Ezekwo, violating the Plaintiff Dr. I. Ezekwo's constitutional rights and due process rights.  The Plaintiff has a right to her property, the Plaintiff has a right not to have Plaintiff's property stolen from Plaintiff. The Defendant is abusing the legal system to criminally harm the Plaintiff.  The Defendant also acted out of retribution for the Plaintiff having litigation against individuals who corruptly used government.

314.    "For the above reasons, we affirm the district court's denial of summary judgment."

315.    "AFFIRMED."

316.    <u>Williams v. Williams</u>

317.    "We will not blindly apply the words of a statute to arrive at an unreasonable or absurd result. If the statute is so broadly drawn as to include the case before the court, yet reason and statutory purpose show it was obviously not intended to include that case, the court is justified in making an exception through implication. (Matter of Meyer, 209 N.Y. 386; Holy Trinity Church v. United States, 143 U. S. 457; cf. Booth v. Curtis Pub. Co., 15 A D 2d 343, affd. 11 N Y 2d 907; see, also, Crawford, The Construction of Statutes, § 177 [1940].)"

318.    "The purpose of section 74 of the Civil Rights Law, as discussed above, is the protection of reports of judicial proceedings which are made in the public interest. In light of this purpose, it is impossible to conceive of the Legislature's intending to protect the defendant's perversion of judicial proceedings. It would be contrary to reason to say that the Legislature considered it necessary to protect such defamation in order to implement the salutary aims of the statute."

319.    "We conclude that it was never the intention of the Legislature in enacting section 74 to allow "any person" to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute. "Society has a pervasive and strong interest in preventing and redressing attacks upon reputation", and the courts are delegated with the responsibility of protecting that right. (Rosenblatt v. Baer, 383 U. S. 75, 86.)"

320.       This case demonstrates that malicious prosecution and defamation are not protected actions and are not offered immunity, making their instigator liable.  Thus The Defendant is liable in the case of the Plaintiff  Dr. I. Ezekwo as the Defendant created a malicious prosecution of the Plaintiff Dr. I. Ezekwo and the Defendant also defamed the Plaintiff Dr. I. Ezekwo.

321.       <u>Monell v New York City Dept. of Social Services</u>

322.       "Although, after plenary consideration, we have decided the merits of over a score of cases brought under § 1983 in which the principal defendant was a school board — and, indeed, in some of which § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, provided the only basis for jurisdiction — we indicated in Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 279 (1977), last Term that the question presented here was open and would be decided "another day." That other day has come and we now overrule Monroe v. Pape, supra, insofar as it holds that local governments are wholly immune from suit under § 1983."

323.       Thus as this case points out, the Defendant is liable for its criminal actions against the Plaintiff Dr. I.Ezekwo.  The Defendant has no immunity.  The Defendant is corrupting the legal process and the Plaintiff must be compensated immediately, the Defendant must also relinquish all legal claims it has on the Plaintiff Dr. I.Ezekwo's property, and stop all extortion of the Plaintiff Dr. I. Ezekwo.  The Defendant must return Plaintiff's property to Plaintiff.

324.       <u>Malicious Prosecution and Abuse of Process</u>

325.       <u>Dutt v Kremp</u>

326.       "If society is to have any confidence in the legal system and the administration of justice within our courts, there must be an accountability for derelict lawyers that is equal to the level of accountability we impose on derelict physicians and other professionals. As I view this record, the evidence strongly supports the jury's findings against Dutt. Plainly stated, the jury, by its verdict, announced that lawyers are not privileged to assail the reputation of physicians in court and subject them to the enervating trauma, time and cost of a lawsuit with its concomitant attenuation of professional standing without reasonable cause.[3]"

327.       "…to the effect that "an attorney's reasonable investigation and industrious search of legal authority is an essential component of probable cause." Id. at 254 Cal.Rptr. at 347, 765 P.2d at 509."

328.       "I am persuaded that the rule embraced by the Supreme Court of Arizona in Bradshaw v. State Farm Mut. Auto. Ins., 157 Ariz. 411, 758 P.2d 1313 (1988), is more appropriate. Holding that the test for probable cause is both subjective and objective, the Bradshaw court stated that "[t]he initiator of the action must honestly believe in its possible merits; and, in light of the facts, that belief must be objectively reasonable." Id. 417, 758 P.2d at 1319 (citing Haswell v. Liberty Mutual Insurance Co., 557 S.W.2d 628, 633 (Mo. 1977); Restatement (Second) of Torts § 675 cmt. c (1977); Prosser & Keeton on the Law of Torts § 120, at 893 (5th ed. 1984)) (emphasis in original text)."

329.       "…..the instant case from that of Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980). In Bull, this court affirmed an award against the attorney who filed a medical malpractice action based upon a determination that substantial evidence in the record supported the finding that the action was filed for the ulterior purpose of coercing a nuisance settlement."

330.    "The elements that must be proved in a malicious prosecution action in addition to the filing of a prior action against the plaintiffs are: (1) a lack of probable cause to commence the prior action; (2) malice; (3) favorable termination of the prior action; and (4) damages. See Chapman v. City of Reno, 85 Nev. 365, 369, 455 P.2d 618, 620 (1969)."

331.    "An abuse of process claim consists of two elements: (1) an ulterior purpose other than resolving a legal dispute, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. Kovacs v. Acosta, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990). An "ulterior purpose" includes any "improper motive" underlying the issuance of legal process. See Laxalt v. McClatchy, 622 F. Supp. 737, 751 (D. Nev. 1985)."

332.    This case demonstrates that the Plaintiff Dr. I. Ezekwo has been the victim of malicious prosecution and abuse of process by the Defendant, who is attempting to take away all the Plaintiff's rights for corrupt financial and political gain. The Defendant is clearly acting out of malice and hate to shift the proceedings of the government in a fashion that hurts the Plaintiff Dr. I. Ezekwo.

333.    <u>Malicious Prosecution and Abuse of Process(contd)</u>

334.    <u>Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A</u>

335.    "In Trussell, this court examined the development of case law in Ohio setting forth the elements of the tort of malicious criminal prosecution, contrasting the elements of that tort with the elements of the tort of malicious civil prosecution. The Trussell court, applying paragraph one of the syllabus of Rogers v. Barbera (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162, observed: "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Trussell, supra, at syllabus."

336.    "As was noted by the Trussell court, the elements of the tort of malicious civil prosecution were set forth in Crawford v. Euclid Natl. Bank (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 344, 483 N.E.2d 1168, 1171: "`(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *.'" (Citations omitted.)"

337.    "We accept the proposition that the tort of malicious civil prosecution  does not provide a remedy for a situation in which process is used to accomplish an improper ulterior purpose. Such a situation occurs when there is an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process * * *." Id. at 898. Accordingly, we recognize the tort of abuse of process as a distinct tort in its own right, distinguishable from the tort of malicious civil prosecution. See Clermont Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 16 OBR 9, 474 N.E.2d 357; Avco Delta Corp. v. Walker (1969), 22 Ohio App.2d 61, 51 O.O.2d 122, 258 N.E.2d 254."

338.    "Having determined that Ohio recognizes the tort of abuse of process, we now address the elements of the tort. We hold that the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an

ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process"

339.     Again this case demonstrates that the Defendant is involved in malicious prosecution and abuse of process in the Plaintiff Dr. I. Ezekwo's case.  As shown by this case The Defendant's acts meet all the parameters of malicious prosecution and abuse of process, the Defendant bringing legal processes against the Plaintiff when the Plaintiff was simply to continue with the Plaintiff's mortgage is one of these acts as the Defendant had no need to steal the Plaintiff's property. This clearly demonstrates that the legal processes the Defendant has brought against the Plaintiff are malicious with evil objective. The Defendant is hijacking the legal process for criminal ends.  The Plaintiff must be compensated immediately and the Defendant must relinquish all legal claims to the Plaintiff's property, stop all extortion of the Plaintiff and allow the Plaintiff to keep her property.  The Defendant also lied to Plaintiff, just so that the Defendant could try to appear a certain way to avoid scrutiny only for Defendant then to go deeper into its hate and criminality to hurt the Plaintiff by stealing the Plaintiff's property.

340.     <u>Intentional Infliction of Emotional Distress-Tort</u>
341.     <u>Fletcher v Western National</u>
342.     "[3] The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (Alcorn v. Anbro Engineering, Inc., 2 Cal. 3d 493, 497-498 [86 Cal. Rptr. 88, 468 P.2d 216]; State Rubbish etc. Assn. v. Siliznoff, 38 Cal. 2d 330, 337-339 [240 P.2d 282]; Spackman v. Good, 245 Cal. App. 2d 518, 528-529, 531-534 [54 Cal. Rptr. 78]; Rest.2d Torts, § 46.) Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged. (Agostini v. Strycula, 231 Cal. App. 2d 804, 808 [42 Cal. Rptr. 314]; State Rubbish etc. Assn. v. Siliznoff, supra, at p. 339; Rest.2d Torts, supra, § 46, com. g.)"

343.     This case demonstrates that the Defendant meets all the parameters of this tort of intentional infliction of emotional distress on the Plaintiff Dr. I. Ezekwo.  Thus the Defendant must let the Plaintiff keep her property. The Plaintiff also must be fully compensated for the harm the Plaintiff has suffered.  The Defendant must return Plaintiff's property to Plaintiff.

344.

345.     "Nevertheless, the exercise of the privilege to assert one's legal rights must be done in a permissible way and with a good faith belief in the existence of the rights asserted. (Rest.2d Torts, § 46, com. g., supra; cf. Rest. Torts, § 773, supra, com. a.) [5] It is well established that one who, in exercising the privilege of asserting his own economic interests, acts in an outrageous manner may be held liable for intentional infliction of emotional distress. (Vargas v. Ruggiero, supra, 197 Cal. App. 2d 709; Bowden v. Spiegel, Inc., 96 Cal. App. 2d 793 [216 P.2d 571]; cf. State Rubbish etc. Assn. v. Siliznoff, supra, 38 Cal. 2d 330; Emden v. Vitz, 88 [10 Cal. App. 3d 396] Cal.App.2d 313 [198 P.2d 696]; see also National Life & Acc. Ins. Co. v. Anderson, 187 Okla. 180

[102 P.2d 141]; Continental Cas. Co. v. Garrett, 173 Miss. 676 [161 So. 753]; and Prosser, Law of Torts, supra, pp. 49-50.)"

346.       "Even if it could be said that defendants were asserting their legal rights in good faith, they were not privileged to do so in an outrageous manner. [6] Moreover, viewed most favorably to plaintiff, the evidence indicates that there was no probable cause to believe that plaintiff had made a misrepresentation of material fact or that his disability was due to anything other than his injury in January 1965; that there was no good faith dispute concerning liability under the policy and that defendants invented the alleged dispute as a part of their scheme to deprive plaintiff of the benefits of his policy. Defendants concede in their opening brief that the jury impliedly found that defendants were not striving for settlement in good faith. Such implied finding is amply supported by the evidence and disposes of the argument based upon the public policy favoring settlement. [7] Settlement implies the existence of a good faith dispute, and there is no public policy in favor of an attempt to coerce settlement of a nonexistent dispute by outrageous means."

347.       These above statements clearly demonstrate that outrageous behavior is not allowed for and forms the basis of a tort.  The Defendant's behavior towards the Plaintiff Dr. I. Ezekwo is outrageous and evil, it thus is a tort.  The Defendant must thus cease and desist from all activities against the Plaintiff Dr. I. Ezekwo including its acts of extortion and theft of Plaintiff Dr. I. Ezekwo's property.

348.       ""The emotional distress must in fact exist, and it must be severe." (Prosser, Law of Torts, supra, p. 51; Rest.2d Torts, supra, § 46, Com. j.) We are referred to no case that adequately defines the term "severe" in this context. Defendant has cited Alsteen v. Gehl, 21 Wis.2d 349 [124 N.W.2d 312] in which the court states. "[t]he plaintiff must demonstrate that he was unable to function in his other relationships because of the emotional distress caused by defendant's conduct." (124 N.W.2d at p. 318.) [9] We do not believe that that statement represents the law in California, however, for it is well established here that recovery may be had for emotional [10 Cal. App. 3d 397] distress alone without resulting physical disability. (Alcorn v. Anbro Engineering, Inc., supra, 2 Cal. 3d 493, 498; Perati v. Atkinson, 213 Cal. App. 2d 472, 474 [28 Cal. Rptr. 898].)"

349.       This case clearly demonstrates that the Plaintiff Dr. I. Ezekwo is suffering severe emotional distress as part of her harassment by the Defendant, as no reasonable person can be expected to endure a decade of continued abuse under all guises designed to hurt and harm the Plaintiff Dr. I. Ezekwo.

350.       "The term "severe emotional distress" is discussed in comment j to section 46 of the Restatement Second, of Torts, supra. "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." It appears, therefore, that in this context, "severe" means substantial or enduring as distinguished from trivial or transitory. Severe emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."

351.       This case statement demonstrates that the Plaintiff Dr. I. Ezekwo's decade of traumatic assaults by evil criminals meet the criteria of substantial and enduring that

define severe emotional distress. This theft of Plaintiff's property by the Defendant must be stopped as it is part of the same pattern and a direct cause of the emotional distress. The extortion carried out by the Defendant against the Plaintiff must also stop. The Plaintiff must be fully compensated. The Plaintiff must keep Plaintiff's property. Defendant must return Plaintiff's property to Plaintiff.

352. ""It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." Rest.2d Torts, § 46, com. j., supra.) [10a] It is our conclusion that there is sufficient evidence from which emotional distress of the requisite severity can be found and that there is substantial evidence to support the jury's determination that it in fact existed. fn. 8"

353. This case statement again demonstrates that the Plaintiff Dr. I. Ezekwo is suffering severe emotional distress due to the actions of the Defendant and Defendant's theft of Plaintiff's property. Thus the Defendant must cease and desist from all its criminal actions against the Plaintiff including its extortion. Defendant must return Plaintiff's property to Plaintiff.

354. "It is true that plaintiff's testimony did not indicate that he suffered any traumatic emotional distress of the character of shock, horror or nausea, but the requisite emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry. (Crisci v. Security Ins. Co., 66 Cal. 2d 425, 433 [58 Cal. Rptr. 13, 426 P.2d 173]; Rest.2d Torts, § 46, com. j., supra.)"

355. The Plaintiff Dr. I. Ezekwo's case thus follows this above cited case as Plaintiff has suffered traumatic emotional distress and all the highly unpleasant mental reactions mentioned in the above cited case. This harassment has been carried out against the Plaintiff over the course of a decade in a RICO conspiracy.

356. "Susceptibility of the plaintiff to emotional distress and a defendant's awareness thereof, have often been mentioned as significant in determining liability. (See Alcorn v. Anbro Engineering, Inc., supra, 2 Cal. 3d 493, 498, fn. 3 and authorities there cited.)"

357. After a decade of harassment by many criminal actors including the Defendant in a RICO conspiracy, the Plaintiff is highly susceptible to emotional distress and the Defendant knows this very well, it is also the reason the Defendant and its criminal allies continue to endlessly harass the Plaintiff Dr. I. Ezekwo.

358. "Moreover, as pointed out previously, the duration of the emotional distress is one of the factors to be considered in determining its severity. (Rest.2d Torts, § 46, com. j., supra), and the jury could reasonably infer that plaintiff's worry and anxiety persisted for many months following defendants' letter of August 25, 1966, during their continued recalcitrance. (Cf. the continuing conduct of the defendant in Parrott v. Bank of America, 97 Cal. App. 2d 14, 24 [217 P.2d 89, 35 A.L.R.2d 263].)"

359. The duration of the Plaintiff Dr. I. Ezekwo's harassment by criminal assailants has been ongoing non-stop for a decade. Thus the Defendant is committing criminal acts and a tort. The Defendant is involved in a RICO conspiracy and obstruction of justice, Defendant must cease and desist from all activity against the Plaintiff Dr. I. Ezekwo to allow litigation against it and an investigation into its activities by government authorities. Thus theft of the Plaintiff Dr. I. Ezekwo's property must be stopped as it is

part of a criminal conspiracy.  The Defendant must compensate the Plaintiff Dr. I. Ezekwo.  Defendant must return Plaintiff's property to Plaintiff.

360.     "Additionally, as characterized by defendants in their briefs, a number of "woeful occurrences" befell plaintiff: his family lacked food and clothing; his house payments became delinquent; he lost a parcel of real property in which he had invested in Arizona; he and his family found it necessary to subsist on macaroni, beans and potatoes from which plaintiff gained 47 pounds; his utilities were turned off and he had to "gather" money from friends and neighbors to get them turned back on; his wife was required to go to work; and one of his daughters had to miss school on the days the wife was working. It would not appear unreasonable that a person with a prior history of industry and concern for his family would suffer substantial emotional distress in the nature of grief, humiliation, embarrassment, chagrin, disappointment and worry as a result of these occurrences."

361.     As mentioned in this case statement, the Plaintiff Dr. I. Ezekwo has suffered similar injustice at the hands of her assailants that includes the Defendant.

362.     "Although we do not know that it could be or ought to be segregated, we think it undeniable from his testimony, that a substantial part of plaintiff's [10 Cal. App. 3d 399] emotional distress resulted not from the receipt of the letters but from the threatened and actual discontinuance of payments by defendants and the resulting economic consequences."

363.     The Defendant is using extortion and property theft to commit terrorist acts against the Plaintiff Dr. I. Ezekwo.  The Defendant and its criminal allies have attacked every part of the Plaintiff Dr. I. Ezekwo's life seeking to cause her harm and emotional distress.  The actions of the Defendant have caused the Plaintiff great emotional distress.

364.     "On the other hand, if the action is one in tort, punitive damages may be recovered upon a proper showing of malice, fraud or oppression even though the conduct constituting the tort also involves a breach of contract. (Acadia, California, Ltd. v. Herbert, 54 Cal. 2d 328, 336-337 [5 Cal. Rptr. 686, 353 P.2d 294]; Chelini v. Nieri, 32 Cal. 2d 480, 486-487 [196 P.2d 915]; Haigler v. Donnelly, 18 Cal. 2d 674, 680-681 [117 P.2d 331]; Wetherbee v. United Ins. Co. of America, supra, 265 Cal. App. 2d 921, 928-929; Sharp v. Automobile Club of So. Cal., 225 Cal. App. 2d 648, 653 [37 Cal. Rptr. 585].) Likewise, if the conduct is tortious, damages for emotional distress may be recovered despite the fact that the conduct also involves a breach of contract. (Crisci v. Security Ins. Co., supra, 66 Cal. 2d 425, 432-434; Acadia, California, Ltd. v. Herbert, supra, 54 Cal. 2d 328, 336-337; Taylor v. Marine Cooks & Stewards Assn., 117 Cal. App. 2d 556, 562-563 [256 P.2d 595].) [14] When the case sounds in tort, Insurance [10 Cal. App. 3d 401] Code, section 10111 does not restrict recovery to the amounts due under the policy. (Wetherbee v. United Ins. Co. of America, supra, 265 Cal. App. 2d 921, 927-929.)"

365.     "We hold, therefore, that defendants' threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to plaintiff for the purpose of causing him to surrender his policy or disadvantageously settle a nonexistent dispute is essentially tortious in nature and is conduct that may legally be the basis for an action for damages for intentional infliction of emotional distress. We further hold that, independent of the tort of intentional infliction of emotional distress, such conduct on the part of a disability

insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate for all detriment proximately resulting therefrom, [10 Cal. App. 3d 402] including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages."

366.        These case statements indicate that the Defendant has committed a tort and must compensate the Plaintiff for both economic loss and emotional distress.  The Defendant must not be allowed to further its criminal agenda by stealing the Plaintiff's property for criminal gain. The Defendant must also cease from its acts of extortion against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

367.        "Although it might be possible to rest our decision solely upon the first holding, we make the latter holding because we believe that it squares with the economic, social and legal realities of the problem presented. The tortious conduct in this case has resulted, and could be expected to result, in both economic loss fn. 10 and emotional distress. The emotional distress resulted, and could be expected to result, from both the immediate conduct of defendants and the economic losses caused by their conduct. Indeed, in a case such as this, the invasion of economic interests might well outweigh the direct invasion of emotional tranquility. [18] The tort of intentional infliction of emotional distress is designed to redress primarily invasions of the personal interest in emotional tranquility, not economic losses, unless, of course, the economic losses result from the intentionally caused emotional distress. (See Rest.2d Torts, § 46, supra; Prosser, Law of Torts, supra, p. 43.) A rule placing the emphasis where it belongs and permitting recovery of all proximately caused detriment in a single cause of action is more likely to engender public respect for and confidence in the judicial process than a rule which would require attorneys, litigants and judges to force square pegs into round holes."

368.        This case statement demonstrates how the infliction of emotional distress by direct conduct and as a result of the creation of economic loss are part of a tort and violation of a citizen's rights.  The behavior of the Defendant towards the Plaintiff Dr. I. Ezekwo is designed to harm the Plaintiff personally and also economically, the subsequent economic loss to the Plaintiff Dr. I. Ezekwo was then designed by The Defendant to lead to further harm and emotional distress to the Plaintiff Dr. I. Ezekwo in the Defendant's RICO conspiracy.   The Defendant must compensate the Plaintiff Dr. I. Ezekwo.  Defendant must return Plaintiff's property to Plaintiff.

369.        "We are further persuaded of the applicability to the problem presented [10 Cal. App. 3d 403] by the case at bench of the principles set forth in Crisci by an analogy to the tort of intentional interference with contractual relations. If a third person, a legal stranger to plaintiff, were to interfere with plaintiff's rights under the insurance policy by conduct and with purposes similar to defendants' in the case at bench, that person would be liable to plaintiff in damages for all detriment proximately caused thereby, both economic loss and emotional distress and, in a proper case, could be assessed punitive damages. (See Guillory v. Godfrey, 134 Cal. App. 2d 628 [286 P.2d 474]; Campbell v. Veith, supra, 121 Cal. App. 2d 729; Rest., Torts, § 766 et seq.) There is no sound reason why plaintiff's legally recognized interests should receive less protection from interference by the insurer itself, which has a special duty to plaintiff of good faith and fair dealing, nor is there any reason why plaintiff's insurer should be held to a lower standard of conduct than a stranger."

370.     "In determining whether liability should be imposed for intentional infliction of emotional distress, "[t]he cases and commentators have emphasized the significance of the relationship between the parties in determining whether liability should be imposed. (See Prosser, Law of Torts [3d ed. 1964], ch. 2, § 11, p. 49; Harper and James, The Law of Torts [1956], § 9, pp. 666-667; Rest.2d Torts, § 46, com. e.; Magruder, Mental and Emotional Disturbances in the Law of Torts, 49 Harv. L.Rev. 1033, 1051-1063; Prosser, Insult and Outrage, 44 Cal.L.Rev. 40, 47; Annot., 15 A.L.R.2d 108, 158-163.)" (Alcorn v. Anbro Engineering, Inc., supra, 2 Cal. 3d 493, 498, fn. 2.) Additionally, the special obligation of public utilities and other enterprises affected with the public interest has been noted as significant in the imposition of liability upon such defendants even in the absence of outrageous conduct, apparently upon a policy basis of encouraging fair treatment of the public whom the enterprises serve. (See Rest.2d Torts, supra, § 48; and Prosser on Torts (3d ed.) supra, pp. 44-47.)"

371.     "Defendants' conduct was outrageous. Their motive for engaging in such conduct was to save Western National approximately $50,000. Defendants' conduct was premeditated, continuous and persistent (cf. Parrott v. Bank of America, supra, 97 Cal. App. 2d 14, 24), and defendant Amason, who was still employed as Western National's claims manager at the time of trial, indicated that he would conduct himself similarly if a similar [10 Cal. App. 3d 409] situation should again arise. [35] The primary function of punitive damages is to deter the defendant and those similarly situated from engaging in similar tortious conduct in the future. Under these circumstances we do not find the punitive damage award of $180,000 shocking nor suggestive of passion or prejudice."

372.     These case statements demonstrate how the Defendant is involved in a serious tort and violation of the Plaintiff Dr. I. Ezekwo's rights.  The Defendant has engaged in premeditated, continuous and persistent malice against the Plaintiff Dr. I. Ezekwo.  Thus the Defendant must cease and desist from all its actions against the Plaintiff Dr. I. Ezekwo, who has a right to due process of law.  The Defendant must compensate the Plaintiff Dr.I. Ezekwo.  The Defendant is involved in a RICO conspiracy.  Defendant must return Plaintiff's property to Plaintiff.

373.     <u>Sherman v Field Clinic</u>

374.     "The court specifically noted that in cases permitting actions for severe emotional distress to proceed, the debtors had alleged "the use of abusive and vituperative language, shouting and railing at the debtor, repeated threats of arrest and ruination of credit, threats to appeal to the debtor's employer to endanger his employment and accusations of dishonesty." 66 Ill. 2d 85, 92, 360 N.E.2d 765."

375.     This case demonstrates that the Plaintiff Dr. I. Ezekwo has been subjected to the same abuse and threats that allows cases of actions for severe emotional distress to proceed.  Thus the Defendant must cease and desist from all actions against the Plaintiff Dr. I. Ezekwo.  The Defendant's behavior meets all the parameters outlined in the above case statement that validate action against a perpetrator of this tort.  Thus the Defendant must compensate the Plaintiff Dr. I. Ezekwo.  Defendant must return Plaintiff's property to Plaintiff.

376.     "………….plaintiffs have alleged not only a veritable multitude of telephone calls, but also the frequent use of profane, obscene, and abusive language therein. They have also alleged threats to "embarrass" the purported debtor's husband with his employer, to garnish his wages, and to put him and the purported debtor in jail. Thus, the

50

abusive and threatening language which the court in Public Finance repeatedly noted was absent from the complaint is present here. In addition, plaintiffs have alleged unwarranted communications with the purported debtor's husband at his place of employment and with the purported debtor's minor daughter. Similar allegations were noted by the court in Bureau of Credit Control v. Scott (1976), 36 Ill. App. 3d 1006, 1007, 345 N.E.2d 37, in finding that a cause of action for intentional infliction of severe emotional distress had been stated. We hold that the trial court properly found that count I of plaintiffs' complaint states a cause of action."

377.     In the Plaintiff Dr. I. Ezekwo's case, there is similar outrageous behavior by the Defendant and its criminal allies.  The actions of the Defendant were designed to defame and humiliate the Plaintiff Dr. I. Ezekwo as part of a wider RICO conspiracy.  The Defendant has stolen Plaintiff Dr. I. Ezekwo's property.  This all indicates the depth of the conspiracy the Defendant is involved in.

378.     "Plaintiffs have alleged violations of the following sections of the Collection Agency Act: sections 9.02 (baseless threat of arrest or criminal prosecution), 9.05 (threat of communication with the debtor's employer without prior written notice), 9.06 (harassment of the debtor or his family), 9.07 (use of profane, obscene, and abusive language), 9.08 (threat of disclosure of the debtor's indebtedness to persons without a legitimate business need), and 9.10 (engaging in conduct intended to cause and causing mental or physical illness to the debtor or his family). (Ill. Rev. Stat. 1977, ch. 111, pars. 2014, 2017, 2018, 2019, 2020 and 2022, respectively.) Section 9 of the Act specifies each of these acts as an unlawful practice. Section 12 provides that the Director of the Department of Registration and Education may, after complaint, investigation, hearing, and a finding of the commission of any act proscribed in section 9, revoke or suspend the certificate required of all collection agencies by section 4 of the Act. Section 14 further states that "[t]he penalties provided by this Act shall not be exclusive, but shall be in addition to all other penalties or remedies provided by law." (Ill. Rev. Stat. 1977, ch. 111, par. 2039.) Finally, section 16 of Public Act 78-1248 (1974 Ill. Laws 1242-43) amends the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 1-1 et seq.) by adding section 17-5 (deceptive collection practices) and by amending section 26-1 (disorderly conduct) to make harassing, annoying, or intimidating telephone calls (while attempting to collect a debt) a new element of the offense. (Ill. Rev. Stat. 1977, ch. 38, pars. 17-5, 26-1(a)(6).) Violation of either section is a business offense punishable by a fine not to exceed $3000."

379.     This statement outlines the type of clearly outrageous behavior that the Defendant has been engaging in against the Plaintiff Dr. I. Ezekwo.  This activity by the Defendant has caused the Plaintiff Dr. I. Ezekwo great distress.  The continuance of this criminal behavior by the Defendant must be stopped immediately and the Defendant must not be allowed to proceed with Defendant's current actions against the Plaintiff and her property.  The Defendant must compensate the Plaintiff Dr.I. Ezekwo.  The Defendant must give the Plaintiff back the Plaintiff's property.

380.     "• 8 The Clinic points out that by its terms the Act covers only collection agencies and "* * * does not apply to persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency, * * *." (Ill. Rev. Stat. 1977, ch. 111, par. 2005; see also pars. 2004 and 2006.) This argument misses the point. Obviously the Clinic is not directly subject to the Act, and therefore it

need not acquire a certificate before it attempts to collect a debt, nor could it be directly liable under the Act. But if the Clinic hires a collection agency which, in the course of employment, commits a practice made unlawful under the Act, we see no reason why the Clinic cannot be vicariously liable for the commission of that particular tort on the same principles as any other. Cf. Restatement (Second) of Torts § 874A, comments f and j (1979) (implied tort action should ordinarily be treated similarly to most closely analogous common law torts)."

381.        "However, the subject of punitive damages was more recently addressed by our supreme court in Kelsay v. Motorola, Inc. (1978), 74 Ill. 2d 172, 384 N.E.2d 353, in which the court recognized an implied right of action to recover damages for retaliatory discharge under the Workmen's Compensation Act. Noting that punitive damages may properly be awarded where the wrongful acts alleged are characterized by fraud, actual malice, deliberate violence or oppression, or wilful and wanton misconduct, and where an award will serve not just to punish the defendant but to deter the defendant and others from committing like offenses in the future, the court went on to hold that punitive damages may generally be awarded for tortious retaliatory discharge. (74 Ill. 2d 172, 186-87, 384 N.E.2d 353.) This the court held even though the defendant was already subject to liability for compensatory damages and the statute had been amended to provide for criminal sanctions in future cases, and even though exemplary damages were not recoverable for wrongful discharge at common law. (74 Ill. 2d 172, 384 N.E.2d 253.)"

382.        The actions of the Defendant involve fraud, actual malice, deliberate violence, deliberate oppression and willful and wanton misconduct.  Thus the Defendant must cease and desist from all further actions against the Plaintiff Dr. I. Ezekwo and her property, this must happen so that litigation against Defendant can proceed unhindered. Defendant must return Plaintiff's property to Plaintiff.

383.        "Moreover, the Collection Agency Act provides a deterrent in addition to compensatory damages and criminal sanctions, that of possible suspension or revocation of the offending collection agency's license. (Ill. Rev. Stat. 1977, ch. 111, par. 2037.)"

384.        "Yet it was the unlikelihood that existing criminal and administrative remedies would truly deter which led us to found a cause of action for damages on the statute; the same factor militates in favor of the availability of the additional sanction of punitive damages, particularly in view of the fact that criminal and administrative sanctions will not operate as against those who hired the collection agency and possibly sanctioned or directed the oppressive conduct. On balance we believe that punitive damages should be available for violations of section 9 of the Collection Agency Act, both generally and in the instant case."

385.        These statements in this case again demonstrate how the Defendant is liable.  The Defendant must cease and desist from all actions against the Plaintiff Dr. I. Ezekwo.  The Defendant must return the Plaintiff's property to Plaintiff.  The Defendant must also compensate the Plaintiff.

386.        <u>Grimsby v. Samson</u>

387.        "The extreme or outrageous conduct does not have to be specifically directed towards the Plaintiff. If the Plaintiff's family suffers emotional distress as a result of the Defendants action, they too can sue for emotional distress. See Grimsby v. Samson, 530 P.2d 291 (Wash. 1975)."

388.    Throughout Plaintiff's decade long ordeal, the Plaintiff Dr. I. Ezekwo's family has suffered greatly.  Thus the Defendant is liable and must cease and desist from all further actions against the Plaintiff Dr. I. Ezekwo and her property.

389.    <u>Abuse of Power under the color of state law, violation of the Fourteenth Amendment</u>

390.    <u>Lugar v Edmondson Oil</u>

391.    "The Court's conclusion in United States v. Classic, 313 U. S. 299, 326 (1941), that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law," was founded on the rule announced in Ex parte Virginia, 100 U. S. 339, 346-347 (1880), that the actions of a state officer who exceeds the limits of his authority constitute state action for purposes of the Fourteenth Amendment.[13]"

392.    As shown in this case, the Plaintiff Dr. I. Ezekwo's rights have been violated by the Defendant.  The Defendant is acting under the color of state law to deprive the Plaintiff Dr. I. Ezekwo of her rights that have been set out in the U.S. Constitution, particularly the Fourteenth Amendment and her rights to due process.

393.    "The two-part approach to a § 1983 cause of action, referred to in Flagg Brothers, was derived from Adickes v. S. H. Kress & Co., 398 U. S. 144, 150 (1970). Adickes was a § 1983 action brought against a private party, based on a claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Although stating that the § 1983 plaintiff must show both that he has been deprived "of a right secured by the `Constitution and laws' of the United States" and that the defendant acted "under color of any statute . . . of any State," ibid., we held that the private party's joint participation with a state official in a conspiracy to discriminate would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights" and action " `under color' of law for purposes of the statute." Id., at 152.[14] In support of our conclusion that a private party held to have violated the Fourteenth Amendment "can be liable under § 1983," ibid., we cited that part of United States v. Price, 383 U. S., at 794, n. 7, in which we had concluded that state action and action under color of state law are the same (quoted supra, at 928). Adickes provides no support for the Court of Appeals' novel construction of § 1983.[15]"

394.    Again as this case indicates, a conspiracy by various individuals to misuse the tools of state for purposes of racial discrimination and to take away the rights of a citizen is an act subject to liability.  In the case of the Plaintiff Dr. I. Ezekwo, the Defendant is acting in a RICO conspiracy to take away the Plaintiff Dr. I. Ezekwo's rights and to irreparably harm the Plaintiff Dr. I. Ezekwo.  Defendant is a private party working in coordination with corrupt government actors in a RICO conspiracy.

395.    "As this Court recognized in Monroe v. Pape, 365 U. S. 167, 172 (1961), the historic purpose of § 1983 was to prevent state officials from using the cloak of their authority under state law to violate rights protected against state infringement by the Fourteenth Amendment.[5] The Court accordingly is correct that an important inquiry in a § 1983 suit against a private party is whether there is an allegation of wrongful "conduct that can be attributed to the State.""

396.    Again this case demonstrates that the rights of the Plaintiff Dr. I. Ezekwo have been violated by the Defendant.  Thus Defendant's erroneous and evil theft of Plaintiff's

property with all its malevolent ulterior motives must be stopped immediately and the due process of law must be allowed to proceed.  The Defendant is abusing its leverage over those with state position to destroy the Plaintiff Dr. I. Ezekwo's rights under the Fourteenth Amendment.  The Plaintiff Dr. I. Ezekwo must be also allowed to keep her property and not be extorted by the Defendant.  The Defendant is involved in a RICO conspiracy.  The Defendant must compensate the Plaintiff. Defendant must return Plaintiff's property to Plaintiff.

397.                            <u>VIOLATIONS OF RICO ACT</u>

398.        The Defendant and its coconspirators identified the Plaintiff Dr. I.Ezekwo as a common enemy. This falls strictly under RICO but is also covered by Anti-SLAPP (strategic lawsuit against public participation) laws.

399.        The Defendant has shown repeat violations of the RICO law that fall under the RICO act.  The sections of the RICO act they have violated are manifold, including section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to the obstruction of criminal investigation), section 1511 (relating to obstruction of state or local law enforcement), section 1512 (relating to tampering with a witness, victim or informant), section 1513 (relating to retaliation against a witness, victim or informant), section 1951 (relating to interference with commerce, robbery or extortion), section 1546 (relating to fraud and misuse of visas, permits, and other documents), section 1952 (relating to racketeering), section 1956 (relating to laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity),.   The Defendant has also violated the Continuing Criminal Enterprise Statute and with corrupt officials is involved in extortion under color of authority as they are illegally gaining by damaging the Plaintiff Dr.I.Ezekwo's property, stealing the Plaintiff's property, extorting the Plaintiff and depriving the Plaintiff of income.

400.        There has been documentation of individuals and entities involved in corrupt enterprises(United States v. Kim, Mullen Commission) seeking to skew the legal system in their favor by creating lies and taking up legal time harassing others (Brady v. Maryland, ProPublica.org report-The NYPD Files)The Defendant and its criminal associates  fall under this banner.

401.        The RICO act was passed to stop criminal enterprise and the Defendant and its criminal associates   clearly fall under this definition Russell v. United States, 464 U.S. 16, 26-27, 104 S. Ct 296, 302-303 78 L. Ed 2d 17(1983); United States v. Turkette, 452 U.S. 576, 589, 101 S S. Ct 2524, 2532, 69 L. Ed. 2d 246 (1981).  By Sedima, S.P.R.L. v Imrex Co., 473 U.S. 479, 496, 105 S. Ct 3275, 3285, 87 L. Ed 2d 346 (1985),The Defendant has shown a violation of Section 1962(c ) by (1) conduct (2)of an enterprise (3) through a pattern (4) of racketeering activity, thus The Defendant  meets the requirement for prosecution due to violation of RICO.  The Defendant also falls under the more expansive view of RICO due to it being an enterprise that is involved in numerous acts of racketeering activity that have already been outlined herein. See United States v. Phillips 664 F. 2d 971, 1011(5th Cir. Unit B Dec. 1981) cert. denied, 457 U.S. 1136, 102 S. Ct 1265 73 L. Ed. 2d 1354 (1982)

402.        The Defendant comes under an enterprise for purposes of prosecution for violation of RICO as enterprise is defined as including any individual, partnership,

corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.A. 1961(4) (West 1984).  In United States v. Delano , 825 F. Supp. 534, 538-39(W.D.N.Y. 1993),aff'd in part, 55 F. 3d 720(2d Cir.1995), cases cited therein, it is stated and held by courts that enterprise has an expansive statutory definition so as to effectuate remedial purposes, this being part of how Congress mandated a liberal construction of the RICO statute.

403.       The Defendant meets the test of a pattern of racketeering activity as it has countless cases of racketeering every year not just the two within ten years described in RICO. 18 U.S.C.A. 1961(4) (West 1984) and Congress intended this idea of a pattern to be very flexible H.J. Inc., v. Northwestern Bell Tel. Co. 492 U.S.  229, 239, 109 S.Ct 2893, 2900, 106 L. Ed. 2d 195 (1989).  The Defendant also falls under the requirement because its racketeering predicates are related and the Defendant poses a threat of continued criminal activity and Defendant is a serious threat to society. Id The relation of the Defendant's racketeering predicates are present  and fall under RICO as they have the same purposes, the same results, the same participants, the same victims, the same methods of commission and are not isolated events, and are clearly interrelated by their distinguishing characteristics. Id at 240, 109 S. Ct at 2901; Ticor Title Ins. Co. v. Florida, 937 F. 2d 447, 450(9th Cir. 1991). It has also been defined that the degree to which a pattern is established is related to the degree of proximity, or any similarities in goals or methodology, or the number of repetitions; The Defendant falls under this.  United States v. Indelicato 865, 865 F. 2d 1370, 1382(2d Cir.), cert denied, 493 U.S. 811, 110 S. Ct. 56, 107 L.Ed. 2d 24 (1989)

404.       The Defendant meets the continuity part of RICO as by H.J., Inc 492 U.S. at 241-42 continuity refers to either a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.  The Defendant's future crimes are inevitable and its criminal activity is long-term, this falls under the RICO continuity requirement as (1)the acts are part of a long term association that exists for criminal purposes and (2)  they are a regular way of them conducting their daily business, and (3) they are a regular way of them conducting their enterprise.Id  Judge Scalia wrote it would be absurd to say that "at least a few months of racketeering activity…is generally for free, as far as RICO is concerned" Id at 254, 109 S.Ct at 2908.  Therefore as The Defendant's predicate acts demonstrate the threat of long-term racketeering activity, a RICO pattern has been established. Id at 242, 109 S. Ct. at 2902 .The RICO statute states that it is illegal to conspire to violate any of the subsections of 18 U.S.C.A. 1962, which the Defendant did.

405.       The requisite for RICO conviction is (1) that the defendant agreed to commit the substantive racketeering offense through agreeing to participate in two racketeering acts ;( 2) that he knew the general status of the conspiracy and (3) that he knew the conspiracy extended beyond his individual role.  United States v. Rastelli 870 F. 2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982, 110 S. Ct. 515, 107 L. Ed. 2d 516 (1989).  Also it has been stated "We adhere to the concept that agreement among the coconspirators is the critical element of a RICO conspiracy and hold that it is irrelevant whether a defendant agrees to commit the racketeering acts as a principal or as an aide and abettor.  If a defendant agrees personally to commit, or to aid and abet the commission of, two predicate acts he may be convicted of a RICO conspiracy violation" United States v Rastelli (citing United States v. Cauble, 706 F. 2d 1322, 1341-42 (5th Cir. 1983), cert.

denied, 465 U.S. 1005, 104 S. Ct. 996, 79 L. Ed. 2d 229 (1984)) A defendant can be convicted of RICO violation by aiding and abetting the commission of racketeering acts. United States v Daly, 842 F. 2d 1380, 1389-92 (2d Cir.) And also it is stated "If all of RICO's other requirements are met, an aide and abettor of two predicate acts can be civilly liable under RICO" Petro-Tech, Inc. v Western Co. of North America, 824 F.2d 1349, 1356 (3d Cir. 1987).  And again it is stated "We conclude that under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses"  United States v. Local 560 of International Brotherhood of Teamsters, 780 F. 2d 267, 288-89 and n. 25 (3d Cir. 1985).  By these above mentioned cases and legal tenets it is clear that the Defendant is in violation of RICO in its illegal actions against the Plaintiff Dr. I. Ezekwo. The Defendant falls under the definition of a racketeering enterprise and has various coconspirators in its harassment of the Plaintiff Dr. I. Ezekwo, the Defendant's illegal activities will inevitably continue in the future, it has not only harassed the Plaintiff by carrying out extortion against her and assailing her at her property but Defendant has also put the lives of her family and associates at risk.  The Defendant has shown a criminal pattern of repeated illegal activity that will continue as long as Defendant exists, due to criminality being intrinsic to the Defendant's nature. The Defendant and its criminal associates must be criminally prosecuted.

406.    Further Legal Violations

407.    The Defendant violated the RICO Act, the Defendant is involved in criminal behavior.

408.    The Defendant is in an embezzlement scheme against the Plaintiff Dr. I. Ezekwo. The Defendant is perpetuating a hoax against the government in violation of U.S.Code 1031.

409.    This corruption is also what is currently tearing America apart.

410.    The Defendant is now rushing through a criminal act to stop Dr. Ezekwo having justice, when it has not answered simple questions about its ongoing criminal activity. This is obstruction of justice.  The Defendant is more dangerous than the COVID pandemic.  The Defendant has criminal mens rea.

411.    The Defendant's corruption has never solved any problem for this country.  The Defendant seeks to harass and intimidate innocent citizens as "cover"for  its criminality and corruption.  The Defendant has colluded with the City of Englewood that has a police brutality case against the Plaintiff Dr. I. Ezekwo.  The Defendant's actions are just outright evil and corruption.  Let society be helped by having the corrupt criminals the Defendant and its criminal partners thrown in prison and letting normal commerce and living proceed without these crazy characters.

412.    The Plaintiff Dr. I. Ezekwo is a licensed physician with years of helping and healing people and saving lives.  She is also a priest.  She should not after all her efforts be harassed by the criminal class that has malicious entitlement to put themselves into people's lives.  The Defendant is perpetuating an argument the Defendant knows to be false for corrupt gain.  The Defendant and its corrupt allies are in collusion with Bergen County Sheriff Cureton whose agents were sent to  pedophile profile the underage children of tenants at another of the Plaintiff Dr. Ezekwo's properties.  All this (the actions of The Defendant and its criminal allies) falls under the RICO Act.

413.      It is the corrupt practices of individuals like the Defendant that are creating the present societal collapse and civilization collapse in this country that is visible for all to see.  The corrupt actions of the Defendant and its corrupt criminal friends will also lead to collapses in the future if their actions are not curtailed.  The Plaintiff Dr. I. Ezekwo has quoted over 100 legal cases and citations and statutes; while the corrupt Defendant and their criminal allies cannot point to one as there is no precedent for breaking the law. The Defendant must compensate the Plaintiff Dr I. Ezekwo at least $ 3 Billion U.S. dollars and its legal counsels must be reported to the Bar for their illegal activities.

414.      These acts against the Plaintiff Dr. I.Ezekwo are part of an ongoing  hate crime investigation by the State Attorney of New Jersey(Complaint Number #001230).  This criminality by The Defendant and its allies must be stopped immediately and they must be criminally prosecuted.

415.      The actions of the Defendant are a theft crime, which is a stealing of personal property. State v. Winter, 706 P. 2d 1228 (Ariz Ct. App. 1985); Terr v. Maxwell 2 N.M. 250 (1882).   Again theft is the unlawful taking of the property of another and has various facets  (Model Penal Code 223.0-223.9).  Specific intent was shown by The Defendant which again makes it guilty of theft crime.  The Defendant must also be convicted of receiving stolen property as they knew that the money and property of the Plaintiff Dr. I Ezekwo was wrongly accosted by their criminality and then proceeded to demand it further for themselves with Defendant's acts of extortion and theft. See Le Fanti v. United States 259 F.460 (3d Cir 1919); 18Pa Cons. Stat. 3925; State v. Myers, 386 S.W. 3d 786, 794 (Mo. Ct. App. 2012)

416.      Larceny is defined as the taking and carrying away of the personal property that belongs to another with the intent to deprive the person of that property permanently Welch v. Commonwealth, 425 S.E. 2d 101, 104-05 (1992).

417.      The Defendant is involved in larceny Morgan v. Commonwealth, 47  S. W. 2d 543 (Ky. 1932). The Defendant also meets the mens rea requirement for larceny People v. Brown, 105 Cal. 66 (1894), also the Plaintiff Dr. I Ezekwo suffers substantial risk of permanent loss due to The Defendant's actions, making The Defendant's actions larceny State v. Langis 444 P.2d 959 (Or. 1968).  The Defendant showed clear malevolent intent and its conspiracy to take the Plaintiff Dr I.Ezekwo's assets was wrongful  with the intent to deprive her of her income and property State v. Coombs, 55 Me. 477(1868)

418.      Embezzlement is a unique violation of trust and a theft crime State v. Winter, 706 P.2d 1228 (Ariz Ct. App.1985).  Embezzlement involves fraudulently embezzling or converting personal property of another by someone who has been entrusted with that property with the intent to deprive the owner of that property (from Statute proscribing larceny, theft or embezzlement of property of another, 57 A.L.R. 6th 445).  By these definitions The Defendant has partaken in embezzlement of the Plaintiff Dr. I. Ezekwo.

419.      The Defendant acted with intent and deceit State v. Archie, 123 N.M. 503, 508 (1997) and the Defendant has met the requirement of partaking in conversion as the Defendant is seeking to steal money and property from the Plaintiff Dr I.Ezekwo for corrupt gain Id. The Defendant had also been wrongly entrusted with the Plaintiff Dr. Ezekwo's assets, again making the Defendant meet the requirement of embezzlement Wagner v. State, 445 Md. 404 (2015); State v. Moss 83 N.M. 42 (1971).

420.      Theft has occurred when a person without lawful authority, knowingly controls the property of another with the intent to deprive her of that property  A.R.S. 13-1802;

State v. Aro, 937 P.2d 711**, 6-7(Ariz. Ct. App. 1985).  Again by this definition The Defendant has committed theft.

421.      In the end The Defendant partook in theft as it is wrongfully acquiring money and assets  from the Plaintiff Dr. I. Ezekwo and the Defendant also had wrongful intent (Model Penal Code 223.1; Model Penal Code 233.2).  The Defendant also used false pretenses because of its misrepresentation and intent to steal money(and property) from the Plaintiff Dr.I.Ezekwo

422.      The Defendant's actions involve theft by extortion as with the City of Englewood and other violent assailants, there was the threat of physical injury, property damage and other criminal acts towards the Plaintiff Dr. I. Ezekwo Or. Rev. Stat. Ann 164.075;  State v. Oar, 161 Idaho 550, 554 (Ct.App. 2016).  The Defendant also took part in theft by deception when they sought steal the Plaintiff Dr. I. Ezekwo's income(and property) presently and previously. Stat. tit. 17-A, 354; Ex parte Day, 481 So. 2d 1169. 1170-73 (Ala. 1985)

423.      In the Model Penal Code robbery is defined by taking the property of another by means of force or threat of force, it is a theft that involves inflicting serious bodily injury or subjects the victim to the threat of such injury.  As the Plaintiff Dr. I. Ezekwo and her son had already been violently assaulted by City of Englewood police officers and harassed by City of Englewood officials and various corrupt public officials including public officials from Paterson, The Defendant and its criminal colleagues' violent removal of the Plaintiff Dr. I. Ezekwo's income along with taking ownership of Plaintiff's property is robbery  Model Penal Code 222.1; Mo. Rev.Stat 570.023; Mo.Rev Stat 570.025; Ark. Code Ann 5-12-102; Ark. Code Ann. 5-12-103; State v. Morrell, 803 P. 2d 292, 293 (Utah Ct. App. 1990); People v. Flynn 77 Cal. App. 4th 766, 772(2000); People v. Estes, 147 Cal. App. 3d 23, 27-28 (Ct. App. 1983).

424.      The Defendant has committed burglary as Defendant forcibly stole Plaintiff's property. The Defendant has also committed forgery by omitting statements from official documents about their criminal acts against the Plaintiff Dr. I.Ezekwo.  The Defendant is also colluding with individuals who have sought to harm the Plaintiff over the years in this extensive RICO conspiracy, the Defendant's aim is corrupt political and financial gain.  The Defendant's crimes were purposefully committed by the Defendant and the Defendant must be criminally prosecuted under the full weight of the law, The Defendant demonstrated both actus rea and purposeful criminal mens rea.

425.      The Defendant violated 18 U.S. Code 35 which states " whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter or chapter 97 or chapter 111 of this title-shall be fined under this title, or imprisoned not more than five years, or both"

426.      By intimidating the Plaintiff Dr.I.Ezekwo and then stealing the property of the Plaintiff ,The Defendant violated 42 U.S. Code 3617 which states "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

427.    The Plaintiff Dr.I.Ezekwo must be compensated by the Defendant for her suffering.  The Defendant must compensate the Plaintiff Dr.I.Ezekwo at least 3 Billion U.S. dollars.

428.    <u>OBSTRUCTION OF JUSTICE</u>

429.    1.    By 18 U.S.C. §1503 "obstruction of justice" is described as any act that "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs or impedes or endeavors to influence, obstruct or impede, the due administration of justice"  The Defendant has met this definition by hijacking a legal process to steal from the Plaintiff Dr.I.Ezekwo and take away her constitutional rights. The present theft of the Plaintiff's property is designed by the Defendant to stop all of the Plaintiff Dr. I. Ezekwo's legal recourse.  Also by stealing the Plaintiff's property, Defendant seeks to disrupt Plaintiff so much that Plaintiff can never be able to adequately protect herself or seek justice.

430.    2.    18 U.S.C. §1505 subjects to criminal liability one who "corruptly influences, obstructs or impedes the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States."  The Defendant's activities fall under this statute as its actions are impeding ongoing investigations into its behavior along with its criminal allies by the State Attorney of New Jersey, also the Defendant and its allies are attacking the Plaintiff on multiple fronts(in courts etc) in the hopes of violating the Plaintiff Dr. I. Ezekwo.

431.    3.    The Defendant's actions  also reach the nexus requirement of 18 U.S.C. §1512 as by Aguilar, 515 at 599, 115 S. Ct 2357 as the conduct of the Defendant against the Plaintiff Dr. I.Ezekwo has "a relationship in time, causation or logic with the judicial proceedings" also "the endeavor must have the natural and probable effect of interfering with the due administration of justice"  The actions of The Defendant reach this nexus requirement and are therefore illegal.

432.    4.    The Defendant's obstruction of justice is purposeful, United States v. Mullins 22 F. 3d 1365, 1370(CA6 1994), United States v. Ryan 455 F. 2d 728, 734 (CA9 1972), Pettibone v. United States, 148 U.S. 197 (1893).  Also the "natural and probable" consequence of Defendant's actions interfere with due administration of justice, United States v. Thomas, 916 F2.d 647(11 Cir 1990).  In United States v. Brand, 775 F.2d 1460(11 Cir. 1985) the court stated that 18 U.S.C. 1503 proscribes conduct "which produces or which is capable of producing an effect that prevents justice from being duly administered." This is also in Cole v. United States, 329 F.2d 437, 439 (9th Cir.).  Also in United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65L.Ed. 553(1921) it states 18 U.S.C. §1503 covers "any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." In United States v. Griffin, 589. F.2d 200, 204 (5th Cir) it states a perjurious grand jury witness can impede justice by "delaying the punishment of the guilty."    These legal cases all demonstrate the Defendant is guilty of obstruction of justice.

433.    5.    The Defendant is also causing the Plaintiff Dr. I. Ezekwo irreparable harm. Kamerling v. Massanari 295 F.3d 206, 214 (2d Cir. 2002), Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001).

434.                    INTERFERENCE, COERCION, INTIMIDATION, RETALIATION AND DEFAMATION

435.        The Defendant violated 18 U.S. Code §35 which states " whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter or chapter 97 or chapter 111 of this title-shall be fined under this title, or imprisoned not more than five years, or both"

436.        By intimidating the Plaintiff Dr. I. Ezekwo and significant others at her property The Defendant  violated 42 U.S. Code § 3617 which states "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

437.        The Defendant violated 42 U.S. Code § 12203 that states "(a)RETALIATION No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.(b)INTERFERENCE, COERCION, OR INTIMIDATION It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

438.        The threats from the Defendant  are continuous and present United States v. Navarro, 608 F. 3d 529 (9th Cir 2010)); Frasher v. State, 260 A. 2d 656 (Md. Ct. Spec. App. 1970); People v. Petznick, 114 Cal. App. 4th 663(2003); State v. Matson, 921 P. 2d 790 (Kan. 1996).  Also see United States v. Blanco, 754 F. 2d 790 940 (11th Cir. 1985). The threats from The Defendant to the Plaintiff Dr.I.Ezekwo are also of the standard of a well grounded fear. Ruffin v. State, 992 So.2d 1165 (Miss. 2008).  Also there was no fault on the part of the Plaintiff Dr. I.Ezekwo that brought about these threats by the Defendant; and thus there cannot be limitations on the fact that there was coercion State v. Gay, 434 S.E. 2d 840 (N.C. 1993) United States v. Blanco, supra.

439.        In the State of New Jersey, In the New Jersey Code of Criminal Justice, it is stated " Offense defined. A person is guilty of criminal coercion if, with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct he threatens to: (2) accuse anyone of an offense (3) Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute (4) Take or withhold action as an official, or cause an official to take or withhold action (6) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense (7) Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships." NJ Rev Stat 2C:13-5(2013)Also the New Jersey code of criminal justice states "Criminal coercion is a crime of the fourth degree unless

60

the threat is to commit a crime more serious than one of the fourth degree or the actor's purpose is criminal, in which case the offense is a crime of the third degree."

440.  NJ Rev Stat 2C:13-5(2013) The Defendant is guilty of criminal coercion as defined above in the New Jersey Code of Criminal Justice as the Defendant is intentionally harming the Plaintiff Dr.I.Ezekwo and her colleagues in all the ways defined in this statute. Due to the Defendant's criminal acts, the Defendant must be criminally prosecuted.

441.  <u>DEFAMATION</u>

442.  Defamation is a "communication that tends to harm the reputation of another to lower his estimation in the community or deter third parties from associating with him." Restatement (2nd) of Torts, §559.  A statement is defamatory if it has a negative impact on someone's reputation among a substantial number of people in the community, even if the number of impacted people is not a majority of the community. Restatement (2nd) of Torts, §559, comment e.

443.  Every defamation claim must meet the following four elements: (a)  a false statement concerning another;(b) the statement must be defamatory;(c) a publication to a third party; and(d) harm to the plaintiff's reputation. Restatement (2nd) of Torts, §558.

444.  Therefore, in order for an action of defamation to arise, the defendant must communicate his defamatory statement to someone other than the plaintiff. See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997).  The Defendant has broadcast its statements against the Plaintiff Dr. I. Ezekwo to people far and wide, therefore The Defendant is defaming the Plaintiff Dr. I. Ezekwo.

445.  Further, in order to recover for defamation, the Plaintiff Dr. I. Ezekwo must prove that the defendant intentionally communicated the defamatory statement to a third person, or that the defendant negligently failed to exercise due care in making sure the statement was not published. See Barnes v. Clayton House Motel, 435 S.W.2d 616 (Tex. 1968). Again, The Defendant has been spreading malicious statements about the Plaintiff Dr. I. Ezekwo to everyone the Defendant can meet and the Defendant is attempting to cover these moves clandestinely, this all also falls under the RICO Act and is also clearly defamation.

446.  An individual who has an unsullied name(like the Plaintiff Dr.I. Ezekwo) is a greater victim of defamation. See Jackson v. Longcope, 476 N.E.2d 617 (Mass. 1885). Thus defamation is the crime the Defendant enacted against the Plaintiff Dr. I. Ezekwo, who as a physician and priest has tirelessly helped and healed thousands all her life.

447.  The second prong in determining whether or not a statement has the potential to injure the plaintiff's reputation is determining whether or not the statement can be interpreted to carry a defamatory meaning. In determining this, courts will look at what a reasonable person would naturally interpret the statement to mean within the context in which the statement appears. See Romain v. Kallinger, 537 A.2d 284 (N.J. 1988).  The Defendant's allegations against the Plaintiff Dr. I. Ezekwo are clearly outrageous with many racist and discriminatory undertones, trying to malign the Plaintiff Dr. I. Ezekwo and make the Plaintiff Dr. I. Ezekwo seem marginalized when in fact it is the Defendant that is the evil-doer.

448.  Most states assume that a speaker who defames another necessarily has the requisite guilty state of mind. In Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122

(1st Cir. 1997), the court held that in Maine, all defamation claims need showing of fault, which requires the Plaintiff Dr. I. Ezekwo to prove that the defendants were at least negligent.  The Defendant's actions and statements against the Plaintiff Dr. I. Ezekwo are purposeful and intentional to cause harm, thus the Defendant meets the standard of defamation.

449.        In The New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the Supreme Court held that for a publicly-known figure to succeed on a defamation claims, the public-figure the Plaintiff Dr. I. Ezekwo must show that the false, defaming statement was said with "actual malice." The Sullivan court stated that "actual malice" means that the defendant said the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not."  The Plaintiff Dr. I. Ezekwo's  actual malice claim against The Defendant meets the "clear and convincing" evidence requirement standard of Sullivan. The Plaintiff Dr. I. Ezekwo's case also meets the Sullivan requirement (in precise language of Sullivan court)  of  "the convincing clarity which the constitutional standard demands."

450.        The Defendant has neither absolute privilege nor conditional privilege to defame the Plaintiff Dr. I. Ezekwo Kilgore v. Younger, 30 Cal.3d 770 (1982);Weenig v. Wood, 349 N.E.2d 235 (Ind. 1976).  The Defendant's defamation against the Plaintiff Dr. I. Ezekwo is also not protected by the First Amendment.

451.        Immunity does not exist for individuals who engage in criminal activity, for individuals who connive with, aid and abet the criminal activity of another individual, or to an individual for damages sustained by a person who has been harmed by the wrong doer's connivance with, aiding and abetting, another individual's criminal activity.  The Defendant falls under these parameters and thus has no immunity.

452.        The Illinois Supreme Court has held that "if the magistrate has not such jurisdiction, then he and those who advise and act with him, or execute his process, are trespassers." Von Kettler et.al. v. Johnson, 57 Ill. 109 (1870).  Thus The Defendant by this standard has acted in violation of the law and has no immunity.

453.        The Illinois Supreme Court held that if a court "could not hear the matter upon the jurisdictional paper presented, its finding that it had the power can add nothing to its authority, - it had no authority to make that finding." The People v. Brewer, 128 Ill. 472, 483 (1928).  Thus this also shows how The Defendant acted outside its authority and jurisdiction in its illegal acts against the Plaintiff Dr. I. Ezekwo, thus The Defendant has no immunity.

454.        The U.S. Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." . By law, The Defendant's allies are state officers.  The Defendant then acts not as a government body , but as a private individual (in its person).  The Defendant thus has no immunity from government and its actions are solely its own as a private citizens drenched in evil.

455. <u>False Information Maliciously Put in Record, Prosecution without Probable Cause, Violation of 4th Amendment, Monell Claim.</u>

456. <u>Galbraith v. County of Santa Clara</u>

457. "We therefore turn to the amended complaint to determine whether its allegations are adequate to state a claim in the absence of any heightened pleading standard. In dismissing the amended complaint, the district court relied on our authority holding that government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit. See Branch I, 937 F.2d at 1387-88; see also Butler v. Elle, 281 F.3d 1014, 1024-25 (9th Cir.2002); Liston v. County of Riverside, 120 F.3d 965, 972-975 (9th Cir.1997); Hervey v. Estes, 65 F.3d 784, 790 (9th Cir.1995). Under this authority, a § 1983 plaintiff must show that the investigator "made deliberately false statements or recklessly disregarded the truth in the affidavit" and that the falsifications were "material" to the finding of probable cause. Hervey, 65 F.3d at 790 (9th Cir.1995)."

458. The Defendant put clear lies and false information in the record of the Plaintiff Dr. I. Ezekwo as part of a larger conspiracy to take away Plaintiff's rights in retaliation for a lawsuit she had against the City of Englewood and a number of its police officers who attacked her and her son. Thus, the Defendant is liable for its criminal actions.

459. "Neither side has challenged the district court's application of these warrant affidavit cases to the present facts, and we agree, without deciding any issue of immunity, that a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment. See Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir.1998) (analyzing claims of false arrest and malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment)."

460. Thus, this case also demonstrates that The Defendant's falsified report makes it liable for a USC 1983 and Fourth Amendment violation claim by the Plaintiff Dr. I. Ezekwo. The Defendant's statements are clear lies and the Defendant is involved in criminal behavior. The Plaintiff Dr.I. Ezekwo must be given compensation and have her property protected from theft by the Defendant. Defendant must return Plaintiff's property to Plaintiff.

461. "Galbraith claims that Dr. Ozoa recklessly disregarded the truth by asserting in his autopsy report that Josephine was strangled by an assailant while ignoring abundant evidence that pointed to suicide. The amended complaint also describes deficiencies in the autopsy itself tending to indicate that Dr. Ozoa never did the work he claimed he had done to support his conclusion that Josephine's death was caused by an assailant. Finally, the amended complaint alleges that Dr. Ozoa deliberately lied about the autopsy in the autopsy report, in his communications with other investigators, and on the witness stand at the preliminary hearing in order to cover up his incompetence, and that these lies proximately caused Galbraith's arrest and prosecution for murder. The amended complaint therefore adequately alleges a Fourth Amendment violation."

462. "Galbraith's allegation that Dr. Ozoa's misconduct conformed to County policy also suffices to state a Monell claim against the County. "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss `even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim-Panahi v. Los Angeles

Police Dep't, 839 F.2d 621, 624 (9th Cir.1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986)).”

463.      The Plaintiff Dr. I. Ezekwo's case thus also rises to a Monell claim, as the actions of the Defendant and its coconspirators was in conformity with the Defendant's policies. Thus, the Plaintiff Dr. I. Ezekwo must be compensated by the Defendant and the Defendant must also give up any legal claims to the Plaintiff's property. Thus, the Plaintiff Dr. I.Ezekwo's statements herein must be taken as established and the Plaintiff's property must be protected from all theft by the Defendant.  The Defendant must be sanctioned and the Defendant must compensate the Plaintiff Dr.I. Ezekwo.  The Defendant must return Plaintiff's property to Plaintiff.

464.            **CLAIMS FOR WHICH RELIEF IS SOUGHT**

465.                  **Count I**

466.               **Breach of Contract**

467.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

468.      <u>Vaca v Sipes</u>

469.      “It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, see Ford Motor Co. v. Huffman, 345 U. S. 330; Syres v. Oil Workers International Union, 350 U. S. 892, and in its enforcement of the resulting collective bargaining agreement, see Humphrey v. Moore, 375 U. S. 335. The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see Steele v. Louisville & N. R. Co., 323 U. S. 192; Tunstall v. Brotherhood of Locomotive Firemen, 323 U. S. 210, and was soon extended to unions certified under the N. L. R. A., see Ford Motor Co. v. Huffman, supra. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. Humphrey v. Moore, 375 U. S., at 342. It is obvious that Owens' complaint alleged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs his cause of action. E. g., Ford Motor Co. v. Huffman, supra.”

470.      As demonstrated by this case breach of contract is a serious violation of law. Defendant is involved in breach of contract in the Plaintiff's case.

471.      <u>Allis Chalmers Corp v Lueck</u>

472.      “The conclusion that the Wisconsin court meant by "independent" that the tort is unrelated to an explicit provision of the contract is buttressed by analysis of the genesis and operation of the state tort. Under Wisconsin law, the tort intrinsically relates to the nature and existence of the contract. Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 13-16, 235 N. W. 413, 414-415 (1931). Thus the tort exists for breach of a "duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract," the scope of which, crucially, is "ascertained from a consideration of the contract itself." Id., at 16, 235 N. W., at 415. In Hilker, the court specifically noted:”

473.     ""Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. In order to understand what is meant by bad faith a comprehension of one's duty is generally necessary, and we have concluded that we can best indicate the circumstances under which the insurer may become liable to the insured . . . by giving with some particularity our conception of the duty which the written contract of insurance imposes upon the carrier." Id., at 13, 235 N. W., at 414."

474.     These case statements demonstrate how breach of contract is linked to the tort of breach of duty.  Defendant acted in bad faith, breached its contract and breached its duty to the Plaintiff.

475.     "In Alexander v. Gardner-Denver Co., 415 U. S. 36 (1974), the Court found that the NLRA conferred rights "on employees collectively to foster the processes of bargaining," id., at 51, and distinguished such rights which could be waived by contract between the parties, on the one hand, from an individual's substantive right derived from an independent body of law that could not be avoided by a contractual agreement, on the other."

476.     This case statement demonstrates that the Plaintiff Dr. I. Ezekwo has a right to her property, Defendant had a duty to continue with the mortgage for the Plaintiff as had been set forth by Defendant's statements to the  Plaintiff.  Thus Defendant has corruptly breached contract and broken the law.

477.     As a direct and proximate result of the Defendant's Breach of Contract, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

## 478.                              **Count II**
## 479.          **Breach of Contract, Fraudulent Misrepresentation, Fraudulent Concealment, Violation of Consumer Fraud Act, Negligent Misrepresentation**

480.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

481.     <u>Wigod v Wells Fargo</u>

482.     "We first examine whether Wigod has adequately pled viable claims under Illinois law, and we conclude that she has done so for breach of contract, promissory estoppel, fraudulent misrepresentation, and violation of the ICFA. We then consider whether federal law precludes Wigod from pursuing her state-law claims, and we hold that it does not.[4]"

483.     "At the heart of Wigod's complaint is her claim for breach of contract. The required elements of a breach of contract claim in Illinois are the standard ones of common law: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." Association Benefit Services, Inc. v. Caremark RX, Inc., 493 F.3d 841, 849 (7th

Cir.2007), quoting MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC, 364 Ill.App.3d 6, 300 Ill.Dec. 601, 845 N.E.2d 22, 30 (2006)."

484.     As in these above case statements, Defendant has met the parameters and criteria of breach of contract in the case of the Plaintiff Dr. I. Ezekwo.  Also as outlined in the above case statements, Defendant has partaken of fraudulent misrepresentation and violations of fair business practices.

485.     Fraudulent concealment

486.     "225 Ill.Dec. 881, 684 N.E.2d at 879. In short, the defendant accused of fraudulent concealment must exercise "overwhelming influence" over the plaintiff. Miller, 260 Ill.Dec. 735, 762 N.E.2d at 14

487.     By these case statements, it is clear that Defendant was involved in fraudulent concealment in the case of the Plaintiff Dr. I. Ezekwo.

488.     Negligent Misrepresentation or Concealment

489.     "In the alternative to her fraudulent misrepresentation and concealment claims, Wigod alleges that Wells Fargo negligently or carelessly (rather than intentionally) misrepresented or omitted material facts. Negligent misrepresentation involves the same elements as fraudulent misrepresentation, except that (1) the defendant need not have known that the statement was false, but must merely have been negligent in failing to ascertain the truth of his statement; and (2) the defendant must have owed the plaintiff a duty to provide accurate information. See Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd., 376 Ill.App.3d 1006, 315 Ill.Dec. 218, 876 N.E.2d 218, 228 (2007).[11]"

490.     By this case statement, Defendant meets the parameters of partaking in negligent misrepresentation in the case of the Plaintiff Dr. I. Ezekwo.

491.     The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA)

492.     "The ICFA protects consumers against "unfair or deceptive acts or practices," including "fraud," "false promise," and the "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. The Act is "liberally construed to effectuate its purpose." Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002). The elements of a claim under the ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir.2010), citing Robinson, 266 Ill.Dec. 879, 775 N.E.2d at 960. In addition, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." Id. at 935."

493.     This case statement demonstrates that Defendant has carried out deceptive and fraudulent practices.  Thus Defendant is liable.  Defendant must compensate the Plaintiff. Defendant must cease and desist from all actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

494.     Fraudulent Misrepresentation

495.     The elements of a claim of fraudulent misrepresentation in Illinois are:

496.     (1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

497.      This case statement demonstrates that the actions of Defendant meet all the parameters of fraudulent misrepresentation.  Thus Defendant is liable for its actions against the Plaintiff.

498.      As a direct and proximate result of the Defendant's Breach of Contract, Fraudulent Misrepresentation, Fraudulent Concealment, Violation of Consumer Fraud Act, Negligent Misrepresentation, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**499.**             **Count III**

**500.**      **Violation of  Consumer Fraud Statutes, Unfair Practices**

501.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

502.      "Universal Citation: NJ Rev Stat § 56:8-2 (2015)

503.      56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice"

504.      "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice;"

505.      "Universal Citation: NY Gen Bus L § 349 (2012)"

506.       " §349.  Deceptive  acts and practices unlawful. (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful. General Business Law ("GBL") § 349"

507.      As has been demonstrated in these statutes, Defendant  violated these above cited statutes in its actions against the Plaintiff.  Defendant has violated Consumer Fraud Statutes in its actions against the Plaintiff Dr. I. Ezekwo.

508.      15 U.S. Code § 1692f - Unfair practices

509.      "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:"

510.      "(1)The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

511.      "(6)Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A)there is no present right to possession of the property claimed as collateral through an enforceable security interest;(B)there is no present

intention to take possession of the property; or(C)the property is exempt by law from such dispossession or disablement."

512.       Defendant has violated this statute in its actions against the Plaintiff.  Thus Defendant is liable and must compensate the Plaintiff.

513.       As a direct and proximate result of the Defendant's Violation of Consumer Fraud Statutes, Unfair Practices, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

## 514.                                 Count IV
## 515.       Violation of Consumer Protection Laws and Violation of the Dodd-Frank Act

516.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

517.       "Similarly, a deceptive act or practice may not be cured by subsequent truthful disclosures."

518.       "The Dodd-Frank Act makes it unlawful for any covered person or service provider to engage in

519.       an "abusive act or practice."15 An abusive act or practice:

520.       • Materially interferes with the ability of a consumer to understand a term or condition of a

521.       consumer financial product or service or

522.       • Takes unreasonable advantage of:

523.       o A lack of understanding on the part of the consumer of the material risks, costs, or

524.       conditions of the product or service;

525.       o The inability of the consumer to protect its interests in selecting or using a consumer

526.       financial product or service; or

527.       o The reasonable reliance by the consumer on a covered person to act in the interests of the

528.       consumer"

529.       Thus Defendant is in violation of the Dodd-Frank Act in its actions against the Plaintiff.

530.       As a direct and proximate result of the Defendant's Violation of Consumer Protection Laws and Violation of the Dodd-Frank Act, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are

in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**531.** **Count V**

532. **Violations of Consumer Protection Guidelines**

533. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

534. "For example, not allowing African-American consumers to open

535. deposit accounts, or subjecting African-American consumers to different requirements to open

536. deposit accounts, may be an unfair practice even in those instances when ECOA does not apply

537. to this type of transaction."

538.

539. "A product is targeted to particular populations, without appropriate tailoring of marketing,

540. disclosures, and other materials designed to ensure understanding by the consumers.

541. h. The entity improperly gives inferior terms to one customer demographic as compared to

542. other customer demographics.

543. i. The entity improperly offers or provides more products or services to one customer

544. demographic as compared to other customer demographics.

545. j. Customer service representatives improperly treat customers of certain demographics

546. worse or provide extra assistance or exceptions to customers of certain demographics.

547. k. The entity engages in targeted advertising or marketing in a discriminatory way.

548. l. The entity uses decision-making processes in its eligibility determinations, underwriting,

549. pricing, servicing or collections that result in discrimination.

550. m. The entity fails to evaluate and make necessary adjustments and corrections to prevent

551. discrimination"

552. Defendant has violated all these consumer protection guidelines cited above as Defendant has ruthlessly discriminated against and harassed the Plaintiff Dr. I. Ezekwo. Defendant stole the Plaintiff's property for criminal gain.

553. As a direct and proximate result of the Defendant's Violations of Consumer Protection Guidelines, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst

her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**554.** ## <u>Count VI</u>

**555.** ## <u>Wrongful Foreclosure and Lack of Authority</u>

556.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

557.        <u>Yvanova v New Century Mortgage</u>

558.        "We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment."

559.        ""[O]nly the `true owner' or `beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." (Barrionuevo v. Chase Bank, N.A. (N.D.Cal. 2012) 885 F.Supp.2d 964, 972; see Herrera v. Deutsche Bank National Trust Co. (2011) 196 Cal.App.4th 1366, 1378 [127 Cal.Rptr.3d 362] [bank and reconveyance company failed to establish they were current beneficiary and trustee, respectively, and therefore failed to show they "had authority to conduct the foreclosure sale"];"

560.        This case highlights that only a true owner can initiate foreclosure proceedings. Since Defendant was receiving monthly payments from the Plaintiff and Defendant promised the Plaintiff  that Plaintiff would be allowed to have a mortgage, the actions of Defendant are illegal as Defendant  stole the property to make criminal financial gain with a property that was valuable with equity.  Defendant had no authority to steal the Plaintiff's property.  Defendant extorted close to thirty thousand dollars in payments from the Plaintiff, only for the Defendant then to steal the Plaintiff's property in Defendant's RICO conspiracy.

561.        "In itself, the principle that only the entity currently entitled to enforce a debt may foreclose on the mortgage or deed of trust securing that debt is not, or at least should not be, controversial. It is a "straightforward application[] of well-established commercial and real-property law: a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent)." (Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title (2013) 63 Duke L.J. 637, 640.) Describing the copious litigation arising out of the recent foreclosure crisis, a pair of commentators explained: "While plenty of uncertainty existed, one concept clearly emerged from litigation during the 2008-2012 period: in order to foreclose a mortgage by judicial action, one had to have the right to enforce the debt that the mortgage secured. It is hard to imagine how this notion could be controversial." (Whitman & Milner, Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note (2013) 66 Ark. L.Rev. 21, 23, fn. omitted.)"

562.        As this case statement describes Defendant had no right to steal the Plaintiff's property.  Defendant was accepting payments from the Plaintiff and was to continue the Plaintiff's mortgage as it had promised the Plaintiff, Defendant then stole the Plaintiff's property, these actions by Defendant are against the law.  Therefore, Defendant also illegally perpetuated a hoax against the government.

563.     As a direct and proximate result of the Defendant's Wrongful Foreclosure and Lack of Authority, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

## 564.                           Count VII
## 565.            Violation of the Securities Act

566.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

567.     Reves v Ernst & Young

568.     "After the Co-Op filed for bankruptcy, petitioners, a class of holders of the notes, filed suit against Arthur Young & Co., the firm that had audited the Co-Op's financial statements (and the predecessor to respondent Ernst & Young). Petitioners alleged, inter alia, that Arthur Young had intentionally failed to follow generally accepted accounting principles in its audit, specifically with respect to the valuation of one of the Co-Op's major assets, a gasohol plant. Petitioners claimed that Arthur Young violated these principles in an effort to inflate the assets and net worth of the Co-Op. Petitioners maintained that, had Arthur Young properly treated the plant in its audits, they would not have purchased demand notes because the Co-Op's insolvency would have been apparent. On the basis of these allegations, petitioners claimed that Arthur Young had violated the antifraud provisions of the 1934 Act as well as Arkansas' securities laws."

569.     Defendant in the Plaintiff's case has also committed fraud and violated the antifraud provisions of the Securities Act.  Defendant has violated the Securities Act in general.

570.     "Petitioners prevailed at trial on both their federal and state claims, receiving a $6.1 million judgment. Arthur Young appealed, claiming that the demand notes were not "securities" under either the 1934 Act or Arkansas law, and that the statutes' antifraud provisions therefore did not apply. A panel of the Eighth Circuit, agreeing with Arthur Young on both the state and federal issues, reversed. Arthur Young & Co. v. Reves, 856 F. 2d 52 (1988). We granted certiorari to address 60*60 the federal issue, 490 U. S. 1105 (1989), and now reverse the judgment of the Court of Appeals."

571.     This case shows the precedent for stopping violations of the Securities Act, which Defendant has violated in the case of the Plaintiff.  Thus Defendant must cease and desist from all of its actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

572.     "Finally, we find no risk-reducing factor to suggest that these instruments are not in fact securities. The notes are uncollateralized and uninsured. Moreover, unlike the certificates of deposit in Marine Bank, supra, at 557-558, which were insured by the Federal Deposit Insurance Corporation and subject to substantial regulation under the federal banking laws, and unlike the pension plan in Teamsters v. Daniel, 439 U. S. 551, 569-570 (1979), which was comprehensively regulated under the Employee Retirement

Income Security Act of 1974, 88 Stat. 829, 29 U. S. C. § 1001 et seq. (1982 ed.), the notes here would escape federal regulation entirely if the Acts were held not to apply."

573.     "For these reasons and those stated in the opinion of the Court, I conclude that the notes issued by respondents are securities within the meaning of the 1934 Act."

574.     Defendant has illegally created an investment for itself with stolen property, this is in clear violation of the Securities Act.

575.     As a direct and proximate result of the Defendant's Violation of the Securities Act, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**576.**                              **Count VIII**
**577.     Violation of Fair Debt Collection Practices Act, Breach of Contract, Violation of Fair Trade Practices**

578.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

579.     <u>Kaymark v Bank of America</u>

580.     "Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Court has repeatedly held that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes," Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir.2013), and, as such, we analyze the communication giving rise to the FDCPA claim "from the perspective of the least sophisticated debtor," Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.2008) (internal quotation marks omitted)."

581.     Defendant has violated the FDCPA as outlined in the above case citation.  Thus the Plaintiff must be fully compensated and Defendant must cease from all actions against the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

582.     "Kaymark alleges that, by attempting to collect fees for legal services not yet performed in the mortgage foreclosure, Udren violated 15 U.S.C. § 1692e—specifically, § 1692e(2)(A), (5), and (10)—which imposes strict liability on debt collectors who "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692f(1) by attempting to collect "an[ ] amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.""

583.     Defendant is extorting the Plaintiff by stealing the Plaintiff's property when the Plaintiff was to be continuing with a mortgage as this was a settled fact that was agreed to by Defendant.  This is false and deceptive action on the part of Defendant that has been stated as a violation of 15 U.S.C. § 1692e as noted in the above case statement.

584.     "Of course, the statute references "ascertainable loss of money or property, real or personal," 73 P.S. § 201-9.2 (emphasis added), and there may be situations in which a lien against a consumer's property provides a sufficiently concrete loss that a consumer

need not pay off before bringing a UTPCPL claim to remedy her rights. See Brock v. Thomas, 782 F.Supp.2d 133, 143-44 (E.D.Pa.2011) (denying motion to dismiss UTPCPL claim where equity theft scheme left victim's home encumbered by lien)."

585.        The Plaintiff's property that Defendant stole from the Plaintiff and everything surrounding this incident meets the parameters to bring a claim against Defendant by the Plaintiff for violations of fair trade practices.

586.        "To allege breach of contract in Pennsylvania, a plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa.Super.2004) (internal quotation marks omitted)."

587.        These case statements demonstrate that Defendant has met all the parameters for breach of contract in the Plaintiff's case.

588.        As a direct and proximate result of the Defendant's Violation of Fair Debt Collection Practices Act, Breach of Contract, Violation of Fair Trade Practices, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

## 589.                    **Count IX**
## 590.         **Intentional Infliction of Emotional Distress-Tort**

591.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

592.        Fletcher v Western National

593.        "[3] The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (Alcorn v. Anbro Engineering, Inc., 2 Cal. 3d 493, 497-498 [86 Cal. Rptr. 88, 468 P.2d 216]; State Rubbish etc. Assn. v. Siliznoff, 38 Cal. 2d 330, 337-339 [240 P.2d 282]; Spackman v. Good, 245 Cal. App. 2d 518, 528-529, 531-534 [54 Cal. Rptr. 78]; Rest.2d Torts, § 46.) Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged. (Agostini v. Strycula, 231 Cal. App. 2d 804, 808 [42 Cal. Rptr. 314]; State Rubbish etc. Assn. v. Siliznoff, supra, at p. 339; Rest.2d Torts, supra, § 46, com. g.)"

594.        This case demonstrates that the Defendant meets all the parameters of this tort of intentional infliction of emotional distress on the Plaintiff Dr. I. Ezekwo.   Thus the Defendant must let the Plaintiff keep her property. The Plaintiff also must be fully compensated for the harm the Plaintiff has suffered.  The Defendant must return Plaintiff's property to Plaintiff.

595.        As a direct and proximate result of the Defendant's Intentional Infliction of Emotional Distress, Plaintiff has sustained injuries and damages such as loss of income,

public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**596.**               **Count X**
**597.**   **Violation of The Fair Housing Act**

598.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

599.       "The Fair Housing Act makes it illegal to "refuse to sell… after the making of a bona fide offer, or to refuse to negotiate for the sale… or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin."[1] This prohibition is broad, applicable to various persons or businesses involved in the sale of residential property, including property owners, real estate agents, brokers, lending institutions, insurance companies and real estate appraisers. The FHA was passed in the midst of the civil rights movement in response to widespread discriminatory housing practices."

600.       By stealing the Plaintiff Dr. I. Ezekwo's property, the Defendant is in violation of the Fair Housing Act. The Defendant is discriminating against the Plaintiff Dr. I. Ezekwo and stole the Plaintiff's property out of racism and hate.

601.       As a direct and proximate result of the Defendant's violation of the Fair Housing Act, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**602.**               **Count XI**
**603.**   **Abuse of Power under the color of state law, violation of the Fourteenth Amendment**

604.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

605.       Lugar v Edmondson Oil

606.       "The Court's conclusion in United States v. Classic, 313 U. S. 299, 326 (1941), that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law," was founded on the rule announced in Ex parte Virginia, 100 U. S. 339, 346-347 (1880), that the actions of a state officer who exceeds the limits of his authority constitute state action for purposes of the Fourteenth Amendment.[13]"

607.       As shown in this case, the Plaintiff Dr. I. Ezekwo's rights have been violated by the Defendant.  The Defendant is acting under the color of state law to deprive the

Plaintiff Dr. I. Ezekwo of her rights that have been set out in the U.S. Constitution, particularly the Fourteenth Amendment and her rights to due process.

608.        As a direct and proximate result of the Defendant's abuse of power under state law and violation of the Fourteenth Amendment, the Plaintiff has suffered injuries and damages , such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are  in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

## 609.                    **Count XII**
## 610.                    **Trespass to Land**

611.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

612.

613.        "Trespass to land is defined as a person's unlawful entry onto another's land. There are five elements which the plaintiff must show for a valid suit.

614.        1.        There was a volitional act made by the defendant.

615.        2.        The Defendant acted with the intent of intruding on the plaintiff's land.

616.        3.        There was an actual intrusion on the plaintiff's land

617.        4.        The plaintiff was in possession, or was entitled to immediate possession, of the land when the intrusion took place.

618.        5.        The intrusion was caused by the defendant's act."

619.        "…….the intrusion onto the plaintiff's land can be committed by personal entry onto the property, or it can be committed by causing some object (or another person) to enter the property. See Rogers v. Board of Road Commissioners, 30 N.W.2d 358 (Mich. 1948)."

620.        The actions of the Defendant  fall under the definition of illegal trespass onto the Plaintiff Dr. I. Ezekwo's property.  The Defendant stole the Plaintiff's property in a RICO conspiracy, this is illegal trespass.

621.        As a direct and proximate result of the Defendant's trespass to Plaintiff's land, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.  These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

622.                    **Count XIII**
623.       **Planting of Evidence and Vandalization of Plaintiff's property**

624.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

625.       Warrick v Superior Court

626.       "What standard must a moving party meet to show a "plausible" factual foundation for the Pitchess discovery requested? We conclude that a plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges. A defendant must also show how the information sought could lead to or be evidence potentially admissible at trial. Such a showing "put[s] the court on notice" that the specified officer misconduct "will likely be an issue at trial." (Santa Cruz, supra, 49 Cal.3d at p. 86, 260 Cal.Rptr. 520, 776 P.2d 222.) Once that burden is met, the defendant has shown materiality under section 1043."

627.       The Plaintiff Dr. I. Ezekwo will require that every individual involved in the theft of her property be back ground checked to see their personal history, to further reveal the extent of this RICO conspiracy.  The Defendants cannot be allowed to steal Plaintiff's property.  There must be an investigation into the activities of the Defendant.

628.       "Thus, defendant has outlined a defense raising the issue of the practice of the arresting officers to make false arrests, plant evidence, commit perjury, and falsify police reports or probable cause. (People v. Jackson (1996) 13 Cal.4th 1164, 1220, 56 Cal.Rptr.2d 49, 920 P.2d 1254 [overbroad discovery request is properly narrowed by the trial court to misconduct similar to that alleged]; People v. Memro, supra, 38 Cal.3d at pp. 681-683, 214 Cal. Rptr. 832, 700 P.2d 446 ["evidence that the interrogating officers had a custom or habit of obtaining confessions by violence, force" or threats would be admissible to support a coerced confession claim].) Defendant has established the relevance of such information to his pending trial (see, e.g., People v. Gill (1997) 60 Cal.App.4th 743, 750, 70 Cal.Rptr.2d 369 [prior complaints that arresting officer fabricated probable cause and planted evidence were material to defense that drugs were planted on a defendant charged with drug possession]), and having advanced a basis for admitting it into evidence at trial, he has shown its materiality."

629.       This case shows how an individual is entitled to information that is pertinent to their legal recourse.  The Plaintiff needs to have full discovery of the Defendant and its actions regarding Plaintiff's case, this all must be reviewed in a court proceeding and in an investigation by the government.  The Plaintiff already has litigated against the Defendant's criminal allies, thus the Defendant cannot be allowed to obstruct justice and interfere with this litigation.  The Defendant's allies are also being investigated by the office of the Attorney General of New Jersey, and the Defendant is creating sensationalism to interfere with this investigation and obstruct justice.

630.       As a direct and proximate result of the Defendant's Planting of Evidence and Vandalization of Plaintiff's property, Plaintiff has sustained injuries and damages, such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good

standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**631.**                          <u>**Count XIV**</u>

**632.**          <u>**Violation of 1st Amendment Rights, Retaliation, Capricious Acts and Violation of Constitutional Rights**</u>

633.          Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

634.          <u>Hines v. Gomez</u>

635.          "Pratt then concluded that "it would be illegal for [prison] officials to transfer and double-cell Pratt solely in retaliation for his exercise of protected First Amendment rights." Id. at 807."

636.          "Hines has alleged Pearson's false charge infringed his First Amendment right to file prison grievances. The allegation here falls squarely within Sandin's eleventh footnote and Pratt's reasoning; the injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights, not the additional confinement or the deprivation of the television. We hold that Hines' failure to demonstrate a more substantial injury does not nullify his retaliation claim. Cf. Perry v. Sindermann, 408 U.S. 593, 597-98, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972) (holding that although teacher had no entitlement to employment contract renewal, the college administration's nonrenewal based on the teacher's public criticism of the college is actionable as a violation of the teacher's free speech rights)."

637.          Here The Defendant also worked with Dara Govan, Adam Kessler, the City of Englewood and various criminal actors in retaliation against the Plaintiff Dr. I. Ezekwo, which also falls under a RICO conspiracy as well as being a retaliation action due to a case the Plaintiff had against the City of Englewood.  This has violated the Plaintiff Dr. I. Ezekwo's right to free speech under the 1st Amendment.  The Defendant's actions here are created as retaliation for the Plaintiff having exercised her rights to fair justice, The Defendant out of a crazed sense of entitlement and hate now wants to destroy the Plaintiff by taking away her rights.

638.          <u>Barnett v. Centoni</u>

639.          "Summary judgment is appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a nonmoving party bears the burden of proof at trial, he must establish each element of his claim with "`significant probative evidence tending to support the complaint.'" Smolen, 921 F.2d at 963 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987))."

640.          Thus the Plaintiff Dr. I.Ezekwo's case can only be resolved at trial with all the evidence gathered and it cannot be properly arbitrated by The Defendant and its gamesmanship.  The legal process must be allowed to continue without the obstruction and manipulation of the Defendant.  The Plaintiff must be fully compensated and legal claims of the Defendant to the Plaintiff's land and property that were created by The Defendant's criminality must be relinquished.  Defendant must return Plaintiff's property to Plaintiff.

641.     "Further, under the consent decree entered in Thompson v. Enomoto, No. C-79-1630-SAW (N.D.Cal. Oct. 23, 1980), administrative classification decisions are "in the sound discretion of institutional staff, such discretion to be exercised in a non-arbitrary and non-capricious manner.""

642.     The actions of The Defendant against the Plaintiff Dr. I. Ezekwo were certainly of a capricious and arbitrary nature, thus they are subject to liability.  The actions carried out against the Plaintiff Dr. I. Ezekwo by the Defendant were vindictive and fraudulent.  Thus the Defendant must compensate the Plaintiff. The legal process must be allowed to go through, the Plaintiff's statements and the facts she has given herein must be taken as established and the Defendant must compensate the Plaintiff and relinquish all legal claims to Plaintiff's property and land immediately.  The Defendant must also stop continuing to follow the Plaintiff by disrupting her business and contacting individuals of its contacts in government administration to create obstacles and difficulties for the Plaintiff along with harassing the Plaintiff.  Defendant must return Plaintiff's property to Plaintiff.

643.     "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985)."

644.     The actions of The Defendant were retaliatory for the Plaintiff Dr. I. Ezekwo exercising her constitutional rights and served no legitimate interest.  The actions of The Defendant were criminal and violent.  Colluding with the City of Englewood, the Defendant attacked the Plaintiff to further its sinister criminal agenda.  The Defendant must therefore compensate the Plaintiff and cease from any incursions onto the Plaintiff's property and give up any entitlement given by itself to ever do so in the future.  With the Defendant still giving itself sanction to extort the Plaintiff and to have ownership of the Plaintiff's property(by theft) even when a mortgage was to continue, it is clearly evident that the Defendant is criminally harassing the Plaintiff in a RICO conspiracy.

645.     "In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989). A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Buckey v. Los Angeles, 957 F.2d 652, 654 (9th Cir.1992)."

646.     All of the Plaintiff Dr. I. Ezekwo's claims are true material facts and thus the Defendant must cease from all its criminal activity and compensate the Plaintiff.  The Plaintiff must have her home secured from the Defendant's incursion immediately.  Also the Defendant must stop following and disrupting the Plaintiff, which it has continued to do up to this day.  Defendant must return Plaintiff's property to Plaintiff.

647.     As a direct and proximate result of the Violation of 1st Amendment Rights of the Plaintiff, Retaliation against the Plaintiff , Capricious Acts against the Plaintiff and the Violation of the Constitutional Rights of the Plaintiff by the Defendant, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to

her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

648.                                   **Count XV**

649.       **False Information Maliciously Put in Record, Prosecution without Probable Cause, Violation of 4th Amendment, Monell Claim.**

650.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

651.       Galbraith v. County of Santa Clara

652.       "We therefore turn to the amended complaint to determine whether its allegations are adequate to state a claim in the absence of any heightened pleading standard. In dismissing the amended complaint, the district court relied on our authority holding that government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit. See Branch I, 937 F.2d at 1387-88; see also Butler v. Elle, 281 F.3d 1014, 1024-25 (9th Cir.2002); Liston v. County of Riverside, 120 F.3d 965, 972-975 (9th Cir.1997); Hervey v. Estes, 65 F.3d 784, 790 (9th Cir.1995). Under this authority, a § 1983 plaintiff must show that the investigator "made deliberately false statements or recklessly disregarded the truth in the affidavit" and that the falsifications were "material" to the finding of probable cause. Hervey, 65 F.3d at 790 (9th Cir.1995)."

653.       The Defendant put clear lies and false information in the record of the Plaintiff Dr. I. Ezekwo as part of a larger conspiracy to take away her rights in retaliation for a lawsuit she had against the City of Englewood and a number of its police officers who attacked her and her son.  Thus, the Defendant is liable for its criminal actions.

654.       "Neither side has challenged the district court's application of these warrant affidavit cases to the present facts, and we agree, without deciding any issue of immunity, that a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment. See Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir.1998) (analyzing claims of false arrest and malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment)."

655.       Thus, this case also demonstrates that The Defendant's falsified report makes it liable for a USC 1983 and Fourth Amendment violation claim by the Plaintiff Dr. I. Ezekwo.  The Defendant's statements are clear lies and the Defendant is involved in criminal behavior.  The Plaintiff Dr.I. Ezekwo must be given compensation and have her property protected from theft by the Defendant.  Defendant must return Plaintiff's property to Plaintiff.

656.       "Galbraith's allegation that Dr. Ozoa's misconduct conformed to County policy also suffices to state a Monell claim against the County. "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss `even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986))."

657.      The Plaintiff Dr. I. Ezekwo's case thus also rises to a Monell claim, as the actions of the Defendant and its coconspirators was in conformity with the Defendant's policies. Thus, the Plaintiff Dr. I. Ezekwo must be compensated by the Defendant and the Defendant must also give up any legal claims to the Plaintiff's property. Thus, the Plaintiff Dr. I.Ezekwo's statements herein must be taken as established and the Plaintiff's property must be protected from all theft by the Defendant. The Defendant must be sanctioned and the Defendant must compensate the Plaintiff Dr.I. Ezekwo. The Defendant must return Plaintiff's property to Plaintiff.

658.      As a direct and proximate result of the False Information Maliciously Put in Record by the Defendant, Prosecution without Probable Cause by the Defendant, Violation of 4th Amendment by the Defendant and Monell Claim Actionable Conduct by the Defendant, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREEBILLION US DOLLARS and additional damages to be determined at trial.

## 659.                    Count XVI
## 660.      Fabrication of False Evidence, Violations of Due Process Rights, Defamation and Incitement of Crimes

661.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

662.      Buckley v. Fitzsimmons

663.      "The theory of petitioner's case is that in order to obtain an indictment in a case that had engendered "extensive publicity" and "intense emotions in the community," the prosecutors fabricated false evidence, and that in order to gain votes, Fitzsimmons made false statements about petitioner in a press conference announcing his arrest and indictment 12 days before the primary election. Petitioner claims that respondents' misconduct created a "highly prejudicial and inflamed atmosphere" that seriously impaired the fairness of the judicial proceedings against an innocent man and caused him to suffer a serious loss of freedom, mental anguish, and humiliation."

664.      The entirety of the harassment of the Plaintiff Dr. I. Ezekwo amounts to a show trial that has been created for corrupt political reasons going back to the first assault by City of Englewood police officers who violently assaulted the Plaintiff and her son, and committed perjury, then released false statements to the media lying that they(the Englewood police) were assaulted, The Defendant has continued with this line of behavior as part of RICO conspiracy attempting to create a false image of the Plaintiff Dr. I. Ezekwo to the public so as to continue the criminal agenda of The Defendant, the City of Englewood, City of Paterson, Dara Govan and their allies.  This new move by The Defendant is more of the same, thus it must be immediately stopped and it must be sanctioned.  The Plaintiff Dr. I. Ezekwo must be given her just compensation and further incursions by the Defendants onto her property must immediately be stopped.  The Defendants must also give up all legal claims to enter the Plaintiff's property.  The Defendants must also stop following and harassing the Plaintiff.  The Plaintiff must have

Plaintiff's property returned to Plaintiff.  The Defendant must cease and desist from all actions against the Plaintiff(including foreclosure proceedings).

665.      "With respect to the claim based on the alleged fabrication of evidence, the District Court framed the question as whether the effort "to obtain definitive boot evidence linking [petitioner to the crime was in the nature of acquisition of evidence or in the nature of evaluation of evidence for the purpose of initiating the criminal process." Id., at 45. The Court concluded that it "appears" that it was more evaluative than acquisitive."

666.      "Judge Fairchild dissented in part. He agreed with the District Court that Fitzsimmons was entitled only to qualified immunity for his press statements. He noted that the majority had failed to examine the particular function that Fitzsimmons was performing, and concluded that conducting a press conference was not among "the functions that entitle judges and prosecutors in the judicial branch to absolute immunity." Id., at 1246 (opinion dissenting in part and concurring in part). Responding directly to the majority's reasoning, he wrote:"

667.      ""It is true that procedures afforded in our system of justice give a defendant a good chance to avoid such results of prejudicial publicity as excessive bail, difficulty or inability of selecting an impartial jury, and the like. These procedures reduce the cost of impropriety by a prosecutor, but I do not find that the courts have recognized their availability as a sufficient reason for conferring immunity." Ibid."

668.      Throughout the Plaintiff Dr. I. Ezekwo's case The Defendant and the Plaintiff's other opponents have had their eyes to the political wind always creating maximum sensationalism in order to create spectacles based on lies for public consumption while The Defendant and its allies aided and abetted pedophiles and rapists.  The Plaintiff must have her just compensation given to her immediately.  The Defendant is in contempt of court it has failed to state why it made serious litigative actions such as stealing the Plaintiff's property when the Plaintiff was to continue with a mortgage, also the Defendant extorted thousands of dollars from Plaintiff, Defendant continues to cause legal confusion due to its sense of entitlement.  The Defendant cannot be entitled to commit crimes and break the law, this is simply delusion.  The Defendant brings frivolous litigation against the Plaintiff to harm her for its corrupt political ends. The Defendant is involved in devilish diabolic acts.

669.      "Even when we can identify a common-law tradition of absolute immunity for a given function, we have considered "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." Tower v. Glover, 467 U. S., at 920. Not surprisingly, we have been "quite sparing" in recognizing absolute immunity for state actors in this context. Forrester v. White, 484 U. S. 219, 224 (1988)."

670.      Thus, the Defendant and its allies have no right to immunity for their criminal actions in the case of the Plaintiff Dr. I. Ezekwo.  The Plaintiff Dr.I.Ezekwo must be given compensation immediately and the Defendant must cease from all actions against Palintiff and give up all Defendant's claims to Plaintiff's property. Defendant must return Plaintiff's property to Plaintiff.

671.      As a direct and proximate result of Fabrication of False Evidence, Violations of Due Process Rights, Defamation and Incitement of Crimes by the Defendant, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety,

irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

672.    ## <u>Count XVII</u>

673.    ## <u>Abuse of Process, Malicious Prosecution, Violation of 1st Amendment and Prima Facie Tort</u>

674.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

675.    <u>Cook v. Sheldon</u>

676.    "Cook sued Troopers Sheldon and Saldana in the Southern District of New York under section 1983, alleging false arrest, malicious prosecution, and malicious abuse of process. He claimed that the Troopers arrested him without probable cause because they were outraged that he should counsel Serrano to keep silent and request a lawyer."

677.    "In a three-paragraph order, the district court denied the Troopers' motion, finding that material issues of fact existed regarding the reason for Cook's arrest. The court stated that "[i]f Plaintiff was arrested in retaliation for the exercise of his First Amendment rights, the defense of qualified immunity is unavailable.""

678.    "Cook pleads three causes of action under section 1983: (1) false arrest; (2) malicious prosecution; and (3) malicious abuse of process. The Troopers argue that the district court should have dismissed all three claims by summary judgment on the ground of qualified immunity. Their fundamental position is that, so long as they had probable cause to believe that Cook violated the VIN statute, they are entitled to qualified immunity as a matter of law, regardless of their motives. We disagree."

679.    "For this purpose, "[a] right is `clearly established' if it meets one of three tests: (1) it is defined with reasonable clarity; or (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful." Jeffries v. Harleston, 21 F.3d 1238, 1248 (2d Cir.), vacated on other grounds and remanded, ___ U.S. ___, 115 S.Ct. 502, ___ L.Ed.2d ___ (1994)."

680.    "It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause. See Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir.1993); Golino, 950 F.2d at 870."

681.    This case clearly shows how violations of constitutional rights are not to be tolerated, especially when they are in retaliation for the seeking of justice and First Amendment rights.  This is the same thing that The Defendant did to the Plaintiff Dr. I. Ezekwo.  Malicious abuse of process and Malicious prosecution also occurred in this above cited case , The Defendant's actions were clearly unlawful and the Defendant knew this from the beginning, but chose to partake in a RICO conspiracy and the harassment of the Plaintiff Dr. I. Ezekwo anyway.   The Defendant therefore partook in malicious abuse of process and malicious prosecution.

682.    "If Cook is right that the Troopers employed a "shoot 'em all, and let God sort 'em out" arrest psychology, their actions were abhorrent to the Fourth Amendment."

683.                    Monell v New York City Dept. of Social Services
684.                    "Although, after plenary consideration, we have decided the merits
of over a score of cases brought under § 1983 in which the principal defendant was a
school board — and, indeed, in some of which § 1983 and its jurisdictional counterpart,
28 U.S.C. § 1343, provided the only basis for jurisdiction — we indicated in Mt. Healthy
City Board of Education v. Doyle, 429 U.S. 274, 279 (1977), last Term that the question
presented here was open and would be decided "another day." That other day has come
and we now overrule Monroe v. Pape, supra, insofar as it holds that local governments
are wholly immune from suit under § 1983."
685.                    Thus as this case points out, the Defendant is liable for its criminal
actions against the Plaintiff Dr. I.Ezekwo.  The Defendant has no immunity.  The
Defendant is corrupting the legal process and the Plaintiff must be compensated
immediately, the Defendant must also relinquish all legal claims it has on the Plaintiff Dr.
I.Ezekwo's property, and stop all extortion of the Plaintiff Dr. I. Ezekwo.  The Defendant
must return Plaintiff's property to Plaintiff.
686.                    As a direct and proximate result of Abuse of Process, Malicious
Prosecution, Violation of 1st Amendment and Prima Facie Tort by the Defendant, the
Plaintiff has sustained injuries and damages such as loss of income, public humiliation,
threats to security, loss of prestige in the community, emotional distress, threats to
personal safety, irreparable harm, loss of ability to carry out business, shame, loss of
revenue, property damage, lack of security, protracted legal problems, financial loss,
permanent damage to her reputation and good standing amongst her peers, and much
more.   These injuries and damages are in the amount of THREE BILLION US
DOLLARS and additional damages to be determined at trial.

**687.**              **Count XVIII**
**688.**              **Malicious Prosecution and Abuse of Process**
689.         Plaintiff incorporates and restates each of the above paragraphs as if fully set forth
herein.
690.         Dutt v Kremp
691.         "If society is to have any confidence in the legal system and the administration of
justice within our courts, there must be an accountability for derelict lawyers that is equal
to the level of accountability we impose on derelict physicians and other professionals.
As I view this record, the evidence strongly supports the jury's findings against Dutt.
Plainly stated, the jury, by its verdict, announced that lawyers are not privileged to assail
the reputation of physicians in court and subject them to the enervating trauma, time and
cost of a lawsuit with its concomitant attenuation of professional standing without
reasonable cause.[3]"
692.         "…to the effect that "an attorney's reasonable investigation and industrious search
of legal authority is an essential component of probable cause." Id. at 254 Cal.Rptr. at
347, 765 P.2d at 509."
693.         "I am persuaded that the rule embraced by the Supreme Court of Arizona in
Bradshaw v. State Farm Mut. Auto. Ins., 157 Ariz. 411, 758 P.2d 1313 (1988), is more
appropriate. Holding that the test for probable cause is both subjective and objective, the
Bradshaw court stated that "[t]he initiator of the action must honestly believe in its
possible merits; and, in light of the facts, that belief must be objectively reasonable." Id.

417, 758 P.2d at 1319 (citing Haswell v. Liberty Mutual Insurance Co., 557 S.W.2d 628, 633 (Mo. 1977); Restatement (Second) of Torts § 675 cmt. c (1977); Prosser & Keeton on the Law of Torts § 120, at 893 (5th ed. 1984)) (emphasis in original text)."

694.     "…..the instant case from that of Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980). In Bull, this court affirmed an award against the attorney who filed a medical malpractice action based upon a determination that substantial evidence in the record supported the finding that the action was filed for the ulterior purpose of coercing a nuisance settlement."

695.     "The elements that must be proved in a malicious prosecution action in addition to the filing of a prior action against the plaintiffs are: (1) a lack of probable cause to commence the prior action; (2) malice; (3) favorable termination of the prior action; and (4) damages. See Chapman v. City of Reno, 85 Nev. 365, 369, 455 P.2d 618, 620 (1969)."

696.     "An abuse of process claim consists of two elements: (1) an ulterior purpose other than resolving a legal dispute, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. Kovacs v. Acosta, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990). An "ulterior purpose" includes any "improper motive" underlying the issuance of legal process. See Laxalt v. McClatchy, 622 F. Supp. 737, 751 (D. Nev. 1985)."

697.     This case demonstrates that the Plaintiff Dr. I. Ezekwo has been the victim of malicious prosecution and abuse of process by The Defendant, who is attempting to take away all the Plaintiff's rights for corrupt financial and political gain. The Defendant is clearly acting out of malice and hate to shift the proceedings of the government in a fashion that hurts the Plaintiff Dr. I. Ezekwo.

698.     Malicious Prosecution and Abuse of Process(contd)

699.     Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A

700.     "In Trussell, this court examined the development of case law in Ohio setting forth the elements of the tort of malicious criminal prosecution, contrasting the elements of that tort with the elements of the tort of malicious civil prosecution. The Trussell court, applying paragraph one of the syllabus of Rogers v. Barbera (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162, observed: "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Trussell, supra, at syllabus."

701.     "As was noted by the Trussell court, the elements of the tort of malicious civil prosecution were set forth in Crawford v. Euclid Natl. Bank (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 344, 483 N.E.2d 1168, 1171: "`(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *.'" (Citations omitted.)"

702.     "We accept the proposition that the tort of malicious civil prosecution  does not provide a remedy for a situation in which process is used to accomplish an improper ulterior purpose. Such a situation occurs when there is an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process * * *." Id. at 898. Accordingly, we recognize the tort of abuse of process as a distinct tort in its own right, distinguishable from the tort of malicious civil prosecution. See Clermont

Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 16 OBR 9, 474 N.E.2d 357; Avco Delta Corp. v. Walker (1969), 22 Ohio App.2d 61, 51 O.O.2d 122, 258 N.E.2d 254."

703.      "Having determined that Ohio recognizes the tort of abuse of process, we now address the elements of the tort. We hold that the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process"

704.      Again this case demonstrates that the Defendant is involved in malicious prosecution and abuse of process in the Plaintiff Dr. I. Ezekwo's case.  As shown by this case The Defendant's acts meet all the parameters of malicious prosecution and abuse of process, the Defendant bringing legal processes against the Plaintiff when the Plaintiff was simply to continue with the Plaintiff's mortgage is one of these acts as the Defendant had no need to steal the Plaintiff's property. This clearly demonstrates that the legal processes the Defendant has brought against the Plaintiff are malicious with evil objective. The Defendant is hijacking the legal process for criminal ends.  The Plaintiff must be compensated immediately and the Defendant must relinquish all legal claims to the Plaintiff's property, stop all extortion of the Plaintiff and allow the Plaintiff to keep her property.  The Defendant also lied to Plaintiff, just so that the Defendant could try to appear a certain way to avoid scrutiny only for Defendant then to go deeper into its hate and criminality to hurt the Plaintiff by stealing the Plaintiff's property.

705.      As a direct and proximate result of the Defendant's Malicious Prosecution and Abuse of Process, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**706.           Count XIX**
**707.      OBSTRUCTION OF JUSTICE**

708.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

709.      1.      By 18 U.S.C. §1503 "obstruction of justice" is described as any act that "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs or impedes or endeavors to influence, obstruct or impede, the due administration of justice"  The Defendant has met this definition by hijacking a legal process to steal from the Plaintiff Dr.I.Ezekwo and take away her constitutional rights. The present theft of the Plaintiff's property is designed by the Defendant to stop all of the Plaintiff Dr. I. Ezekwo's legal recourse.  Also by stealing the Plaintiff's property, Defendant seeks to disrupt Plaintiff so much that Plaintiff can never be able to adequately protect herself or seek justice.

710.      2.      18 U.S.C. §1505 subjects to criminal liability one who "corruptly influences, obstructs or impedes the due and proper administration of the law under

which any pending proceeding is being had before any department or agency of the United States." The Defendant's activities fall under this statute as its actions are impeding ongoing investigations into its behavior along with its criminal allies by the State Attorney of New Jersey, also the Defendant and its allies are attacking the Plaintiff on multiple fronts(in courts etc) in the hopes of violating the Plaintiff Dr. I. Ezekwo.

711.     As a direct and proximate result of the Defendant's obstruction of justice, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.     These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

712.                    <u>Count XX</u>
713.     <u>INTERFERENCE, COERCION, INTIMIDATION, RETALIATION</u>

714.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

715.     The Defendant violated 42 U.S. Code § 12203 that states "(a)RETALIATION No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.(b)INTERFERENCE, COERCION, OR INTIMIDATION It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

716.     As a direct and proximate result of the Defendant's INTERFERENCE, COERCION, INTIMIDATION, RETALIATION, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.     These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

717.                    <u>Count XXI</u>
718.     <u>VIOLATIONS OF RICO ACT</u>

719.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

720.     The Defendant and its coconspirators identified the Plaintiff Dr. I.Ezekwo as a common enemy. This falls strictly under RICO but is also covered by Anti-SLAPP (strategic lawsuit against public participation) laws.

721.    The Defendant has shown repeat violations of the RICO law that fall under the RICO act.  The sections of the RICO act they have violated are manifold, including section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to the obstruction of criminal investigation), section 1511 (relating to obstruction of state or local law enforcement), section 1512 (relating to tampering with a witness, victim or informant), section 1513 (relating to retaliation against a witness, victim or informant), section 1951 (relating to interference with commerce, robbery or extortion), section 1546 (relating to fraud and misuse of visas, permits, and other documents), section 1952 (relating to racketeering), section 1956 (relating to laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity),.   The Defendant has also violated the Continuing Criminal Enterprise Statute and with corrupt officials is involved in extortion under color of authority as they are illegally gaining by damaging the Plaintiff Dr.I.Ezekwo's property, stealing the Plaintiff's property, extorting the Plaintiff and depriving the Plaintiff of income.

722.    As a direct and proximate result of the Defendant's VIOLATIONS OF THE RICO ACT, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

## 723.                    Count XXII
## 724.                    Irreparable harm

725.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

726.    Under these circumstances Dr. I. Ezekwo and her family are suffering irreparable harm and the loss of constitutional rights.  Irreparable harm " is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation" Kamerling v. Massanari.

727.    "The injury must be both certain and great and that it must not be merely serious or substantial Irreparable  is often suffered when 'the injury cannot be adequately atoned for in money' or when 'the district court cannot remedy [the injury] following a final determination on the merits.'" Prairie Band of *1259 Potawatomi Indians 253 F.3d at 1250.  The decade long assault against the Plaintiff Dr. I. Ezekwo, her family and associates make the Plaintiff's case fall under this definition as the criminal agenda being acted out by The Defendant is part of a series of actions against the Plaintiff Dr. I. Ezekwo that have worked in concert with various criminal actors who want to harm the Plaintiff for their criminal agenda, the Plaintiff Dr. I. Ezekwo's life will be at risk as will the lives of her family and associates if the Defendant is not fully investigated and held accountable for its actions.

728.    Also a plaintiff suffers irreparable harm when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir.

2001)(citing Tri-State Generation & Transmission Assoc., Inc v. Shoshone River Power, Inc., 874 F.2d 1346, 1354 (10th Cir. 1989).  This irreparable harm clearly applies to the Plaintiff Dr. I.Ezekwo.

729.       As a direct and proximate result of the Defendant causing irreparable harm to the Plaintiff, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.    These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

**730.**                    **Count XXIII**
**731.**                    **DEFAMATION**

732.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

733.       Defamation is a "communication that tends to harm the reputation of another to lower his estimation in the community or deter third parties from associating with him." Restatement (2nd) of Torts, §559.  A statement is defamatory if it has a negative impact on someone's reputation among a substantial number of people in the community, even if the number of impacted people is not a majority of the community. Restatement (2nd) of Torts, §559, comment e.

734.       Every defamation claim must meet the following four elements: (a)  a false statement concerning another;(b) the statement must be defamatory;(c) a publication to a third party; and(d) harm to the plaintiff's reputation. Restatement (2nd) of Torts, §558.

735.       Therefore, in order for an action of defamation to arise, the defendant must communicate his defamatory statement to someone other than the plaintiff. See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997).  The Defendant has broadcast its statements against the Plaintiff Dr. I. Ezekwo to people far and wide, therefore The Defendant is defaming the Plaintiff Dr. I. Ezekwo.

736.       Further, in order to recover for defamation, the Plaintiff Dr. I. Ezekwo must prove that the defendant intentionally communicated the defamatory statement to a third person, or that the defendant negligently failed to exercise due care in making sure the statement was not published. See Barnes v. Clayton House Motel, 435 S.W.2d 616 (Tex. 1968). Again, The Defendant has been spreading malicious statements about the Plaintiff Dr. I. Ezekwo to everyone the Defendant can meet and the Defendant is attempting to cover these moves clandestinely, this all also falls under the RICO Act and is also clearly defamation.

737.       An individual who has an unsullied name(like the Plaintiff Dr.I. Ezekwo) is a greater victim of defamation. See Jackson v. Longcope, 476 N.E.2d 617 (Mass. 1885). Thus defamation is the crime the Defendant enacted against the Plaintiff Dr. I. Ezekwo, who as a physician and priest has tirelessly helped and healed thousands all her life.

738.       The second prong in determining whether or not a statement has the potential to injure the plaintiff's reputation is determining whether or not the statement can be interpreted to carry a defamatory meaning. In determining this, courts will look at what a reasonable person would naturally interpret the statement to mean within the context in

which the statement appears. See Romain v. Kallinger, 537 A.2d 284 (N.J. 1988).  The Defendant's allegations against the Plaintiff Dr. I. Ezekwo are clearly outrageous with many racist and discriminatory undertones, trying to malign the Plaintiff Dr. I. Ezekwo and make the Plaintiff Dr. I. Ezekwo seem marginalized when in fact it is the Defendant that is the evil-doer.

739.        As a direct and proximate result of the Defendant's Defamation of the Plaintiff, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of THREE BILLION US DOLLARS and additional damages to be determined at trial.

740.                         **Count XXIV**
741.        **Violation of Fourth Amendment and Breakdown of Nature of Society**

742.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

743.        The Fourth Amendment of the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

744.        The Defendant violated the Fourth Amendment in its harassment of the Plaintiff Dr. I. Ezekwo.  Thus the Defendant cannot be allowed to steal the Plaintiff Dr. I. Ezekwo's property, as this action would amount to an unlawful search and seizure under the color of law in violation of the Fourth Amendment.

745.        "it is important to remember that police conduct is not often subjected to judicial scrutiny. Day by day mischief may be done and precedents built up in practice long before the judiciary has an opportunity to intervene. It is for this reason — the dangerous tendency of allowing encroachments on the rights of privacy — that this Court in the Boyd case gave to the Fourth Amendment its wide protective scope."

746.        "Such constitutional limitations arise from grievances, real or fancied, which their makers have suffered, and should go pari passu with the supposed evil. They withstand the winds of logic by the depth and toughness of their roots in the past. Nor should we forget that what seems fair enough against a squalid huckster of bad liquor may take on a very different face, if used by a government determined to suppress political opposition under the guise of sedition." United States v. Kirschenblatt, 16 F.2d 202, 203."

747.        "Address, Harvard Law School Association, June 21, 1920, Some Observations on Legal Education and Democratic Progress, p. 23: "We cannot afford to ignore the indications that, perhaps to an extent unparalleled in our history, the essentials of liberty are being disregarded. Very recently information has been laid by responsible citizens at the bar of public opinion of violations of personal rights which savor of the worst practices of tyranny.""

748.        "For a contemporaneous judicial account of searches and seizures in violation of
the Fourth Amendment in connection with the Communist raids of January 2, 1920, see
Judge George W. Anderson's opinion in Colyer v. Skeffington, 265 F. 17."

749.        These statements from the above cited case show how the right to be protected in
one's home is the cornerstone of a democratic society, it is fundamentally the basis on
which American Society was created along with all its other protected rights. An attack
on this fundamental right is an attack on the nature of this society itself and a reversion to
a tyranny that the American society was created to counteract and defeat.  The Defendant
has thus sought in hate crime and malice to corruptly take away these rights from the
Plaintiff, the Defendant seeks to create sensationalism and public deceit to corruptly hurt
an innocent individual who the Defendant views as its opponent.  The actions of the
Defendant are diabolic and anti-social, the Defendant is part of a terrorist cadre that seeks
to impose its dystopian vision on the Plaintiff and on the society at large.  The Defendant
is thus a great danger and menace that must be stopped.  The Plaintiff Dr. I. Ezekwo must
be fully compensated and awarded justice.  The Defendant and its kind must be deterred.

750.        As a direct and proximate result of the Defendant's Violation of Fourth
Amendment and socially deleterious actions, Plaintiff has sustained injuries and damages
such as loss of income, public humiliation, threats to security, loss of prestige in the
community, emotional distress, threats to personal safety, irreparable harm, loss of ability
to carry out business, shame, loss of revenue, property damage, lack of security,
protracted legal problems, financial loss, permanent damage to her reputation and good
standing amongst her peers, and much more.  These injuries and damages are in the
amount of THREE BILLION US DOLLARS and additional damages to be determined at
trial.

751.                        **Count XXV**
752.        **Theft Crime, Robbery, Embezzlement and Larceny.**
753.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth
herein.
754.        As a direct and proximate result of the Defendant's Theft Crime, Robbery,
Embezzlement and Larceny, Plaintiff has sustained injuries and damages such as loss of
income, public humiliation, threats to security, loss of prestige in the community,
emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out
business, shame, loss of revenue, property damage, lack of security, protracted legal
problems, financial loss, permanent damage to her reputation and good standing amongst
her peers, and much more.   These injuries and damages are in the amount of THREE
BILLION US DOLLARS and additional damages to be determined at trial.

755.                        **Count XXVI**
756.        **DISCRIMINATION BASED ON DISABILITY ,RACE,
RELIGION, GENDER,  AGE AND NATIONAL ORIGIN**
757.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth
herein.
758.        Plaintiff has suffered discrimination on the account of her disability, since
Defendant like a wild animal saw her physical difficulties as an opportunity to strike her
and harm her.  Of course, the racism, misogyny and hate of the Defendant is more than

obvious as it cannot explain why the disproportionate use of New York's resources is going to the harassment of a retired woman who lives quietly in her home.  The terrorist acts of the Defendant are highly diabolic.  Plaintiff was being harassed over a religious holiday by Defendant, violating her religious freedoms and freedom of expression.  The Defendant is part of a RICO conspiring terrorist group endlessly fighting the Plaintiff as they view her as individual who is stopping their aims of hijacking government resources for hate and criminality.  Thus the harassment and evil trailing of the Plaintiff by the Defendant and its criminal allies has been unabated and unending.

759.      As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount  THREE BILLION US DOLLARS and additional damages to be determined at trial.

**760.      <u>Count XXVII</u>**
**761.      <u>VIOLATION  OF REHABILITATION ACT OF 1973 AND AMERICANS WITH DISABILTIES ACT OF 1990</u>**

762.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

763.      The Rehabilitation Act of 1973 is a federal law prohibiting discrimination against people with disabilities by federal agencies, federal contractors, or programs receiving federal funds and also all state agencies.  Also referred to as the Rehab Act.  It is generally considered a precursor to the Americans with Disabilities Act (ADA), which passed in 1990. The ADA is broader than the Rehab Act, however, in that it applies to disabilities in public services, places of public accommodation—such as restaurants, hotels, and theaters—and also requires employers to make reasonable accommodations to allow employees with disabilities to do their jobs. While narrower in its application, the standards in the Rehab Act are generally the same as those in the ADA. Both protect individuals with physical or mental disabilities that substantially limits one or more major life activities who cannot perform the essential job-related requirements without reasonable accommodation.

764.      Section 503 of the Rehabilitation Act of 1973 is a law that prohibits federal contractors and subcontractors from discriminating in employment against individuals with disabilities and requires employers take affirmative action to recruit, hire, promote, and retain these individuals.

765.      Another aspect of the disability act is for agencies to make accommodations and adjustments for individual who are in acute state of illness and incapacitated so that they cannot participate in activities required of them until they recover. That is the case of Plaintiff Dr.I. Ezekwo where the Defendant is continually harassing the Plaintiff and seeking to disrupt her at all times.  The Defendant is even using the rumor mill to spread gossip and lies about the Plaintiff in order to further harassment of Plaintiff.  The Defendant used the Plaintiff Dr. I. Ezekwo's time of illness as an opportunity to attack the Plaintiff more violently, this is the greatest outrage and the most disgusting act that is

against all civil rights, the Rehabilitation Act of 1973 and the Americans with Disabilities Act (ADA).

766.      As a direct and proximate result of Defendant's VIOLATION  OF REHABILITATION ACT OF 1973 AND AMERICANS WITH DISABILTIES ACT OF 1990, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   As a direct and proximate result of Defendant's unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights,  Plaintiff has suffered great loss. These injuries and damages are  in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

**767.**          **Count  XXVIII**
**768.**      **VIOLATION OF CIVIL RIGHTS ACT OF 1964**

769.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

770.      Civil Rights Act of 1964

771.      "Civil Rights Act of 1964 is a federal law that prohibits discrimination on the basis of race, color, national origin, sex (including pregnancy), and religion in employment, education, and access to public facilities and public accommodations, such as restaurants and hotels. The employment provisions of the law are often referred to as "Title VII," based on their location in the U.S. Code."

772.      Defendant deprived the Plaintiff of Plaintiff's constitutional rights by its harmful acts, by harassing Plaintiff .The Defendant is enacting hate crime and hate fueled terrorist acts.

773.      As a direct and proximate result of the Defendant's violation of the Civil Rights Act of 1964 , the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.  As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights, Plaintiff has suffered great loss. These injuries and damages are  in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

**774.**          **Count XXIX**
**775.**      **VIOLATION OF 42 U.S. CODE § 1985 - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

776.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

777.      42 U.S. CODE § 1985

778.      "(1)Preventing officer from performing duties

92

779.        If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;"

780.        "(2)Obstructing justice; intimidating party, witness, or juror

781.        If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

782.        "(3)Depriving persons of rights or privileges

783.        If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

784.        Defendant deprived the Plaintiff of her constitutional rights by obstructing justice and harassing the Plaintiff, the Defendant also illegally intervened in a legal process(by taking ownership of Plaintiff's property) to aid various criminal acts against the Plaintiff. As a direct and proximate result  of the Defendant's violation of 42 U.S. Code § 1985, the

Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more. These injuries and damages are in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

785.        As a direct and proximate result of Defendant's unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights (and violation of 42 U.S. Code § 1985),   , obstructing justice and defaming Plaintiff, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.   These injuries and damages are in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

**786.                          Count XXX**

**787.        VIOLATION OF 42 U.S. CODE § 1986 - ACTION FOR NEGLECT TO PREVENT**

788.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

789.        42 U.S. CODE § 1986

790.        "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefore, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased."

791.        Defendant lied and neglected to acknowledge that the Plaintiff  was  harmed by Defendant and its criminal allies in RICO conspiracy , Defendant joined in the RICO conspiracy with all prior named co-conspirators.  Defendant neglected to remedy the situation thereby causing irreparable harm to the Plaintiff.  As a direct and proximate result of the Defendant's violation of 42 U.S. Code § 1986, the Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.  These injuries and damages are in

the amount of  THREE BILLION US DOLLARS and additional damages to be
determined at trial.

792.        As a direct and proximate result of Defendant's unlawful  actions,  and violation
of Plaintiff Dr. Ezekwo's  constitutional rights(and violation of 42 U.S. Code § 1986)
and defaming Plaintiff  based on false testimony of Defendant, Plaintiff has sustained
injuries and damages such as loss of income, public humiliation, threats to security, loss
of prestige in the community, emotional distress, threats to personal safety, irreparable
harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack
of security, protracted legal problems, financial loss, permanent damage to her reputation
and good standing amongst her peers, and much more.  These injuries and damages are in
the amount of  THREE BILLION US DOLLARS and additional damages to be
determined at trial.

**793.**                    **Count XXXI**
**794.        VIOLATION OF 42 U.S. CODE § 1983 - CIVIL ACTION FOR**
**DEPRIVATION OF RIGHTS**

795.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth
herein.

796.        42 U.S. CODE § 1983

797.        "Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction thereof
to the deprivation of any rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress,"

798.

799.        Defendant deprived the Plaintiff of Plaintiff's constitutional rights by conspiring
in a RICO conspiracy, with various criminal actors to defame and harm Plaintiff for
corrupt political purposes and corrupt financial purposes.  The Defendant acted under the
color of law in depriving the Plaintiff of her constitutional rights.  As a direct and
proximate effect of the Defendants' violation of 42 U.S. Code § 1983, Plaintiff has
sustained injuries and damages such as loss of income, public humiliation, threats to
security, loss of prestige in the community, emotional distress, threats to personal safety,
irreparable harm, loss of ability to carry out business, shame, loss of revenue, property
damage, lack of security, protracted legal problems, financial loss, permanent damage to
her reputation and good standing amongst her peers, and much more.   These injuries and
damages are in the amount of  THREE BILLION US DOLLARS and additional damages
to be determined at trial.

800.        Plaintiff has lost revenue and opportunities due to actions of the Defendant.  Also
the theft of Plaintiff's property served to create rumors that damaged the Plaintiff's
reputation making Plaintiff's business dealings very difficult.

801.        As a direct and proximate result of Defendant's unlawful  actions,  and violation
of Plaintiff Dr. Ezekwo's  constitutional rights(and violation of 42 U.S. Code § 1983);
Plaintiff has sustained injuries and damages such as loss of income, public humiliation,
threats to security, loss of prestige in the community, emotional distress, threats to
personal safety, irreparable harm, loss of ability to carry out business, shame, loss of

revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.  These injuries and damages are in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

802.                              **Count XXXII**

803.         **VIOLATION OF 42 U.SC. 1983 AND FEDERAL STATUTORY RIGHTS AND VIOLATIONS OF THE 4TH , 5TH, 6TH, 7TH, 8TH, 14ᵀᴴ  AMENDMENTS OF THE UNITED STATES CONSTITUTION AND MALICIOUS  ABUSE OF PROCESS AND MALICIOUS PROSECUTION AND MALICIOUS DENIAL OF DUE PROCESS RIGHTS.**

804.         Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

805.         Defendant has deprived Plaintiff of her federal, constitutional and statutory rights by failing and refusing to stop its criminal behaviors against the Plaintiff.  The Defendant is involved in a RICO conspiracy in which it has continued to harass the Plaintiff. Defendant has stolen the Plaintiff's property in abuse of process and malicious prosecution.  Defendant has not stopped its violent RICO vendetta against the Plaintiff. Defendant acted under the color of law when Defendant deprived Plaintiff of federal rights, business interests and otherwise discriminated against Plaintiff based on Plaintiff's disability  and race, gender and national origin and religious beliefs.

806.         As a direct and proximate result of Defendant's violation of  42 U.S.C. 1983 and other state and federal statutes, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.  These injuries and damages are in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

807.          From the above pleadings it is obvious that Plaintiff has been harmed by Defendants. Plaintiff  is hereby  presenting  for the court's consideration for just compensation of loss incurred and loss that Plaintiff will continue to incur.  These injuries and damages are in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

808.        <u>Count  XXXIII</u>

809.        <u>VIOLATION OF NEW YORK  AND FEDERAL STATUTE</u>
<u>REAL ESTATE LAWS AND CONSTRUCTION REGULATIONS,</u>
<u>VIOLATION OF THE 4th AND 5th AMENDMENTS  AND</u>
<u>FORCEFULLY TRYING TO SHUT DOWN PLAINTIFF'S</u>
<u>PROPERTY, DEFENDANTS' FURTHER VIOLATIONS AND</u>
<u>REFUSING TO GRANT THE PLAINTIFF THE RIGHTS GRANTED</u>
<u>OTHERS AND DISCRIMINATING AGAINST THE PLAINTIFF</u>
<u>AND REFUSING TO PROVIDE HER SAFETY AND  THE</u>
<u>DEFENDANTS REFUSED TO REMOVE THEIR FALSE</u>
<u>INFORMATION AND FALSE EVIDENCE</u>

810.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth therein.

811.        The failure of the Defendant to provide Plaintiff  true evidence(of reasons for agreement change etc) violates provisions of the federal and state statutes and regulations, including without limitation, the right to be free from unlawful seizure of Plaintiff's home by Defendant who also violated Plaintiff's 4th and 5th amendment rights and prevented Plaintiff from fully participating  in business and  put her home in suspended existence.

812.        As a direct and proximate result of Defendant's unlawful discrimination and violations, Plaintiff has sustained injuries and damages such as loss of income, public humiliation, threats to security, loss of prestige in the community, emotional distress, threats to personal safety, irreparable harm, loss of ability to carry out business, shame, loss of revenue, property damage, lack of security, protracted legal problems, financial loss, permanent damage to her reputation and good standing amongst her peers, and much more.  These injuries and damages are in the amount of  THREE BILLION US DOLLARS and additional damages to be determined at trial.

813.        <u>Count XXXIV</u>

814.        <u>VIOLATION OF FOURTEENTH AMENDMENT AND DUE</u>
<u>PROCESS RIGHTS</u>

815.        Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

816.         "The fourteenth amendment prohibits the deprivation of liberty or property without due process of law. A due process claim is cognizable only if there is a recognized liberty or property interest at stake. Board of Regents of California v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)."

817.        As shown by this cited case, the Plaintiff Dr. I. Ezekwo has had her due process rights violated in violation of her constitutional rights.  The Plaintiff's liberty and property interest were her  home property, reputation and freedom to conduct business. The Defendant should realize that out of hatred and bigotry its enemies cannot become the government's enemies so that the Defendant can further its corrupt interests.

818.        As a direct and proximate result of Defendant's unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's   fourteenth amendment and  due process rights Plaintiff has

sustained injuries and damages such as loss of income, public humiliation, threats to
security, loss of prestige in the community, emotional distress, threats to personal safety,
irreparable harm, loss of ability to carry out business, shame, loss of revenue, property
damage, lack of security, protracted legal problems, financial loss, permanent damage to
her reputation and good standing amongst her peers, and much more.   These injuries and
damages are in the amount of  THREE BILLION US DOLLARS and additional damages
to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant
providing the following relief:

(a) Compensatory damages in whatever amount in excess of  **THREE
BILLION DOLLARS,**  exclusive of costs, and interest, that Plaintiff is
found to be entitled.

(b) Punitive / exemplary damages against Defendant in whatever amount
exclusive of costs and interest that Plaintiff is found to be entitled

(c) An order placing Plaintiff in the position that she would have been in had
there been no violation of her rights;  restoring her professional  ownership
and title to her property   and removing all false information that
Defendant and its coconspirators placed on Plaintiff's record forthwith
until the case is concluded  and allowing Plaintiff  the ability to use her
home without Defendant and its coconspirators monitoring her and forcing
her to relinquish her property rights  and not being harassed or sued by the
Defendant and its coconspirators.

(d) An order enjoining/ restraining Defendant from further acts of
discrimination or retaliation.

(e) Compelling Defendant and its coconspirators to vacate and remove all the
false information they have on their database  and  with  the court and
allow the hearing and evidence from Plaintiff . Plaintiff's name and
reputation to be restored. Defendant to be found guilty of this falsehood
and held accountable.

(f) An award of interest, costs and reasonable attorney's fees.

(g) Any and all remedies provided pursuant to Federal and state statute and
regulations on Plaintiff's  property, profession  and ADA statues.

(h) Take other appropriate nondiscriminatory measures to overcome the above discrimination and lawlessness of the Defendant and its coconspirators.

(i) For declaration that Defendant's actions, policies and practices as stated herein are unlawful and Immediate cease and desist on all violating actions  by Defendant.

(j) Immediate reprimand  and prosecution of involved members of the Defendant's party.

(k) For immediate order to prohibit Appraisers  from going into the said property  and furthering their RICO conspiracy and creating public humiliation and defamation  issues for Plaintiff and defaming  Plaintiff and thus destroying Plaintiff's  place of business.

(l) Finally, in full opposition of the Appraisers and Defendant, Plaintiff  asks that the said appraisals for recall of mortgage  be indefinitely cancelled and the attendant law suit be concluded in federal court and justice served. It is also important that under whistleblowers  law, Plaintiff  cannot be covertly harassed by  Defendant  employees and appraisers   and intimidated by Defendant  under the color of law while Plaintiff's petition is being adjudicated  nor  will the Defendant and co-conspirators in any way try to create false impressions and distractions from the serious life threatening matters Plaintiff complained about as  that will constitute obvious obstruction of justice and continuation of hate crimes already complained about.

(m) Defendant to cease from all  appraisals inspection of the Plaintiff's property.

(n) Defendant to cease and desist from the extortion of the Plaintiff and to remove their false financial claims against the Plaintiff's property and cease any threatened foreclosure actions when  Plaintiff is willing and able to pay her monthly mortgage and has continuously stated the same to Defendant but Defendant refused to take payment and just was forcing Plaintiff to keep filling out modification over and over again for over a year.

(o) For Specialized Loan Servicing(Defendant) to stop all foreclosure proceedings.

(p) For Specialized Loan Servicing (Defendant) to return the Plaintiff's property to Plaintiff and for Defendant to relinquish all claims to Plaintiff's property.

(q) For Specialized Loan Servicing(Defendant) to stop all extortion of the Plaintiff.

(r) For Specialized Loan Servicing(Defendant) to stop all harassment of the Plaintiff.

(s) For Specialized Loan Servicing(Defendant) to allow Plaintiff to have mortgage.

(t) Defendant and its coconspirators to be halted in all their negative actions and conspiracies against the Plaintiff.

(u) For compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial.

(v) For Defendant to be officially sanctioned.

(w) For punitive damages in an amount to be proven at trial.

(x) For liquidated damages

(y) Damages of at least  THREE  BILLION DOLLARS

(z) For an order enjoining Defendants from engaging in the unlawful acts complained of herein.

And such other and further relief as this court deems proper.

I declare that the foregoing is true and correct

Respectfully Submitted;                    Dated January 16, 2023

"/s/ *IfeomaEzekwo*"

Ifeoma Ezekwo, Plaintiff.
400 Tenafly Road #1002,
Tenafly, NJ 07670
(201) 674 9548    avitacares@yahoo.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

Dated January  16th 2023                    Respectfully submitted,

"/s/ *IfeomaEzekwo*"

BY: IFEOMA EZEKWO

400 Tenafly Road #1002, Tenafly, NJ 07670

(201) 674 9548      avitacares@yahoo.com

**Case List**

1. Vaca v. Sipes 386 U.S. 171 (1967)

2. Ford Motor Co. v. Huffman, 345 U. S. 330(1953)

3. Syres v. Oil Workers International Union, 350 U. S. 892(1958)

4. Humphrey v. Moore, 375 U. S. 335.(1964)

5. The Railway Labor Act

6. Steele v. Louisville & N. R. Co., 323 U. S. 192(1944)

7. Tunstall v. Brotherhood of Locomotive Firemen, 323 U. S. 210(1944)

8. N. L. R. A. § 8 (b)

9. Miranda Fuel Co., 140 N. L. R. B. 181 (1962)

10. N. L. R. A. § 7

11. 140 N. L. R. B., at 185.

12. The L. M. R. A.

13. N. L. R. A. § 1, as amended, 61 Stat. 136, 29 U. S. C. § 151.

14. J. I. Case Co. v. Labor Board, 321 U. S. 332(1944)

15. 323 U. S., at 198-199

16. United Electrical Contractors Assn. v. Ordman, 366 F. 2d 776, cert. denied, 385 U. S. 1026.

17. Richardson v. Texas & N. O. R. Co., 242 F. 2d 230, 235-236 (C. A. 5th Cir.)

18. Fair Debt Collection Practices Act

19. Kaymark v Bank of America 783 F.3d 168 (2015)

20. 15 U.S.C. § 1692(e).

21. Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir.2013)

22. Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.2008),

23. McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240 (3d Cir. 2014)

24. Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir.2000)

25. Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 610 (11th Cir. 2014)

26. Brown v. Card Serv. Ctr., 464 F.3d 450, 454-55 (3d Cir.2006)

27. Currier v. First Resolution Inv. Corp., 762 F.3d 529, 535 (6th Cir.2014)

28. James v. Wadas, 724 F.3d 1312, 1316 (10th Cir.2013)

29. Heintz v. Jenkins, 514 U.S. 291 (1995) 115 S. Ct. 1489

30. Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1032 (9th Cir. 2010)

31. Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir.2007)

32. Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000)

33. Glover v. F.D.I.C., 698 F.3d 139, 152 n. 8 (3d Cir.2012)

34. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d
    519 (2010)

35. 15 U.S.C. § 1692a(2)

36. Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364 (3d Cir. 2011)

37. 15 U.S.C. § 1692f

38. Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir.2013)

39. Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir.2006).

40. Piper, 396 F.3d at 236

41. Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA")

42. Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

43. FCEUA, 73 P.S. § 2270.5(a)

44. 73 P.S. § 201-2(4)(v)

45. Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 854 A.2d 425, 438 (2004)

46. Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir.2004).

47. Agliori v. Metro. Life Ins. Co., 879 A.2d 315, 321 (Pa.Super.2005)

48. Schwarzwaelder v. Fox, 895 A.2d 614, 619 (Pa.Super.2006)

49. Benner v. Bank of America, N.A., 917 F.Supp.2d 338, 360 (E.D.Pa.2013)

50. 73 P.S. § 201-9.2

51. Brock v. Thomas, 782 F.Supp.2d 133, 143-44 (E.D.Pa.2011)

52. Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa.Super.2004)

53. Allis-Chalmers Corp v Lueck 471 U.S. 202 (1985)

54. Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 13-16, 235 N. W. 413, 414-415 (1931)

55. Alexander v. Gardner-Denver Co., 415 U. S. 36 (1974),

56. Kranzush v. Badger State Mutual Casualty Co., 103 Wis. 2d 56, 64, 307 N. W. 2d 256, 261 (1981)

57. Restatement (Second) of Contracts § 205, Comment a, p. 100 (1981)

58. Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 691, 271 N. W. 2d 368, 376 (1978)

59. Wigod v. Wells Fargo 673 F.3d 547 (2012)

60. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

61. Fed.R.Civ.P. 8(a)(2).

62. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

63. Federal Rule 12(b)(6)

64. Association Benefit Services, Inc. v. Caremark RX, Inc., 493 F.3d 841, 849 (7th Cir.2007)

65. MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC, 364 Ill.App.3d 6, 300 Ill.Dec. 601, 845 N.E.2d 22, 30 (2006)

66. Schrager v. North Community Bank, 328 Ill.App.3d 696, 262 Ill.Dec. 916, 767 N.E.2d 376, 386 (2002)

67. Miller v. William Chevrolet/GEO, Inc., 326 Ill. App.3d 642, 260 Ill.Dec. 735, 762 N.E.2d 1, 13-14 (2001)

68. Mitchell v. Norman James Construction Co., 291 Ill.App.3d 927, 225 Ill. Dec. 881, 684 N.E.2d 872, 879 (1997)

69. Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd., 376 Ill.App.3d 1006, 315 Ill.Dec. 218, 876 N.E.2d 218, 228 (2007)

70. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA)

71. 815 ILCS 505/2. The Act is "liberally construed to effectuate its purpose." Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002).

72. Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames Mortg. Loan Trust Series 2003-1, 787 F.Supp.2d 747, 751 (N.D.Ill.2011)

73. Saunders v. Michigan Ave. Nat'l Bank, 278 Ill.App.3d 307, 214 Ill.Dec. 1036, 662 N.E.2d 602, 608 (1996)

74. Siegel v. Shell Oil Co., 480 F.Supp.2d 1034, 1044 n. 5 (N.D.Ill.2007), aff'd, 612 F.3d 932

75. The Consumer Fraud Act

76. In re Bank of America Home Affordable Modification (HAMP) Contract Litigation, No. 10-md-02193-RWZ, 2011 WL 2637222, at *5-6 (D.Mass. July 6, 2011)

77. Geier v. American Honda Motor Co., 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)

78. Bates v. Dow Agrosciences LLC, 544 U.S. 431, 448, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)

79. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)

80. Bausch v. Stryker Corp., 630 F.3d 546, 556 (7th Cir.2010)

81. The Food, Drug, and Cosmetic Act

82. Dumas v. Infinity Broadcasting Corp., 416 F.3d 671, 679 n. 9 (7th Cir.2005), quoting Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 237 Ill.Dec. 100, 708 N.E.2d 1140, 1145 (1999).

83. 3 Williston on Contracts, § 7:27

84. Academy Chicago Publishers v. Cheever, 144 Ill.2d 24, 161 Ill.Dec. 335, 578 N.E.2d 981, 983 (1991)

85. NJ Rev Stat § 56:8-2 (2015)

86. The Dodd-Frank Act

87. Yvanova v. New Century Mortgage 62 Cal.4th 919 (2016)199 Cal.Rptr.3d 66 365 P.3d 845

88. Barrionuevo v. Chase Bank, N.A. (N.D.Cal. 2012) 885 F.Supp.2d 964, 972

89. Herrera v. Deutsche Bank National Trust Co. (2011) 196 Cal.App.4th 1366, 1378 [127 Cal.Rptr.3d 362]

90. Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title (2013) 63 Duke L.J. 637, 640

91. Whitman & Milner, Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note (2013) 66 Ark. L.Rev. 21, 23, fn. omitted.

92. Chavez v. Indymac Mortgage Services (2013) 219 Cal.App.4th 1052, 1062 [162 Cal.Rptr.3d 382]

93. Munger v. Moore (1970) 11 Cal.App.3d 1, 7 [89 Cal.Rptr. 323]

94. Ohlendorf v. American Home Mortgage Servicing (E.D.Cal. 2010) 279 F.R.D. 575, 582-583

95. Glaski v. Bank of America, 218 Cal.App.4th 1079 (2013) 160 Cal. Rptr. 3d 449

96. Rest.2d Contracts, § 7, com. a, p. 20

97. Little v. CFS Service Corp. (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923]

98. Colby v. Title Ins. and Trust Co. (1911) 160 Cal. 632, 644 [117 P. 913]

99. First Nat. Bank of L. A. v. Maxwell (1899) 123 Cal. 360, 371 [55 P. 980]

100.    Rest.2d Contracts, § 7, com. a, p. 20

101.    Wilson v. HSBC Mortgage Services, Inc. (1st Cir. 2014) 744 F.3d 1, 9

102.    Reinagel v. Deutsche Bank National Trust Co. (5th Cir. 2013) 735 F.3d 220

103.    Mruk v. Mortgage Electronic Registration Systems, Inc. (R.I. 2013) 82 A.3d 527, 536

104.       Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158 P.3d 718]

105.       Culhane v. Aurora Loan Services of Nebraska (1st Cir. 2013) 708 F.3d 282

106.       California Homeowner Bill of Rights

107.       Lueras v. BAC Home Loans Servicing, LP (2013) 221 Cal.App.4th 49, 86, fn. 14 [163 Cal.Rptr.3d 804]

108.       Sen. Rules Com., Off. of Sen. Floor Analyses, Conf. Rep. on Sen. Bill No. 900 (2011-2012 Reg. Sess.) as amended June 27, 2012, p. 26

109.       The Securities Act

110.       Reves v Ernst & Young 494 U.S. 56 (1990)

111.       Arthur Young & Co. v. Reves, 856 F. 2d 52 (1988)

112.       490 U. S. 1105 (1989)

113.       United Housing Foundation, Inc. v. Forman, 421 U. S. 837, 849 (1975)

114.       SEC v. W. J. Howey Co., 328 U. S. 293, 299 (1946)

115.       H. R. Rep. No. 85, 73d Cong., 1st Sess., 11 (1933)

116.       Landreth Timber Co. v. Landreth, 471 U. S. 681 (1985)

117.       Tcherepnin v. Knight, 389 U. S. 332, 336 (1967)

118.       Teamsters v. Daniel, 439 U. S. 551, 569-570 (1979)

119.       Employee Retirement Income Security Act of 1974, 88 Stat. 829, 29 U. S. C. § 1001 et seq. (1982 ed.)

120.       Fletcher v Western National 47 A.L.R.3d 286,10 Cal.App.3d 376,89 Cal.Rptr. 78(1970)

121.       Alcorn v. Anbro Engineering, Inc., 2 Cal. 3d 493, 497-498 [86 Cal. Rptr. 88, 468 P.2d 216](1970)

122.       State Rubbish etc. Assn. v. Siliznoff, 38 Cal. 2d 330, 337-339 [240 P.2d 282](1952)

123.       Spackman v. Good, 245 Cal. App. 2d 518, 528-529, 531-534 [54 Cal. Rptr. 78](1966)

124.       Rest.2d Torts, § 46.

125.       Agostini v. Strycula, 231 Cal. App. 2d 804, 808 [42 Cal. Rptr. 314](1965)

126.       Rest. Torts, § 773

127.       Vargas v. Ruggiero, supra, 197 Cal. App. 2d 709(1961)

128.       Bowden v. Spiegel, Inc., 96 Cal. App. 2d 793 [216 P.2d 571](1950)

129.    Emden v. Vitz, 88 [10 Cal. App. 3d 396] Cal.App.2d 313 [198 P.2d 696](1948)

130.    National Life & Acc. Ins. Co. v. Anderson, 187 Okla. 180 [102 P.2d 141](1940)

131.    Continental Cas. Co. v. Garrett, 173 Miss. 676 [161 So. 753](1935)

132.    Prosser, Law of Torts [3d ed. 1964],

133.    Alsteen v. Gehl, 21 Wis.2d 349 [124 N.W.2d 312](1963)

134.    Perati v. Atkinson, 213 Cal. App. 2d 472, 474 [28 Cal. Rptr. 898](1963)

135.    comment j to section 46 of the Restatement Second, of Torts, supra.

136.    Crisci v. Security Ins. Co., 66 Cal. 2d 425, 433 [58 Cal. Rptr. 13, 426 P.2d 173](1967)

137.    Parrott v. Bank of America, 97 Cal. App. 2d 14, 24 [217 P.2d 89, 35 A.L.R.2d 263](1950)

138.    Acadia, California, Ltd. v. Herbert, 54 Cal. 2d 328, 336-337 [5 Cal. Rptr. 686, 353 P.2d 294](1960)

139.    Chelini v. Nieri, 32 Cal. 2d 480, 486-487 [196 P.2d 915](1948)

140.    Haigler v. Donnelly, 18 Cal. 2d 674, 680-681 [117 P.2d 331](1941)

141.    Wetherbee v. United Ins. Co. of America, 265 Cal.App.2d 921 (Cal. Ct. App. 1968) 71 Cal. Rptr. 764

142.    Sharp v. Automobile Club of So. Cal., 225 Cal. App. 2d 648, 653 [37 Cal. Rptr. 585](1964)

143.    Taylor v. Marine Cooks & Stewards Assn., 117 Cal. App. 2d 556, 562-563 [256 P.2d 595](1953)

144.    Guillory v. Godfrey, 134 Cal. App. 2d 628 [286 P.2d 474](1955)

145.    Campbell v. Veith, 121 Cal. App. 2d 729, 732 [264 P.2d 141](1953)

146.    Rest., Torts, § 766 et seq

147.    Harper and James, The Law of Torts [1956], § 9, pp. 666-667;

148.    Magruder, Mental and Emotional Disturbances in the Law of Torts, 49 Harv. L.Rev. 1033, 1051-1063

149.    Prosser, Insult and Outrage, 44 Cal.L.Rev. 40, 47

150.    Annot., 15 A.L.R.2d 108, 158-163

151.    Rest.2d Torts, supra, § 48

152.    Sherman v Field Clinic, 392 N.E.2d 154 (Ill. App. Ct. 1979)

153.    Public Finance Corp. v. Davis (1976), 66 Ill. 2d 85, 360 N.E.2d 765

154.    Bureau of Credit Control v. Scott (1976), 36 Ill. App. 3d 1006, 1007, 345 N.E.2d 37

155.    Ill. Rev. Stat. 1977, ch. 111, pars. 2014, 2017, 2018, 2019, 2020 and 2022, respectively

156.    Ill. Rev. Stat. 1977, ch. 111, par. 2039

157.    Section 16 of Public Act 78-1248 (1974 Ill. Laws 1242-43)

158.    The Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 1-1 et seq.)

159.    Ill. Rev. Stat. 1977, ch. 38, pars. 17-5, 26-1(a)(6)

160.    Ill. Rev. Stat. 1977, ch. 111, par. 2005; see also pars. 2004 and 2006.)

161.    Restatement (Second) of Torts § 874A, comments f and j (1979)

162.    Kelsay v. Motorola, Inc. (1978), 74 Ill. 2d 172, 384 N.E.2d 353

163.    Ill. Rev. Stat. 1977, ch. 111, par. 2037

164.    Section 9 of the Collection Agency Act,

165.    Grimsby v. Samson, 530 P.2d 291 (Wash. 1975)

166.    The Fair Housing Act

167.    United States v. Classic, 313 U. S. 299, 326 (1941),

168.    Adickes v. S. H. Kress & Co., 398 U. S. 144, 150 (1970).

169.    United States v. Price, 383 U. S. 787, 794, n. 7 (1966)

170.    Lugar v. Edmondson Oil Co., Inc.,457 U.S. 922 (1982)

171.    Kamerling v. Massanari 295 F.3d 206, 214 (2d Cir. 2002)

172.    Prairie Band of *1259 Potawatomi Indians 253 F.3d at 1250. (10th Cir. 2001)

173.    Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001)

174.    Tri-State Generation & Transmission Assoc., Inc v. Shoshone River Power, Inc., 874 F.2d 1346, 1354 (10th Cir. 1989)

175.    RJR-MacDonald, at p.341;

176.    Christian Philip v. Rajalingam, 2020 ONSC 1925, at para.33.

177.    Amphenol Canada Corp v. Sundaram, 2020 ONSC 328(Div. Ct.) at paras 37-39

178.    State v. Winter, 706 P. 2d 1228 (Ariz Ct. App. 1985)

179.    Terr v. Maxwell 2 N.M. 250 (1882)

180.    Model Penal Code 223.0-223.9

181.    Le Fanti v. United Statees 259 F.460 (3d Cir 1919)

182.    18Pa Cons. Stat. 3925

183.        State v. Myers, 386 S.W. 3d 786, 794 (Mo. Ct. App. 2012)

184.        Welch v. Commonwealth, 425 S.E. 2d 101, 104-05 (1992)

185.        Morgan v. Commonwealth, 47  S. W. 2d 543 (Ky. 1932)

186.        People v. Brown, 105 Cal. 66 (1894)

187.        State v. Langis 444 P.2d 959 (Or. 1968)

188.        State v. Coombs, 55 Me. 477(1868)

189.        State v. Winter, 706 P.2d 1228 (Ariz Ct. App.1985)

190.        Statute Proscribing Larceny, Theft or Embezzlement of Property of Another, 57 A.L.R. 6th 445

191.        State v. Archie, 123 N.M. 503, 508 (1997)

192.        Wagner v. State, 445 Md. 404 (2015)

193.        State v. Moss 83 N.M. 42 (1971)

194.        A.R.S. 13-1802;

195.        State v. Aro, 937 P.2d 711**, 6-7(Ariz. Ct. App. 1985)

196.        Model Penal Code 223.1

197.        Model Penal Code 233.2

198.        Or. Rev. Stat. Ann 164.075

199.        State v. Oar, 161 Idaho 550, 554 (Ct.App. 2016)

200.        Me. Stat. tit. 17-A, 354

201.        Ex parte Day, 481 So. 2d 1169. 1170-73 (Ala. 1985)

202.        Model Penal Code 222.1

203.        Mo. Rev.Stat 570.023

204.        Mo.Rev Stat 570.025

205.        Ark. Code Ann 5-12-102

206.        Ark. Code Ann. 5-12-103

207.        State v. Morrell, 803 P. 2d 292, 293 (Utah Ct. App. 1990)

208.        People v. Flynn 77 Cal. App. 4th 766, 772(2000)

209.        People v. Estes, 147 Cal. App. 3d 23, 27-28 (Ct. App. 1983)

210.        U.S. Code 1031

211.    The Racketeer Influenced and Corrupt Organizations Act (RICO)

212.    18 U.S.C. 1503

213.    18 U.S.C. 1505

214.    18 U.S.C. 1512

215.    Aguilar, 515 at 599, 115 S. Ct 2357

216.    United States v. Mullins 22 F. 3d 1365, 1370(CA6 1994),

217.    United State v. Ryan 455 F. 2d 728, 734 (CA9 1972),

218.    Pettibone v. United States, 148 U.S. 197 (1893)

219.    United States v. Thomas, 916 F2.d 647(11 Cir 1990).

220.    In United States v. Brand, 775 F.2d 1460(11 Cir. 1985)

221.    Cole v. United States, 329 F.2d 437, 439 (9th Cir.).

222.    United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65L.Ed. 553(1921)

223.    United States v. Griffin, 589. F.2d 200, 204 (5th Cir

224.    18 U.S. Code §35

225.    42 U.S. Code § 3617

226.    42 U.S. Code § 12203

227.    United States v. Navarro, 608 F. 3d 529 (9th Cir 2010)

228.    Frasher v. State, 260 A. 2d 656 (Md. Ct. Spec. App. 1970)

229.    People v. Petznick, 114 Cal. App. 4th 663(2003)

230.    State v. Matson, 921 P. 2d 790 (Kan. 1996)

231.    United States v. Blanco, 754 F. 2d 790 940 (11th Cir. 1985).

232.    Ruffin v. State, 992 So.2d 1165 (Miss. 2008).

233.    State v. Gay, 434 S.E. 2d 840 (N.C. 1993) United States v. Blanco, supra.

234.    NJ Rev Stat 2C:13-5(2013)

235.    Mollen Commission( New York 1994)

236.    Brady v. Maryland, 373 U.S. 83 (1963)

237.    www.ProPublica.org report-The NYPD Files

238.    Russello v. United States, 464 U.S. 16, 26-27, 104 S Ct 296, 302-303 78 L. Ed 2d 17(1983);

110

239.	United States v. Turkette, 452 U.S. 576, 589, 101 S S. Ct 2524, 2532, 69 L. Ed. 2d 246 (1981).

240.	By Sedima, S.P.R.L. v Imrex Co., 473 U.S. 479, 496, 105 S. Ct 3275, 3285, 87 L. Ed 2d 346 (1985),

241.	United States v. Phillips 664 F. 2d 971, 1011(5th Cir. Unit B Dec. 1981)cert. denied, 457 U.S. 1136, 102 S. Ct 1265 73 L. Ed. 2d 1354 (1982)

242.	18 U.S.C.A. 1961(4) (West 1984)

243.	United States v. Delano , 825 F. Supp. 534, 538-39(W.D.N.Y. 1993),aff'd in part, 55 F. 3d 720(2d Cir.1995)

244.	H.J. Inc., v. Northwestern Bell Tel. Co. 492 U.S.  229, 239, 109 S.Ct 2893, 2900, 106 L. Ed. 2d 195 (1989)

245.	Ticor Title Ins. Co. v. Florida, 937 F. 2d 447, 450(9th Cir. 1991)

246.	United States v. Indelicato 865, 865 F. 2d 1370, 1382(2d Cir.), cert denied, 493 U.S. 811, 110 S. Ct. 56, 107 L.Ed. 2d 24 (1989)

247.	United States v. Rastelli 870 F. 2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982, 110 S. Ct. 515, 107 L. Ed. 2d 516 (1989).

248.	United States v. Cauble, 706 F. 2d 1322, 1341-42 (5th Cir. 1983), cert. denied, 465 U.S. 1005, 104 S. Ct. 996, 79 L. Ed. 2d 229 (1984)

249.	United States v Daly, 842 F. 2d 1380, 1389-92 (2d Cir.

250.	Petro-Tech, Inc. v Western Co. of North America, 824 F.2d 1349, 1356 (3d Cir. 1987).

251.	United States v. Local 560 of International Brotherhood of Teamsters, 780 F. 2d 267, 288-89 and n. 25 (3d Cir. 1985).

252.	Restatement (2nd) of Torts, §559.

253.	Restatement (2nd) of Torts, §559, comment e.

254.	Restatement (2nd) of Torts, §558.

255.	See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997).

256.	See Barnes v. Clayton House Motel, 435 S.W.2d 616 (Tex. 1968)

257.	See Jackson v. Longcope, 476 N.E.2d 617 (Mass. 1885).

258.	Romain v. Kallinger, 537 A.2d 284 (N.J. 1988).

259.	Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122 (1st Cir. 1997)

260.	The New York Times Co. v. Sullivan, 376 U.S. 254 (1964)

261.	Kilgore v. Younger, 30 Cal.3d 770 (1982

262.        Weenig v. Wood, 349 N.E.2d 235 (Ind. 1976).

263.        The First Amendment of the U.S. Constitution

264.        Von Kettler et.al. v. Johnson, 57 Ill. 109 (1870).

265.        The People v. Brewer, 128 Ill. 472, 483 (1928).

266.        The U.S. Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)

267.        The Fourth Amendment of the U.S. Constitution

268.        Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)

269.        See v. City of Seattle, 387 U.S. 541 (1967)

270.        Go-Bart Importing Co. v. United States, 282 U. S. 344(1931)

271.        Amos v. United States, 255 U. S. 313(1921)

272.        Silverthorne Lumber Co. v. United States, 251 U. S. 385(1920)

273.        United States v. Morton Salt Co., 338 U. S. 632(1950)

274.        Oklahoma Press Pub. Co. v. Walling, 327 U. S. 186(1946)

275.        United States v. Bausch & Lomb Optical Co., 321 U. S. 707(1944)

276.        Hale v. Henkel, 201 U. S. 43(1906)

277.        1 Davis, Administrative Law §§ 3.05-3.06 (1958)

278.        Oklahoma Press Pub. Co. v. Walling, 327 U. S. 186, 202(1946)

279.        Camara v Municipal Court of the City and County of San Francisco, 387 U.S. 523 (1967)

280.        Wolf v. Colorado, 338 U. S. 25, 27(1949)

281.        Ker v. California, 374 U. S. 23, 30(1963)

282.        Stoner v. California, 376 U. S. 483(1969)

283.        United States v. Jeffers, 342 U. S. 48(1951)

284.        McDonald v. United States, 335 U. S. 451(1948)

285.        Agnello v. United States, 269 U. S. 20(1925)

286.        Stoner v. California, 376 U. S. 483(1969)

287.        Chapman v. United States, 365 U. S. 610(1961)

288.        McDonald v. United States, 335 U. S. 451(1948)

289.        District of Columbia v. Little, 178 F.2d 13 (1949)

290.        District of Columbia v. Little,  339 U.S. 1 (1950)

291.      Nueslein v. District of Columbia, (1940) 73 App.D.C. 85, 115 F.2d 690.

292.      Agnello v. United States,(1925) 269 U.S. 20, 32, 46 S.Ct. 4, 70 L. Ed. 145

293.      Entick v. Carrington, 19 Howell's State Trials 1029

294.      Commentaries on the Constitution of the United States, Sec. 1902 by Joseph Story

295.      Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746(1886)

296.      Harris v. United States, 10 Cir., 151 F.2d 837, 839, 169 A.L.R. 1413, affirmed 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399(1945)

297.      Johnson v United States, 333 U.S. 10 (1948)

298.      Gouled v. United States, 255 U.S. 303, 304 (1921)

299.      Weeks v. United States, 232 U.S. 383(1914)

300.      Silverthorne Lumber Co. v. United States, 251 U.S. 385(1920)

301.      Entick v. Carrington, 19 Howard's State Trials, 1030, 1066(1765)

302.      Temperani v. United States, 299 Fed. 365

303.      United States v. Rembert, 284 Fed. 996, 1000

304.      Connelly v. United States, 275 Fed. 509

305.      McClurg v. Brenton, 123 Ia. 368, 372

306.      People v. Margolis, 220 Mich. 431

307.      Childers v. Commonwealth, 198 Ky. 848

308.      State v. Warfield, 184 Wis. 56.

309.      Warrick v Superior Court29 Cal.Rptr.3d 2 (2005)35 Cal.4th 1011 112 P.3d 2

310.      City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 84, 260 Cal.Rptr. 520, 776 P.2d 222

311.      Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305

312.      § 1043, subd. (b)(3)

313.      People v. Jackson (1996) 13 Cal.4th 1164, 1220, 56 Cal.Rptr.2d 49, 920 P.2d 1254

314.      People v. Memro (1985) 38 Cal.3d 658, 679, fn. 19, 214 Cal.Rptr. 832, 700 P.2d 446

315.      People v. Gill (1997) 60 Cal.App.4th 743, 750, 70 Cal.Rptr.2d 369

316.      The Eighth Amendment of U.S. Constitution

317.      42 U.S. Code § 1983

318.     42 U.S. Code § 1985

319.     42 U.S. Code § 1986

320.     Hines v. Gomez, 108 F.3d 265 (1997)

321.     The First Amendment of U.S. Constitution

322.     Perry v. Sindermann, 408 U.S. 593, 597-98, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972)

323.     Barnett v. Centoni, 31 F.3d 813 (1994)

324.     Fed.R.Civ.P. 56(c).

325.     Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir.1990).

326.     T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987)

327.     Thompson v. Enomoto, No. C-79-1630-SAW (N.D.Cal. Oct. 23, 1980)

328.     Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985)

329.     Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989)

330.     Buckey v. Los Angeles, 957 F.2d 652, 654 (9th Cir.1992)

331.     Galbraith v. County of Santa Clara, 307 F.3d 1119 (2002)

332.     Branch I, 937 F.2d at 1387-88

333.     Butler v. Elle, 281 F.3d 1014, 1024-25 (9th Cir.2002)

334.     Liston v. County of Riverside, 120 F.3d 965, 972-975 (9th Cir.1997)

335.     Hervey v. Estes, 65 F.3d 784, 790 (9th Cir.1995)

336.     Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir.1998)

337.     The Fourth Amendment of U.S. Constitution

338.     Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988)

339.     Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986)

340.     Buckley v. Fitzsimmons, 509 U.S. 259 (1993)

341.     Tower v. Glover, 467 U. S. 914, 922-923 (1984).

342.     Forrester v. White, 484 U. S. 219, 224 (1988)."

343.     Imbler v. Pachtman, 424 U. S. 409 (1976)

344.     Hampton v. Chicago, 484 F. 2d 602, 608 (CA7 1973), cert. denied, 415 U. S. 917 (1974)

345.     Burns v. Reed, 500 U. S. 478, 495 (1991)

346.      Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 489 (1909)

347.      Viosca v. Landfried, 140 La. 610, 615, 73 So. 698, 700 (1916)

348.      Youmans v. Smith, 153 N. Y. 214, 220-223, 47 N. E. 265, 267-268 (1897)

349.      G. Bower, Law of Actionable Defamation 103, n. h, 104-105 (1908)

350.      Board of Regents of California v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)

351.      Owens v. Rush, 654 F.2d 1370 (10th Cir.1981)

352.      NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)

353.      United Transportation Union v. Michigan Bar, 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971)

354.      Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)

355.      Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984)

356.      Williams v Williams, 23 N.Y.2d 592, 596

357.      Dean v Kochendorfer, 237 N.Y. 384, 390; Miller v Stern, 262 App Div 5, 8

358.      Advance Music Corp. v American Tobacco Co., 296 N.Y. 79

359.      American Guild of Musical Artists v Petrillo, 286 N.Y. 226

360.      Opera on Tour v Weber, 285 N.Y. 348, cert den 314 US 615)

361.      Burns Jackson Miller Summit & Spitzer v Lindner, 59 N.Y.2d 314, 332;

362.      ATI, Inc. v Ruder & Finn, 42 N.Y.2d 454, 458

363.      Cook v. Sheldon 41 F.3d 73 (1994)

364.      Jeffries v. Harleston, 21 F.3d 1238, 1248 (2d Cir.), vacated on other grounds and remanded, ___ U.S. ___, 115 S.Ct. 502, ___ L.Ed.2d ___ (1994)

365.      Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir.1993)

366.      Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991),

367.      Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 39 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

368.      Martin v. City of Albany, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306-07 (1977)

369.      Carl v. Ayers, 53 N.Y. 14, 17 (1873)

370.      Loeb v. Teitelbaum, 77 A.D.2d 92, 100-01, 432 N.Y.S.2d 487, 493-94 (1980)

371.    Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 444-45, 377 N.E.2d 975, 976-77 (1978)

372.    Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir.1992)

373.    Magnotti v. Kuntz, 918 F.2d 364, 367-68 (2d Cir.1990)

374.    Wilson v. Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985)

375.    Curiano v. Suozzi, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984);

376.    Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278, 282 (1975)

377.    Mormon v. Baran, 35 N.Y.S.2d 906, 909 (Sup.Ct.1942)

378.    Torres v. Superintendent of Police, 893 F.2d 404, 410 (1st Cir.1990)

379.    Williams v. Williams, 23 N.Y.2d 592 (1969)

380.    Matter of Meyer, 209 N.Y. 386

381.    Holy Trinity Church v. United States, 143 U. S. 457

382.    Booth v. Curtis Pub. Co., 15 A D 2d 343, affd. 11 N Y 2d 907

383.    Crawford, The Construction of Statutes, § 177 [1940]

384.    Rosenblatt v. Baer, 383 U. S. 75, 86.

385.    Monell v New York City Dept. of Social Services, 436 US 658 (1978)

386.    Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 279 (1977)

387.    Segurola v. United States, 275 U.S. 106 (1927).

388.    10 Adams, Works 247

389.    United States v. Lefkowitz, 285 U.S. 452 (1932)

390.    United States v. Kirschenblatt, 16 F.2d 202 (2d Cir. 1926)

391.    Address, Harvard Law School Association, June 21, 1920, Some Observations on Legal Education and Democratic Progress, p. 23

392.    Colyer v. Skeffington, 265 F. 17(1920)

393.    The Rehabilitation Act of 1973

394.    The Americans with Disabilities Act (ADA)

395.    The Fourteenth Amendment of U.S. Constitution

396.    NY Gen Bus L § 349 (2012)